173.    On September 18, 2006, St. Luke School of Medicine filed a lawsuit against the Republic of Liberia in Liberia Civil Court, in Monseratto County, Liberia, at the Temple of Justice in Monrovia. The lawsuit named the Ministry of Education, the Ministry of Health, and all those working under the scope and authority of the Republic of Liberia.  See Exhibit "21"

174.    Also see the following Exhibits regarding SLSOM's "Damages for Wrong" lawsuit in Liberia:

1.  Exhibit "22 "

2.  Exhibit "23"

3.  Exhibit "24"

4.  Exhibit "25"

5.  Exhibit "26"

6.  Exhibit "27"

7.  Exhibit "28"

8.  Exhibit "29"

9.  Exhibit "30"

175.    On October 30, 2006, SLSOM obtained a "Default Certificate" against the Republic of Liberia. See Exhibit "30" Dr. Dolphin and SLSOM students are informed and believe that neither the Ministry of Education nor the Ministry of Health, the Liberian Medical Board, the National Commission on Higher Education, the National Transitional Legislative Assembly or any of the following individuals answered SLSOM's last motion for fear of facing criminal conspiracy charges: Dr. Isaac Roland, Dr. Benson Bahr, Dr. Kpoto, Mohammed Sheriff, Dr. Horatius Browne, and Dr. Evelyn Kandikai.

176.    Cllr. Ignatius Weah, SLSOM's attorney attempted to set hearings for both Default Certificates, so that both could be converted into an executable judgment. No Liberian court would allow him to set a hearing. Further, Dr. Dolphin was told that he must take the Default Certificates to

51

1  Claims Court. However, then and up to the time of this writing, no such Claims Court exists in
2  Liberia, in violation of Liberia's own constitution.

3  177.    Cllr. Weah tried on numerous occasions to obtain an 'assignment' at Liberia Supreme Court
4  for a final judgment on its "Writ of Prohibition", its civil court damage suit for $120,000,000 USD,
5
6  and its civil court judgment against its campus landlord, Rebecca J. Moore. Now, the former
7  National Transitional Government's Minister of Justice, Kabinah Janeh, was appointed an Associate
8  Justice of the Supreme Court. The very same Minister of Justice who along with Mohammed Sheriff
9  raided the SLSOM campus in 2005. He scheduled all cases that came before the Supreme Court. He
10  would not schedule St. Luke School of Medicine vs. The Republic of Liberia. Nor would Associate
11  Justice Kabinah Janeh recuse himself from the case.

12  178.    From August 2007, SLSOM rehired Clr. Charles Abdullai to assist Clr. Weah to obtain an
13
14  assignment from the Supreme Court of Liberia. Until now, both lawyers have been unsuccessful in
15  obtaining a date for the Supreme Court hearing.

16  GEORGE GOLLIN, THE UNIVERSITY OF ILLINOIS – URBANA CHAMPAIGN AND THE
17  STATE OF OREGON'S OFFICE OF DEGREE AUTHORIZATION

18  179.    Dr. George Gollin is a physics professor at the University of Illinois-Urbana Champaign
19  ("Gollin"). Gollin has been publishing defamatory information against SLSOM on his
20  website at the University of Illinois since 2003. Gollin has admitted that he is a
21  consultant to the Republic of Liberia and Liberia's Ministry of Education. In this manner,
22  Gollin played a significant role in assisting Sheriff, Bahr and Roland in sending false
23  information to ECFMG, ultimately resulting in SLSOM's removal from the IMED, and
24  played a significant role in the extortion and "shake down" of SLSOM and Dr. Dolphin.
25  Gollin's published statements on his University of Illinois website have been used
26  and referenced on at least 36 different websites in the United States alone. Some of the
27  false statements published on Gollin's University of Illinois site are presented here:

28                                    52

a.      Gollin lists SLSOM as a "diploma mill" on his University of Illinois website. On his site, Gollin defines a  "diploma mill" as an "organization or individual that produces and sells diplomas, degrees transcripts, or other academic records that are meant to give the impression of academic achievement, but really represent little or no study."

b.      On his site, Gollin published that "St. Regis University even operated St. Luke's School – they put MDs out there on the street. These were medical degrees That were not just to hang on the wall, they were going to use them."

c.      On his site, Gollin published that "David Karam, one of the apparent owners of SLSOM, organized a company manufacturing products described as curing skin cancer and offering potential treatments for diabetes and hepatitis. As 'Executive Vice President and Chief Medical Officer' his fake M.D. lent an air of legitimacy that helped convince a pair of investors to buy $400,000 of stock in "Bio-Life Labs, Inc.," shortly before its officers abandoned the company."

d.      "St. Luke is a diploma mill."

e.      "A U.S. State Department official says it's fake."

f.      "Liberia says it's illegal."

g.      "A Ghananian official said it's bogus."

h.      "Liberia says St. Luke is a fake."

i.      "St. Luke School of Medicine: www.stluke.edu, an entirely fake medical school run from TX, KY, CA."

j.      "Another unaccredited entity is the "St.Luke School of Medicine" with domain http://stluke.edu' St. Luke was declared illegal by Liberia in 2004 but continues to operate, using various U.S. addresses.  At least three of its American "graduates" have served prison terms for attempting to treat patients."

k.      "Do recall that a number of customers of "St. Luke School of Medicine"

53

have been incarcerated for their activities, but that the (American) operators of this supposedly Liberian, Ghanaian, California, Texan, and Kentuckian monstrosity are out and about, selling patient medicines, issuing degrees, and selling stock in a company that claimed to market a cure for skin cancer."

l.   "It could be quackery.  It could be criminal.  The American Medical Association needs to get involved."

m.   "The American owners of the "St. Luke School of Medicine" took advantage of the catastrophic civil war in Liberia to claim, without governmental challenge, to be training medical students in Monrovia.  (They weren't.)  In 2005 U.S. Embassy personnel in Liberia visited St. Luke and found 'no evidence of Anything resembling a functioning medical school."

n.   "Even the vile St. Luke Medicine retains its .edu domain."

o.   Gollin also holds himself out as an expert in "diploma mills" and how they operate: "How do diploma mills operate? An extensive description of how certain well-known diploma mills work through the Internet and the Web while obscuring their owners' true identities. Based on research for [State of Oregon's Office of Degree Authorization] by Dr. George Golin." "How can I [Gollin] tell whether an institution is a degree mill? Most degree mills have certain characteristics. A good overview of these is available from University of Illinois."

p.   Gollin threatened to put SLSOM "out of business."

The University of Illinois – Urbana Champaign and the State of Oregon's Degree Authorization has taken responsibility for Gollin's defamatory statements. On October 9, 2003, the University of Illinois ordered Gollin to remove the defamatory statements, with Chancellor Robin Kaler stating that "We were trying to help [Gollin] find a more appropriate place for his website" because a website on diploma mills should be "housed in a place that deals with accreditation." Additionally, Kaler admitted that Gollin's statements were defamatory "personal attacks."

1   To date, Gollin's website at the University of Illinois – Urbana Champaign still contains many of the

2   defamatory statements listed above.  Gollin, attempting to avert attention from the

3   University of Illinois, shipped his entire website with all its contents to the State of

4   Oregon's Office of Degree Authorization's website, where it is now currently housed.

5        All of Gollin's statements listed above were patently false when made. Gollin,

6   the University of Illinois – Urbana Champaign, and the State of Oregon's Office of

7   Degree Authorization continue to defame SLSOM by publishing and hosting Gollin's

8   unsubstantiated "research."  Gollin, the Univeristy of Illinois – Urbana Champaign, and

9   the State of Oregon's Office of Degree Authorization, by publishing defamatory

10  statements against SLSOM, harmed and continue to harm SLSOM's reputation

11  worldwide, their actions ultimately playing a major role in ECFMG's removing SLSOM

12  from the IMED. Gollin, the University of Illinois – Urbana Champaign and the State of

13  Oregon's Office of Degree Authorization have refused to remove the defamatory material

14  when asked to do so by SLSOM.

15  180.    The University of Illinois – Urbana Champaign is complicit in its support of George Gollin,

16  who uses University of Illinois letterhead and insignia to lend credibility to his misinformation.  The

17  University of Illinois has permitted Gollin to use its computers and servers in Gollin's campaign

18  against SLSOM.  Additionally, Gollin has slandered and libeled SLSOM in more than two dozen

19
    speaking engagements, as listed on his University of Illinois website:
20

21  http://web.hep.uiuc.edu/home/g-gollin/ .

22  Gollin's University of Illinois website contains seven direct links full of false and misleading

23  information about SLSOM.

24       Gollin's defamatory comments have adversely affected Dr. Dolphin's professional

25  medical and business career. Where Gollin discusses SLSOM, as set forth above, he invariably

26  mentions Dr. Dolphin as SLSOM's president. By mentioning Dr. Dolphin by name in connection

27

28                                        55

1  with Gollin's false statements, Gollin, the University of Illinios – Urbana Champaign and the State of

2  Oregon's Office of Degree Authorization defamed Dr. Dolphin, the school's president and founder.

3      Gollin's false statements have impacted Dr. Dolphin's credit report, wherein it states that

4  Dr. Dolphin is under investigation for fraud - a completely false statement. Gollin's false statements

5  have impacted Dr. Dolphin's business opportunities. Dr. Dolphin was prevented from an opportunity

6  to purchase stock and options from OptionsXpress because OptionsXpress believed him to

7  be a fraud based on Gollin's false internet statements.

8

9  181.    Gollin recently presented a 91-page document to the Ghana National Accreditation Board full

10  of false, libelous, and slanderous statements about Dr. Dolphin, Dr. Dolphin's wife, Susanna

11  Mitchell, and SLSOM.  The document was submitted to the Ghana Court of Appeals by the National

12  Accreditation Board to appeal a judgment in favor of St. Luke School of Medicine-Ghana (not the

13  same institution as St. Luke School of Medicine-Liberia).

14

15  182.    The Ghana National Accreditation Board submitted Gollin's document to cast doubt on the

16  credibility of Dr. Dolphin and SLSOM because SLSOM-Ghana won accreditation in Ghana through

17  a decision of the Ghana High Court in October 2009.  In Gollin's document, he claims that Dr.

18  Dolphin is a fraudulent criminal, despite the fact that he was never arrested in Liberia or sued for

19  fraud by anyone from Liberia, or anywhere else in the world including the United States before,

20  during, or after SLSOM's crisis in Liberia in 2005.  Gollin accused Dr. Dolphin of being a fraud.

21  Furthermore, he accused Dr. Dolphin's wife of embezzlement without any proof, only naked

22  assertions that cause her name and reputation to be publicly disparaged in Ghana.

23

24  183.    The online curriculum created by Dr. Dolphin for SLSOM was the first of its kind in the

25  world. The online curriculum mirrored the curriculum offered in Liberia on the SLSOM campus. The

26  curriculum was and is based on the exam topics listed in the USMLE Annual Step 1 Bulletin for

27  basic sciences, the first two years of medical school. See Exhibit "36".

28

56

FIRST AMENDED CLASS ACTION COMPLAINT

184.    SLSOM records each and every examination score in the medical student's record, which is recorded in the student's transcript, which is then averaged for each course for the course final grade. A SLSOM medical student is not allowed to fail any examination in any course. A student has four chances to pass any examination, otherwise that medical student must retake the entire course and cannot progress until that course is passed. The transcripts of all SLSOM students and graduates will clearly demonstrate SLSOM's diligent record keeping.

185.    Accurate financial records were kept for each and every student enrolled in SLSOM. At no time were hundreds of Indian or Liberian students ever enrolled at SLSOM. Liberian students were not even charged tuition at SLSOM. However, the Liberian campuses were destroyed from civil war on two occasions and closed as a result of governmental extortion, interference and misconduct from 2005 until the present day.

186.    During the first eight years of SLSOM's existence, 1998 through 2006, SLSOM graduated 36 doctors. This represents an average of 4.5 doctors a year. This does not fit the definition of a "diploma mill". SLSOM has never accepted a "fee" for a "degree". All SLSOM graduates must pass a comprehensive 3-part, 400 question Clinical Science Comprehensive Examination, called a "qualifying examination."

187.    It is impossible for a medical student to graduate with a Doctorate of Medicine degree with courses completed online. Even if a student completes SLSOM's online curriculum for basic sciences, which only 6 medical students did during SLSOM's operation in Liberia until 2006, the medical student would have to complete at least 80 weeks of clinical rotations at an accredited hospital to graduate, aside from other requirements needed for graduation.

188.    SLSOM medical students must complete at least 2200 hours of basic science instruction and 3200 hours of clinical clerkships, along with passing SLSOM's 3-part Clinical Science

57

Comprehensive Examination and perform 100 hours of community service.  This information has been on SLSOM's Internet website since 2001 and is well documented.

189.    SLSOM's  students had accomplished much before its crisis with the government of Liberia in 2005.  This includes the following:

| Country or Region | Agency | Accomplishments* |
|---|---|---|
| United States | Educational Commission for Foreign Medical Graduates (ECFMG) | 80% + pass rate on the United States Medical Licensing Examinations (USMLE). 14 attempts, 12 passes |
| Nigeria | Medical and Dental Council | 100% pass rate on Nigerian medical licensing examinations. 3 attempts, 3 passes |
| Ghana | Medical and Dental Council | 75% pass rate on Ghanaian medical licensing examinations. 4 attempts, 3 passes. SLSOM graduates were the top scorers, 1-2-3, on the February 2004 examination. |
| Kenya | Medical and Dental Council | 100% pass rate. 1 attempt, 1 pass. SLSOM graduate is a licensed surgeon in Kenya |
| India | All India Medical Council | 100% pass rate. 1 attempt, 1 pass |
| Canada | General Medical Council | 100% pass rate. 1 attempt, 1 pass |

58

| Mexico | 100% pass rate. 1 attempt, 1 pass |
| Worldwide | 88% pass rate. 25 attempts, 22 passes |

\* The above figures are reliable estimates based on known results by Dr. Dolphin of Medical Students' accomplishments during and after they left SLSOM.

190.     The best evaluation of the rigor and effectiveness of St. Luke School of Medicine's online and clinical science curriculum is the pass rate for national and international medical licensing examinations.  SLSOM's worldwide medical licensing examination pass rate of 88% is exceptional. If the scores from medical students forced to transfer to other medical schools due to the IMED removal and subsequent fallout were included in this calculation, SLSOM's worldwide medical licensing examination pass rate would rise to 96%.

191.     Because there is no central foreign medical school accrediting body, a foreign medical school's listing on the IMED essentially acts as a de-facto accreditation. The hallmark used by ECFMG in assessing foreign medical programs is student passage rates on the USMLE.

192.     ECFMG and FAIMER removed SLSOM from IMED, surprisingly, among other things, without taking note of SLSOM students high USMLE pass rate. This meant that SLSOM graduates and degrees will not recognized worldwide. World Health Organization's Worldwide Directory of Medical Schools will no longer be updated.

VIII.   CAUSES OF ACTION

A.      TRADE LIBEL AND LIBEL (against Dr. Dolphin)

193.     Plaintiffs incorporate paragraphs 1 through 192 herein. Defendants made several public statements concerning SLSOM.  On January 20, 2005, Carole Bede received an unnamed and unsigned letter on NCHE letterhead that stated: "St. Luke School of Medicine is not registered or

accredited as a medical school in Liberia." On March 16, 2005, in "The Inquirer", Monrovia, Liberia, Assemblyman Mohammed Sheriff stated that, "the whole thing about the school is fake."

194.    On March 22, 2005, in a letter addressed to SLSOM regarding a recent "inspection" Dr Horatius Browne of the Liberian Medical Board stated that SLSOM had no library, books, handbook or laboratories.  Dr. Browne also stated in his letter that SLSOM was not "representative of a Medical College." On March 31, 2005, the Inquirer reported that the Liberian Medical Board, at a NCHE hearing called by Sheriff, stated, "there is no school in Liberia known as the St. Luke School of Medicine", that it was "illegal", and "counterfeit." Dr. Benson Barh, Chief Medical Officer of Liberia, stated "we are not aware and have no knowledge of *the* medical school."

195.    On that same day, Dr. Barh stated that the building where SLSOM was located was "a run down dwelling home under major renovation which lacks electricity, laboratory, class rooms, running water."  On April 11, 2005, the NCHE issued a letter to ECFMG that stated SLSOM "does not exist" and was a "computer school."  On April 12, 2005, Dr. Isaac Roland (NCHE) and Dr. Kondikai (Minister of Education) both stated at an NTLA hearing that SLSOM "does not exist in Liberia." May 10, 2005, the NTLA declared that SLSOM was "a fake medical institute and is not a legal establishment" and had endangered "the health of the public and should be turned over to the Justice Ministry for prosecution."

Gollin has been publishing defamatory information against SLSOM on his website at the University of Illinois since 2003.  Gollin has admitted that he is a consultant to the Republic of Liberia and Liberia's Ministry of Education. In this manner, Gollin played a significant role in assisting Sheriff, Bahr and Roland in sending false information to ECFMG, ultimately resulting in SLSOM's removal from the IMED, and played a significant role in the extortion and "shake down" of SLSOM and Dr. Dolphin. Gollin's published statements on his University of Illinois website have been used and referenced on at least 36 different websites in the United States alone. Some of the

60

false statements published on Gollin's University of Illinois site are presented here:

a.   Gollin lists SLSOM as a "diploma mill" on his University of Illinois website. On his site, Gollin defines a  "diploma mill" as an "organization or individual that produces and sells diplomas, degrees transcripts, or other academic records that are meant to give the impression of academic achievement, but really represent little or no study."

b.   On his site, Gollin published that "St. Regis University even operated St. Luke's School – they put MDs out there on the street. These were medical degrees That were not just to hang on the wall, they were going to use them."

c.   On his site, Gollin published that "David Karam, one of the apparent owners of SLSOM, organized a company manufacturing products described as curing skin cancer and offering potential treatments for diabetes and hepatitis. As 'Executive Vice President and Chief Medical Officer' his fake M.D. lent an air of legitimacy that helped convince a pair of investors to buy $400,000 of stock in "Bio-Life Labs, Inc.," shortly before its officers abandoned the company."

d.   "St. Luke is a diploma mill."

e.   "A U.S. State Department official says it's fake."

f.   "Liberia says it's illegal."

g.   "A Ghananian official said it's bogus."

h.   "Liberia says St. Luke is a fake."

i.   "St. Luke School of Medicine: www.stluke.edu, an entirely fake medical school run from TX, KY, CA."

j.   "Another unaccredited entity is the "St.Luke School of Medicine" with domain http://stluke.edu' St. Luke was declared illegal by Liberia in 2004 but continues to operate, using various U.S. addresses.  At least three of its American "graduates" have served prison terms for attempting to treat patients."

k. "Do recall that a number of customers of "St. Luke School of Medicine" have been incarcerated for their activities, but that the (American) operators of this supposedly Liberian, Ghanaian, California, Texan, and Kentuckian monstrosity are out and about, selling patient medicines, issuing degrees, and selling stock in a company that claimed to market a cure for skin cancer."

l. "It could be quackery. It could be criminal. The American Medical Association needs to get involved."

m. "The American owners of the "St. Luke School of Medicine" took advantage of the catastrophic civil war in Liberia to claim, without governmental challenge, to be training medical students in Monrovia. (They weren't). In 2005 U.S. Embassy personnel in Liberia visited St. Luke and found 'no evidence of Anything resembling a functioning medical school."

n. "Even the vile St. Luke Medicine retains its .edu domain."

o. Gollin also holds himself out as an expert in "diploma mills" and how they operate: "How do diploma mills operate? An extensive description of how certain well-known diploma mills work through the Internet and the Web while obscuring their owners' true identities. Based on research for [State of Oregon's Office of Degree Authorization] by Dr. George Golin." "How can I [Gollin] tell whether an institution is a degree mill? Most degree mills have certain characteristics. A good overview of these is available from University of Illinois."

p. Gollin threatened to put SLSOM "out of business."

The University of Illinois – Urbana Champaign and the State of Oregon's Degree Authorization has taken responsibility for Gollin's defamatory statements. On October 9, 2003, the University of Illinois ordered Gollin to remove the defamatory statements, with Chancellor Robin Kaler stating that "We were trying to help [Gollin] find a more appropriate place for his website" because a website on diploma mills should be "housed in a place that deals with accreditation."

1   Additionally, Kaler admitted that Gollin's statements were defamatory "personal attacks."

2   To date, Gollin's website at the University of Illinois – Urbana Champaign still contains many of the

3   defamatory statements listed above.  Gollin, attempting to avert attention from the

4   University of Illinois, shipped his entire website with all its contents to the State of

5   Oregon's Office of Degree Authorization's website, where it is now currently housed.

6        Gollin's defamatory comments have also adversely affected Dr. Dolphin's professional

7   medical and business careers. Where Gollin discusses SLSOM, as set forth above, he invariably

8   mentions Dr. Dolphin as SLSOM's president. By mentioning Dr. Dolphin by name in connection

9   with Gollin's false statements, Gollin, the University of Illinios – Urbana Champaign and the State of

10  Oregon's Office of Degree Authorization defamed and continue to defame Dr. Dolphin, the school's

11

12  president and founder.

13       Gollin's false statements have impacted Dr. Dolphin's credit report, wherein it states that

14  Dr. Dolphin is under investigation for fraud - a completely false statement. Gollin's false statements

15  have impacted Dr. Dolphin's business opportunities as well. Dr. Dolphin was prevented from an

16  opportunity to purchase stock and options from OptionsXpress because OptionsXpress believed him

17  to be a fraud, based on Gollin's numerous false internet statements.

18

19       All of Gollin's statements listed above were patently false when made. Gollin's

20  false statements were also made maliciously and with reckless disregard for the truth.

     Gollin was aware, as of April 2007, that SLSOM had obtained two defaults against Liberia

21  as set forth above.

22

23       Gollin, the University of Illinois – Urbana Champaign, and the State of Oregon's Office of

     Degree Authorization continue to defame SLSOM by publishing and hosting Gollin's

24  unsubstantiated "research."  Gollin, the Univeristy of Illinois – Urbana Champaign, and

25  the State of Oregon's Office of Degree Authorization, by publishing defamatory

26  statements against SLSOM, harmed and continue to harm SLSOM's reputation

27

28                                              63

1   worldwide, their actions ultimately playing a major role in ECFMG's removing SLSOM

2   from the IMED. Gollin, the University of Illinois – Urbana Champaign and the State of

3   Oregon's Office of Degree Authorization have refused to remove the defamatory material

4   when asked to do so by SLSOM (paragraphs 193 through 195 collectively "Public Statements").

5   196.    Defendants made Public Statements. SLSOM was accredited in August 1, 2000. See Exhibit

6   "12". SLSOM was incorporated on August 22, 2001. See Exhibit "31". NCHE granted SLSOM a

7   Temporary Permit to Operate on September 17, 2002. See Exhibit "3". The National Legislature of

8   the Republic of Liberia granted SLSOM a Charter through an Act of the Legislature on April 24,

9   2003. See Exhibit "31". The Charter was signed by then President Charles Taylor on August 7,

10  2003. See Exhibit "4". The Ministry of Foreign Affairs published the Act and the Charter on August

11

12  8, 2003. See Exhibit "4". The NCHE issued a Statement of Attestation on March 2005. Exhibit "8".

13  SLSOM was equipped with running water, electricity, computers, books, CD-ROMs, microscopes, a

14  rigorous curriculum, qualified instructors, and diligent students. See Exhibits 1 through 41

15  (paragraphs 193 through 196 collectively "False Public Statements").

16  197.    Defendants' False Public Statements were published and so disparaged the quality of

17

18  SLSOM's services that despite SLSOM's extraordinarily high medical licensing examination pass

19  rate (96%), ECFMG removed SLSOM from the IMED twice, with the second removal continuing to

20  the present time. Defendants' statements have also caused others to consequently disparage

21  SLSOM's name, property and services; Dr. George Gollin and the University of Illinois – Urbana

22  Champaign have and continue to disparage SLSOM and its services, students, diplomas and degrees

23  based on information gleaned solely from the aforementioned sources and from Gollin's consulting

24  relationship with the Republic of Liberia.

25

26  198.    Defendants knew or should have known that their False Public Statements were likely to

27  cause pecuniary harm or loss. Defendants, and each of them, were well aware of the existence of

28                                              64

1    SLSOM from 2000 and beyond. Dr. Peter Coleman, Dr. Isaac Roland, Dr. Barh, and Mohammed

2    Sheriff, as representatives of Ministry of Health, National Commission on Higher Education, and the

3    Liberia Medical Board, and National Transitional Legislative Assembly, each had intimate awareness

4    and played integral roles in the development of SLSOM, as set forth above.

5
6    B.      INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

7    199.    Plaintiffs incorporate paragraphs 1 through 198 herein. SLSOM owned a Charter and an Act

8    of Legislature, making SLSOM a legal and corporate entity with perpetual succession, having the

9    authority to contract, sue and be sued, plead and be impleaded in any court of competent jurisdiction

10   within the Republic; to purchase or otherwise acquire and hold property, real and mixed up to the

11   value of one hundred and fifty million United States dollars (US$150,000,000); making St. Luke

12   School of Medicine (SLSOM) to be perpetually maintained in the Republic of Liberia for medical

13   education of the people of the Liberian nation, people of the other countries and for those who may

14
15   otherwise have the capacity to seek medical education.

16   200.    Defendants, and each of them, were aware of SLSOM's economic relationship with the

17   Republic of Liberia, ECFMG, potential medical students worldwide, and the World Health

18   Organization, by virtue of the enabling documents: the Act, Charter, and Statement of Attestation.

19   Defendants were aware of SLSOM's legitimate status, and SLSOM's profit making potential and

20   actuality. Defendants False Public Statements were designed to disrupt SLSOM's worldwide

21   economic relationships. Defendants False Public Statements caused ECFMG to permanently remove

22
23   SLSOM from the IMED, even after a Liberian Supreme Court order and several subsequent NCHE

24   letters requested that SLSOM be reinstated. As a consequence of SLSOM's removal from the IMED,

25   Medical Students lost jobs, residencies, and positions. Additionally, Medical Students had

26   legitimately earned licenses revoked and properly earned degrees invalidated, as set forth in Exhibit

27   "1".

28
                                                  65

C.      FALSE IMPRISONMENT

201.    Plaintiffs incorporate paragraphs 1 through 200 herein. Defendants, without lawful privilege, confined Dr. Dolphin against his will by preventing him from traveling freely as is set forth in paragraphs 80 through 85.

D.      NEGLIGENCE

202.    Plaintiffs incorporate paragraphs 1 through 201 herein.  Defendants owed a duty to Plaintiffs to ensure that Plaintiffs not be deprived of life, liberty, or property, without due process of law. Defendants, by failing to present any meaningful evidence to support the accusations against Plaintiffs, breached its duty to provide Plaintiffs with due process of law.  Defendants' breach caused SLSOM to be removed from IMED, effectively nullifying Medical Students' degrees and medical licensing examination scores.  As a result, Medical Students have lost jobs, residencies and other benefits; SLSOM has been completely shut down, unable to provide the services guaranteed by its Charter.

E.      LOSS OF CONSORTIUM

203.    Plaintiffs incorporate paragraphs 1 through 202 herein. Because of Defendants' Trade Libel and Negligence, above, Dr. Dolphin's wife, Susanna Mitchell, has abandoned him. As a result, Dr. Dolphin has lost the affection, support and love of his wife.

D.      CONVERSION

205.    "Their property shall not be taken without due process of law and without payment of just compensation." "The nationals of each High Contracting Party shall receive within the territories of the other, upon submitting to conditions imposed upon its nationals, the most constant protection and

66

1  security for their person and property, and shall enjoy in this respect that degree of protection that is

2  required by international law."

3  206.    Defendants through its arbitrary hearings and decision-making effectively converted Plaintiffs

4  property, in that SLSOM has been unable to operate since 2005. Defendants' acts, prevented and

5  continues to, prevent SLSOM from using its campus, equipment and materials.

6

7  D.    DUE PROCESS

8  207.    "No person shall...be deprived of life, liberty, or property, without due process of law."

9  "The nationals of each High Contracting Party shall receive within the territories of the other, upon

10  submitting to conditions imposed upon its nationals, the most constant protection and security for

11  their person and property, and shall enjoy in this respect that degree of protection that is required by

12  international law."

13

14  208.    Plaintiffs incorporate paragraphs 1 through 207 herein.  Defendants owed a duty to Plaintiffs

15  to ensure that Plaintiffs not be deprived of life, liberty, or property, without due process of law.

16  Defendants, by failing to present at any hearing any meaningful evidence to support their accusations

17  against Plaintiffs before illegally dismantling SLSOM, breached its duty to provide Plaintiffs with

18  due process of law, and treated Plaintiffs differently than A.M. Dogliotti, a similarly situated medical

19  school that suffered none of the harms to which SLSOM was subjected.  Defendants' breach caused

20  SLSOM to be removed from IMED, effectively nullifying Medical Students' degrees and medical

21

22  licensing examination scores.  As a result, Medical Students have lost jobs, residencies and other

23  benefits.

24  D.    EQUAL PROTECTION

25  208.    "no state shall ... deny to any person within its jurisdiction the equal protection of the laws"

26  "The nationals of each High Contracting Party shall receive within the territories of the other, upon

27  submitting to conditions imposed upon its nationals, the most constant protection and security for

28

their person and property, and shall enjoy in this respect that degree of protection that is required by international law."

208A.  Plaintiffs incorporate paragraphs 1 through 208 herein. Plaintiffs incorporate paragraphs 1 through 207 herein.  Defendants owed a duty to Plaintiffs to ensure that Plaintiffs not be deprived of life, liberty, or property, without due process of law.  Defendants, by failing to present at any hearing any meaningful evidence to support their accusations against Plaintiffs before illegally dismantling SLSOM, breached its duty to provide Plaintiffs with due process of law, and treated Plaintiffs differently than A.M. Dogliotti, a similarly situated medical school that suffered none of the harms to which SLSOM was subjected.  Defendants' breach caused SLSOM to be removed from IMED, effectively nullifying Medical Students' degrees and medical licensing examination scores.  As a result, Medical Students have lost jobs, residencies and other benefits.

F.    CONSPIRACY TO COMMIT CIVIL RIGHTS VIOLATIONS

209.    Plaintiffs incorporate paragraphs 1 through 209.  Defendant Dr. Isaac Roland, Mohammed Sheriff, Dr. Evelyn Kondakai, Dr. Horatius Browne and Dr. Benson Barh each conspired with one another to denigrate SLSOM's reputation in an effort to secure bribes, as set forth above. Mohammed Sheriff used his position at the National Transitional Legislative Assembly to conduct hearings solely to denigrate and discredit SLSOM in the public eye.  Mohammed Sheriff used political and other pressures to secure the participation and cooperation of Dr. Isaac Roland.  Drs. Barh and Browne used their position in the Liberian Medical Board to denigrate SLSOM in the public eye at the same hearings conducted by Sheriff. All Defendants were aware of SLSOM's legitimate status and sought to discredit SLSOM to secure monthly bribes.

G.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

210.    Plaintiffs incorporate paragraphs 1 through 209 herein.  Defendants intentionally took Dr. Dolphin's passport and prevented him from traveling on two separate occasions to visit his wife and

68

family, as set forth above. Additionally, Defendants' outright lies and fabrications regarding the integrity of SLSOM had a profound effect on Dr. Dolphin's psyche and emotional makeup and dramatically affected his marriage, as his wife has filed for divorce. Moreover, Dr. Dolphin was subjected to farcical hearings, was randomly and arbitrarily summonsed, and held for questioning at odd hours of the night in unkempt places. Because of his ordeal, Dr. Dolphin became gaunt, sickly and in need of medical care.

H.     NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

211.     Plaintiffs incorporate paragraphs 1 through 210 herein. Plaintiffs incorporate paragraphs 1 through 209 herein. Defendants intentionally took Dr. Dolphin's passport and prevented him from traveling on two separate occasions to visit his wife and family, as set forth above. Additionally, Defendants' outright lies and fabrications regarding the integrity of SLSOM had a profound effect on Dr. Dolphin's psyche and emotional makeup and dramatically affected his marriage, as his wife has filed for divorce. Moreover, Dr. Dolphin was subjected to farcical hearings, was randomly and arbitrarily summonsed, and held for questioning at odd hours of the night in unkempt places. Because of his ordeal, Dr. Dolphin became gaunt, sickly and in need of medical care.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, jointly and severally, as follows and appropriate to the particular Causes of Action:

(1)     An Order certifying the Plaintiff Medical Student Class and appointing Plaintiffs and their counsel to represent the Class;

(2)     For monetary relief as requested in the Causes of Action as appropriate for the particular Causes of Action, in an amount to be proven at trial;

(3) For actual, direct, incidental, consequential, statutory and exemplary damages, as appropriate for the particular Causes of Action, in an amount to be proven at trial;

(4) For pre- and post-judgment interest;

(5) For attorneys' fees and costs of suit pursuant to, inter alia, the common fund and private Attorney General doctrines, California Code of Civil Procedure section 1021.5 and/or the statutory Causes of Action asserted herein, as may be appropriate; and

(6) For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims so triable and an advisory jury for a factual determination on all equitable claims.

## VERIFICATION

I have read the foregoing and certify, under the penalty of perjury under the laws of the State of California that the foregoing is true and correct and was executed in Los Angeles, California.

Dated: April 10, 2010

Dr. Jerroll B.R. Dolphin

70

FIRST AMENDED CLASS ACTION COMPLAINT

Dated: April 10, 2010

CULPEPPER LAW GROUPE



By:

THADDEUS J. CULPEPPER
Attorneys for Plaintiffs Dr. Dolphin, SLSOM
and Medical Students

71

## EXHIBIT 1 - LIST OF STUDENT AND GRADUATE PLAINTIFFS

| No. | Name | Country |
|---|---|---|
| 1 | Dr. Robert S. Farmer, Jr | USA |
| 2 | Suleiman Adekunle Omipidan | Nigeria |
| 3 | Pauline Ugochi Chilaka | Nigeria |
| 4 | Raymond Y Ofori | United Kingdom |
| 5 | Dr. Muhammed A.S.M. Al-Anzi | Saudi Arabia |
| 6 | Dr. Sid R. Rogers | USA |
| 7 | Dr. Karriem S. Watson | USA |
| 8 | Dr Emmanuel Okoye | Canada |
| 9 | Dr. Keith Patrick Steinhurst | USA |
| 10 | Dr. David Belshaw | USA |
| 11 | Linda Halisky | USA |
| 12 | Joseph Aiyegbusi | Nigeria |
| 13 | Ken Jordon | USA |
| 14 | Larry Lammers | USA |
| 15 | Dr. O. B. G. Nmorsi | Nigeria |
| 16 | Gbenga Gbayesola | Nigeria |
| 17 | Dr. Pius Ndubisi | Nigeria |
| 18 | Dr. Godwin Okonkwo | Nigeria |
| 19 | Chijioke Ejiogu | Nigeria |
| 20 | Steve Monday | Nigeria |
| 21 | Dr. Robin Ellsworth | USA |
| 22 | Dr. Miklos Major, III | USA |
| 23 | Dr. Amin Sain | United Kingdom |
| 24 | John Toluwani Oladele | Nigeria |
| 25 | Dr. Stanley Paul | USA |
| 26 | Darlington Esemuze | South Africa |
| 27 | Victoria Ofele | Nigeria |
| 28 | Dr. Mary Hulve | USA |
| 29 | Dr. Michael Hejazi | USA |
| 30 | Dr. Peter Kolosky | USA |
| 31 | Dr. Laurie Berg Kolosky | USA |
| 32 | Dervanna Troy Mckoy | USA |

| No. | Name | Country |
|-----|------|---------|
| 33 | Armand Dixon | USA |
| 34 | Carroll Braddy | USA |
| 35 | Christopher Sauda | Nigeria |
| 36 | Chukwuyem Obia | Nigeria |
| 37 | Dr. David Fyles | United Kingdom |
| 38 | Debrah Berger | USA |
| 39 | Felicia Jatto | Nigeria |
| 40 | Dr. Robert Hayes | USA |
| 41 | Dr. James Kyle | USA |
| 42 | Robert Irving | USA |
| 43 | Dr. Jason Payor | USA |
| 44 | Dr. Jerry Charles | USA |
| 45 | Dr. Kenneth Andronico | USA |
| 46 | M. C. K. Madubuike | USA |
| 47 | Dr. Manuel Faria | USA |
| 48 | Dr. Masilamony Pauliah | USA |
| 49 | Kathy Menefee | USA |
| 50 | Rebecca Hopkins | USA |
| 51 | Dr. Alexandra Schick | France |
| 52 | Dr. Wendy Westbrooks | USA |
| 53 | Dr. Yuri Soyferman | USA |
| 54 | Dr. Antwi Boakye | USA |
| 55 | Dr. Astara Burlingame | USA |
| 56 | Dr. David Karam | USA |
| 57 | Dr. Joan Nielsen | USA |
| 58 | Dr. Jonathan Mawere | USA |
| 59 | Dr. Mathew Skaria | USA |
| 60 | Dr. Peace Jessa | USA |
| 61 | Dr. Rita Patangia | USA |
| | Does 1 through 99 | Worldwide |

## Exhibit 2 - World Health Organization Letter from Ministry of Health, August 2000

FROM : LIBTELCO MONROVIA          PHONE NO. : 231 227 809          AUG. 19 2000 11:05AM P1



# REPUBLIC OF LIBERIA
# MINISTRY OF HEALTH & SOCIAL WELFARE
P.O. BOX 10-9009
1000 MONROVIA, 10 LIBERIA
WEST AFRICA

OFFICE OF THE MINISTER

MHASW/GOL/FSC-M/1255/F00/RL          August 15, 2000

Ms. Sandra Dumtoht
HDP ASU/HQ
World Health Organization
CH-1211, Geneva 27,
Switzerland

Dear Madam:

This is to certify that the Government of Liberia has accredited the St. Luke School of Medicine to operate within the Republic of Liberia. This Medical School will grant four-year Doctor of Medicine (MD) and is regulated through the Ministry of Health.

The date of accreditation is effective August 1, 2000.

It is our hope that this information will be useful and that all necessary courtesies will be accorded the above mentioned medical school.

Kind regards.

Sincerely,

Peter A. Coleman, MD, MS, FWACS
M I N I S T E R

## Exhibit 3 - PERMIT TO OPERATE ISSUED SEPTEMBER 2002 (NCHE)

: ST _LUKE SCHOOL OF MEDICINE        PHONE NO. : 1 310 419 3924        Apr. 07 200.

FROM : LTC TRAFFIC DEPT              PHONE NO. : 231 227 614           OCT. 24 2002 09:51:



**Republic of Liberia**
**NATIONAL COMMISSION OF HIGHER EDUCATION**
P. O. Box 9014;Tel: 225480
Monrovia, Liberia, West Africa

OFFICE OF THE EXECUTIVE DIRECTOR

September 17, 2002

### TEMPORARY PERMIT TO OPERATE
### ST. LUKE SCHOOL OF MEDICINE IN THE
### REPUBLIC OF LIBERIA

Having met the Minimum Criteria set for by the National Commission of Higher Education to operate a higher education institution in the Republic of Liberia, the St. Luke School of Medicine is hereby granted this Temporary permit to operate in the City of Monrovia, Montserrado County, in the Republic of Liberia.

This Temporary Permit of operation is valid for a period of two calendar years (September 2002 -- September 2004).

Renewable September 17, 2004

Approved: _____
Lawrence S. Bestman, Ph. D.
**EXECUTIVE DIRECTOR**

Motto: Promoting Quality and Equal Higher Educational Opportunities.

## Exhibit 4 - PRESIDENT SIGNED SLSOM CHARTER ACT IN AUGUST 2003



# REPUBLIC OF LIBERIA

OFFICE OF THE PRESIDENT
August 7, 2003

The Honorable
The Liberian Senate(IN-SESSION)
Capitol Building
Monrovia

Ladies and Gentlemen,

I have the honor to inform that the following Acts of Legislature entitled

"AN ACT AMENDING THE NEW MINERALS AND MINING LAW PART I,
ENTITLED 23, LCR, BY ADDING THERETO A NEW CHAPTER 40, PROVIDING
FOR CONTROL ON THE EXPORT AND IMPORT AND TRANSIT OF ROUGH
DIAMOND",

"AN ACT CREATING THE CITY OF FOYA WITHIN FOYA ADMINISTRATIVE
DISTRICT, LOFA COUNTY, R.E."

"AN ACT TO INCORPORATE ST LUKE SCHOOL OF MEDICINE(SLSOM) OF TH
OF THE CITY OF MONROVIA, MONTSERRADO COUNTY, REPUBLIC OF
LIBERIA, AND TO GRANT SLSOM A CHARTER",

"AN ACT CREATING MBOO STATUTORY DISTRICT WITHIN MARGIBI
COUNTY WHICH CONTAINS THREE COUNTY DISTRICTS; MAMBAHN,
FAAMINGTON, KARBAI AND FIVE CHIEFDOMS RESPECTIVELY WITH A
PROVISIONAL MONTHLY AND PROBATE COURT MAJESTERIAL AREA AND
PROVIDING FOR SAME",

have today received Executive Approval

Cordially,


President W. Charles Ghankay Taylor

Please note the "Act to Incorporate SLSOM" is on the same bill that includes the raw diamond, "blood diamond", legislation that lifted United Nations sanctions from Liberia in August 2003.

## Exhibit 5 - LIBERIA EMBASSY WEBSITE DISCLAIMER

**REPUBLIC OF LIBERIA**
**NATIONAL COMMISSION OF HIGH EDUCATION**
**Fourth Floor, Room 407**
**MINISTRY OF EDUCATION**
**P. O. Box 9014**
**Monrovia , Liberia , West Africa**

URGENT DISCLAIMER ON THE ILLEGAL ESTABLISHMENT AND RECOGNITION OF HIGHER EDUCATION INSTITUTIONS IN THE REPUBLIC OF LIBERIA

In order to establish a Higher Education Institution in Liberia , there are two sets of requirements: One set of requirements relates to obtaining a charter to operate from the National Legislature. The other set of requirements has to do with conformity to policies as set by the National Commission on High Education. One stipulation in these policies is that institutions seeking to be established in Liberia must meet the requirements as set out in the policy, prior to obtaining charters from the National Legislature. The policy clearly provides guidelines regarding the establishment and operation of high education institutions in the Republic of Liberia . These policy guidelines are currently available at the Commission's Secretariat.

On the contrary, the National Commission on High Education has observed with dismay that some colleges or universities have been established without going through the proper channels. For one thing charters have been granted institutions without prior clearance from the National Commission on High Education. In other cases, several institutions appear to have obtained operational permits or statements of recognition to establish and operate in the country. However, some of these documents were exclusively signed by the former Executive Director of the past administration without the approval of the Commission. Hence, the Permit signed without the approval of the Chairperson is considered invalid, and any institution in possession of such permit is not recognized by the appropriate authorities of the Commission.

Particular references are made to the St. Regis University and St. Luke Medical College that fall in this category. The St. Regis University has publicly made known to the World that it has a legal status to operate in Liberia through the permission of the Commission on High Education. This is not true. Evidence suggests that whatever documents the University claims to have obtained from the Commission were never approved by the Commission and do not bear the signature of the Chairperson. Further, these two institutions are considered Distance Education Institutions and according to the Commission's policy:

*Institutions that are distance education-related and that have approached the National Commission on Higher Education for the operation in Liberia are being processed. Since this is a new area of exploration for the Commission, the public is advised that any decisions already reached reference these Institutions are tentative and that the Commission is continuing its deliberations on these Institutions to final conclusions vis-à-vis their place in the Liberian Higher Education System.*

Accordingly, the National Commission on Higher Education, Republic of Liberia , hereby declares **null** and **void** whatever documents St. Regis University may claim to possess emanating from the Commission until at such time when authorities of the Institution can go through the proper procedures for accreditation.

As regards the St. Luke Medical College, evidence also shows that no such college exists in Liberia ; therefore, it cannot claim to have obtained accreditation from the Commission. The Commission also nullifies the existence of such an institution in Liberia , until such time as all pertinent requirements as noted above are met. It therefore goes without saying that similar notice is being sent our to all institutions which are making claims similar to St. Regis and St. Luke that have not met the requirements as herein noted.

Signed: Isaac Roland, Ed,D. (**DIRECTOR GENERAL**)

Approved: D. Evelyn S. Kandakai, Ed,D. (**CHAIRPERSON**)

Feedback

**Exhibit 6 - 18 January 2005 NCHE letter issued to Madame Carole Bede, ECFMG**




REPUBLIC OF LIBERIA
## NATIONAL COMMISSION OF HIGHER EDUCATION
Fourth Floor, Room 407
MINISTRY OF EDUCATION
P.O. Box 9014
Monrovia, Liberia, West Africa

OFFICE OF THE EXECUTIVE DIRECTOR

January 18, 2005

Madame Carole Bede

Senior Research Analyst

International Medical Education Directory

Foundation of Advancement of International Medical Education and Research

3634 Market Street, 4th Floor, Philadelphia, PA 19104-2685

Re:   St. Luke School of Medicine

Dear Madam Bede:

This will acknowledge receipt of your letter of inquiry dated October 26, 2004, concerning the above institution.

We regret the delay in responding to this inquiry. Meanwhile, we are pleased to provide the following information in relation to the request asked.

Although St. Luke School of Medicine did apply to the National Commission on Higher Education for recognition by government through accreditation, the Permit to operate, issued previously, only bore the signature of the former Executive Director, instead of two signatories, especially the signature of the Chairperson of the National Commission in keeping with the ACT, which created it. The lack of two signatures made the permit inappropriate.

However, the authorities of St. Luke have now realized that they were unaware of any problem with the previous permit. They have decided to remedy the problem by completing the process of accreditation to be granted by the National Commission.

Thus, the process of accreditation and subsequent official recognition had begun with the following preliminary steps in keeping with the National Policy on Higher Education in the Republic of Liberia.

> • "An individual, a group of individuals, or any entity wishing to operate a higher education institution in Liberia must apply to the National Commission on Higher Education."
>
> St. Luke School of Medicine had applied and their application has been received and is being processed.

MOTTO: Promoting Quality and Equal Higher Educational Opportunities.

- It is also stipulated in the policy that "there shall be
  adequate physical facilities-classrooms, laboratories
  tools, instruments, equipment and provision for updating
  the facilities, and provide expendable supplies to give
  students proper learning experiences essential to
  achieving the education philosophy and objectives of
  the programs."

The St. Luke School of Medicine has established an institution and is working hard towards
providing the necessary physical facilities. As we speak, there is large quantity of quality medical
equipment including computers, modern books, microscopes, etc, most of which had already
arrived in Liberia, for classroom and other purposes, to promote learning.

"The Commission shall recommend institutions that meet the requirements to the National
Legislature to be chartered; and only institutions qualified by the Commission and chartered by
the National Legislature shall be issued a TEMPORARY OPERATIONAL PERMIT PENDING
THEIR ACCREDITATION."

To conclude, The National Commission has observed that the previous attempt aimed at seeking
accreditation was not done in a proper manner in that the temporary permit to operate possessed
only one signature, and does not fault St. Luke authorities for this omission

Thank you for your cooperation.

Sincerely yours,

Isaac Roland, Ed.D.

**DIRECTOR GENERAL**

## Exhibit 7 - Adverse Letter from Madame Carole Bede, ECFMG



**EDUCATIONAL COMMISSION for FOREIGN MEDICAL GRADUATES**

3624 MARKET STREET, PHILADELPHIA, PENNSYLVANIA 19104-2685, U.S.A.
TELEPHONE: 215-386-5900 ● FAX: 215-386-9767 ● INTERNET: www.ecfmg.org

January 20, 2005

Dr. Jerroll Dolphin
President
St. Luke School of Medicine
8516 11ᵗʰ Avenue, 2ⁿᵈ Floor
Inglewood CA 90305

Dear Dr. Dolphin,

It is published in the ECFMG Information Booklet that to be eligible for registration by ECFMG for the United States Medical Licensing Examination™ (USMLE™) Step 1, Step 2 CK and Step 2 CS, an applicant must, at the time the application is submitted and at the time of the examination, be either a medical student officially enrolled in a medical school located outside the United States and Canada or must be a graduate of such a medical school.

Also, the medical school and year of graduation must be listed in the *International Medical Education Directory (IMED)* of the Foundation for Advancement of International Medical Education and Research (FAIMER®). FAIMER is a non-profit foundation of the Educational Commission for Foreign Medical Graduates. *IMED* may be accessed on the ECFMG website at www.ecfmg.org. For a medical school student, the "graduation years" in the school's *IMED* listing must be "current."

ECFMG and FAIMER have received an unsigned and undated statement apparently issued from the National Commission of Higher Education, Liberia, stating that St. Luke School of Medicine is not registered or accredited as a medical school in Liberia. A copy of the unsigned statement, which ECFMG received in December 2004, is enclosed.

Consequently, the "graduation years" in *IMED* for St. Luke School of Medicine, Liberia, currently end in 2004. FAIMER has written twice to the Director General, National Commission of Higher Education, Liberia, for clarification of the status of St. Luke School of Medicine. FAIMER has received no response.

Until such time as FAIMER receives confirmation that the government of Liberia recognizes St. Luke School of Medicine and that the school is authorized by the government to issue the Doctor of Medicine degree, students currently enrolled in, and graduates of, St. Luke School of Medicine are no longer eligible to be registered for USMLE examinations or for ECFMG certification.

If you have any questions, please let me know.

Sincerely,

*Carole Bede*

Carole Bede
Senior Research Analyst
Medical Education Credentials Department

RECEIVED
JAN 2 4 2004

Enclosure

*ECFMG® is an organization committed to promoting excellence in international medical education.*

**REPUBLIC OF LIBERIA**
**NATIONAL COMMISSION OF HIGH EDUCATION**  

**COPY**

Fourth Floor, Room 407

**MINISTRY OF EDUCATION**

**P. O. Box 9014**

**Monrovia , Liberia , West Africa**

URGENT DISCLAIMER ON THE ILLEGAL ESTABLISHMENT AND RECOGNITION OF HIGHER EDUCATION INSTITUTIONS IN THE REPUBLIC OF LIBERIA

In order to establish a Higher Education Institution in Liberia , there are two sets of requirements: One set of requirements relates to obtaining a charter to operate from the National Legislature. The other set of requirements has to do with conformity to policies as set by the National Commission on High Education. One stipulation in these policies is that Institutions seeking to be established in Liberia must meet the requirements as set out in the policy, prior to obtaining charters from the National Legislature. The policy clearly provides guidelines regarding the establishment and operation of high education institutions in the Republic of Liberia . These policy guidelines are currently available at the Commission's Secretariat.

On the contrary, the National Commission on High Education has observed with dismay that some colleges or universities have been established without going through the proper channels. For one thing, charters have been granted institutions without prior clearance from the National Commission on High Education. In other cases, several institutions appear to have obtained operational permits or statements of recognition to establish and operate in the country. However, some of these documents were exclusively signed by the former Executive Director of the past administration without the approval of the Commission. Hence, the Permit signed without the approval of the Chairperson is considered invalid, and any institution in possession of such permit is not recognized by the appropriate authorities of the Commission.

Particular references are made to the St. Regis University and St. Luke Medical College that fall in this category. The St. Regis University has publicly made known to the World that it has a legal status to operate in Liberia through the permission of the Commission on High Education. This is not true. Evidence suggests that whatever documents the University claims to have obtained from the Commission were never approved by the Commission and do not bear the signature of the Chairperson. Further, these two institutions are considered Distance Education Institutions and according to the Commission's policy:

*Institutions that are distance education-related and that have approached the National Commission on Higher Education for the operation in Liberia are being processed. Since this is a new area of exploration for the Commission, the public is advised that any decisions already reached reference these Institutions are tentative and that the Commission is continuing its deliberations on these Institutions to final conclusions vis-à-vis their place in the Liberian Higher Education System.*

Accordingly, the National Commission on Higher Education, Republic of Liberia , hereby declares null and void whatever documents St. Regis University may claim to possess

emanating from the Commission until at such time when authorities of the institution can go through the proper procedures for accreditation.

As regards the St. Luke Medical College, evidence also shows that no such college exists in Liberia ; therefore, it cannot claim to have obtained accreditation from the Commission. The Commission also nullifies the existence of such an institution in Liberia , until such time as all pertinent requirements as noted above are met. It therefore goes without saying that similar notice is being sent our to all institutions which are making claims similar to St. Regis and St. Luke that have not met the requirements as herein noted.

Signed: Isaac Roland, Ed.D. (DIRECTOR GENERAL)

Approved: D. Evelyn S. Kandakai, Ed.D. (CHAIRPERSON)

**Exhibit 8 - ATTESTATION FROM NCHE, March 2005**



**REPUBLIC OF LIBERIA**
**NATIONAL COMMISSION ON HIGHER EDUCATION**
Fourth Floor, Room 407
**MINISTRY OF EDUCATION**
P.O. Box 9014
**Monrovia, Liberia, West Africa**



March 3, 2005

## STATEMENT OF ATTESTATION

This is to attest that the **St. Luke School of Medicine** has met some acceptable requirements for the establishment and operation of Post-Secondary institution in the Republic of Liberia. The National Commission on Higher Education hereby issues this statement of recognition to operate a higher learning institution in Liberia pending the complete processing of the **Permit of Operation.**

Thank you.

Signed: *Isaac Roland*

Dr. Isaac Roland
**Director-General/NCHE**

**Exhibit 9 - 12 March 2005 NCHE Letter to Madame Carole Bede**



**REPUBLIC OF LIBERIA**
**NATIONAL COMMISSION OF HIGHER EDUCATION**
Fourth Floor, Room 407
**MINISTRY OF EDUCATION**
P.O. Box 9014
Monrovia, Liberia, West Africa



OFFICE OF THE DIRECTOR GENERAL

March 12, 2005

Madame Carole Bede
Senior Research Analyst
International Medical Education Directory
Foundation of Advancement of International Medical Education and Research
3634 Market Street, 4th Floor
Philadelphia, PA 19104-2685

**Re:    St. Luke School of Medicine**

Dear Madam Bede:

This letter acknowledges receipt of your letter of inquiry dated January 11, 2005, concerning the above institution.

Again, we regret the delay in responding to this inquiry. We are pleased to provide the following information in relation to the questions posed.

1.    Is the St. Luke School of Medicine currently recognized by the government of Liberia for award of the Doctor of Medicine degree?

       Yes. St. Luke School of Medicine is recognized by the government of Liberia to award Doctor of Medicine degrees. The process of reaccredidation is ongoing. St. Luke School of Medicine has been issued an ATTESTATION, and is waiting for the new PERMIT TO OPERATE.

2.    On what date was recognition granted?

       Recognition was granted from August 1, 2000 by the National Legislature of the Republic of Liberia.

MOTTO: Promoting Quality and Equal Higher Educational Opportunities.

3. If the St. Luke School of Medicine is not presently recognized by the government of Liberia for award of the Doctor of Medicine degree was the school previously granted recognition that has since been withdrawn? If so, please state the effective dates of the period of previous recognition.

Liberia presently recognizes St. Luke School of Medicine.

4. If St. Luke School of Medicine was never granted any form of recognition by the government of Liberia for award of the Doctor of Medicine degree, what was the reason for the request to the World Health Organization to list the school in their publications?

The government of Liberia previously recognized St. Luke School of Medicine.

I thank you for your inquiry and your cooperation.

Sincerely yours,

Isaac Roland

Isaac Roland, Ed.D.

DIRECTOR GENERAL

**Exhibit 9A – Receipt for Payment of LMB's Inspection Fee**

REPUBLIC OF LIBERIA
# LIBERIA   MEDICAL BOARD
MINISTRY OF HEALTH & SOCIAL WELFARE
P. O. BOX 10-9009
1000 MONROVIA 10, LIBERIA

Ref

Tel

March 18, 2005

*Receipt*

Received from Dr. J. Dolphine, the sum of (US $500.0) Five Hundred United States Dollars as Inspection fee for the proposed St. Luke School of Medicine in Monrovia.

Amt (US $500.0)

**Exhibit 10 – Liberian Medical Board Assessment of SLSOM Campus**



**REPUBLIC OF LIBERIA**

**LIBERIA   MEDICAL BOARD**
MINISTRY OF HEALTH & SOCIAL WELFARE
P. O. BOX 10-9009
1000 MONROVIA 10; LIBERIA

Ref                                                                                          Tel

March 22, 2005

Dr. Jerroll Dolphin
President
St. Luke School of Medicine
Monrovia, Liberia

Dear Dr. Dolphin:

RE: <u>ASSESSMENT OF ST. LUKE SCHOOL OF MEDICINE</u>

In response to your letter of invitation, dated March 8, 2005, I am pleased to inform you that having assessed the premises of the proposed "St. Luke School of Medicine", we observed that the building for the school is still undergoing major renovation. There is no document on the school (hand book, curriculum; etc.), library and laboratories are not set up. The site is not representative of a Medical School, list of faculty and staff, etc, etc. When these concerns are addressed, the Board shall re-visit the site to determine if the school can be granted permit to start the admission process.

With regards.

Sincerely yours,

Horatius C. Browne, MD, MS, FWACS
CHAIRMAN, LIBERIA MEDICAL BOARD

**Exhibit 11 - NCHE "Computer School" Letter to ECFMG**

04/27/2005  13:30

APR. 27. 2005  8:43AM  ECFMG 215 387 9963                    NO. 90   P. 1

**FAIMER**

## Foundation for Advancement of
## International Medical Education and Research

3624 Market Street
4th Floor
Philadelphia, PA 19104-2685
USA
215-823-2200
215-386-8767 (FAX)
www.faimer.org

**PRESIDENT**
John J. Norcini, Ph.D.

**CHAIR**
James A. Hallock, M.D.

**VICE CHAIR**
Donald G. Kollar, M.D.

**SECRETARY**
Sharon Wood-Dauphinee, Ph.D.

**TREASURER**
David M. Donohue, C.P.A.

**BOARD OF DIRECTORS**
Bushand Ahmed, M.D., F.A.C.S.
Ms. Suzanne T. Anderson
Sandra T. Bowes, M.D.
Joel A. DeLisa, M.D., M.S.
Richard R. Baida, Ph.D.
Lynn D. Fishber, Ph.D., J.D.
James A. Hallock, M.D.
Arthur Kaufman, M.D.
Ira D. Kantz, M.D.
John J. Norcini, Ph.D.
Donald G. Kollar, M.D.
Richard J. Schmidt
Jennifear Trisit, M.B., B.S.
Douglas W. Voth, M.D.
Sharon Wood-Dauphinee, Ph.D.

### FAX TRANSMISSION
### INTERNATIONAL MEDICAL EDUCATION DIRECTORY
### (IMED)
### FAX NUMBER 215-386-0767

Date:              April 27, 2005

To:               St. Luke School of Medicine

From:             **Carole Bede**
                  **Senior Research Analyst**
                  *International Medical Education Directory*

Subject:          National Commission of Higher Education
                          Liberia

Total Number of Pages:      4

Message:

RECEIVED

BY:..........

FAIMER is a non-profit foundation of the Educational Commission for Foreign
Medical Graduates that is committed to advancing international medical education.

04/27/2005  13:58   13235652724                 SLUSUM                              . . .___   ..
APR. 27. 2005  8:40AM   ECFMG 215 387 9963                                    NO. : 90    P.  2



## EDUCATIONAL COMMISSION for FOREIGN MEDICAL GRADUATES
3624 MARKET STREET, PHILADELPHIA, PENNSYLVANIA 19104-3905, U.S./
TELEPHONE: 215-386-5900 • FAX: 215-386-9767 • INTERNET: www.ecfmg.org

April 27, 2005

St. Luke School of Medicine
8516 11th Avenue, 2nd Floor
Inglewood Ca 90305

Dear Sir or Madam:

In December, 2004, ECFMG and FAIMER received information that St. Luke School of Medicine might not be recognized by the National Commission of Higher Education and the government of Liberia. FAIMER subsequently wrote to the National Commission of Higher Education of Liberia for additional information

On March 18, 2005 FAIMER received re-confirmation from the National Commission of Higher Education, Ministry of Education, Liberia, that St. Luke School of Medicine was granted recognition by the National Legislature of Liberia from August 1, 2000. St. Luke School of Medicine Liberia continued to be listed in IMED with "current" graduation years.

However, on April 25, 2005, FAIMER received a letter dated April 11, 2005, from Isaac Roland, Ed.D., Director-General, National Commission of Higher Education, Ministry of Education, Liberia. In his letter, Dr. Roland stated that although the Commission had issued a "letter of attestation to St. Luke School of Medicine," after investigation, it has been determined that St. Luke School of Medicine does not exist in the Republic of Liberia and that "the Secretariat of the National Commission therefore revokes the attestation effective immediately." A copy of this letter is enclosed.

Therefore, although previously listed in IMED, St. Luke School of Medicine Liberia is no longer listed in IMED and students and graduates of the school are not eligible for the USMLE or for ECFMG certification.

Sincerely,

Carole Bede

Carole Bede
Senior Research Analyst
Registration and Credential Services

ECFMG® is an organization committed to promoting excellence in international medical education.

04/27/2005  13:58   13235652724                    SLUSUM

APR. 27. 2005  8:40AM   I(FMG 215 387 9963                    NO. : 90   P. 3




**REPUBLIC OF LIBERIA**

**NATIONAL COMMISSION OF HIGHER EDUCATION**
Fourth Floor, Room 407
MINISTRY OF EDUCATION
P.O. Box 9014
Monrovia, Liberia, West Africa

OFFICE OF THE DIRECTOR GENERAL

April 11, 2005

Madam Carole Bede
Senior Research Analyst
International Medical Education Directory
Foundation for Advancement of
International Medical Education and Research
3824 Market Street
4th Floor
Philadelphia, PA 19104 - 2685
U. S. A.

RECEIVED

APR 25 2005

CREDENTIALS

Dear Madam Beder

Recent investigation by the National Transitional Legislative
Assembly joint Standing Committees on Health & Social Welfare and
Education regarding the existence of the St. Luke School of
Medicine, substantiated by valid documentary evidence has revealed,
beyond all reasonable doubts, that such school does not exist in
the Republic of Liberia.

Although the National Commission on Higher Education had previously
issued and urgent disclaimer notice to the St. Luke School of
Medicine to stop awarding level degrees through distance education,
the authorities however later appealed to the Commission to operate
a Computer School. The Commission then issued a letter of attest-
ation to St. Luke School of Medicine instead of St. Luke School...
The NTLA Committees observed that the Secretariate of the Commission
made an error by issuing the attestation. In fact, the Commission
has never issued any Official Temporary Operational Permit to St.
Luke School of Medicine to operate in Liberia.

In view of the foregoing anomally, the Commission is in full agree-
ment with the NTLA Committees that the so-called St. Luke School
of Medicine or "College" or "University" does not exist in
the Republic of Liberia. The Secretariat of the National Comm-
ission therefore revokes the attestation effectively immediately.

Thank your very much.

Sincerely yours,

Isaac Roland

Isaac Roland, Ed.D.
DIRECTOR - GENERAL

CC:  The Chairman, NTLA Joint Committees On Health
     And Education

     The Chairperson,
     National Commission on Higher Education

     MOTTO: Promoting Quality and Equal Higher Educational Opportunities.

04/27/2005  13:58    13235652724          SLUSON                              NO. 90   P. 4
APR. 27. 2005  8:41AM    ECFMG 215 387 9963

. . 2 . .

The Dean
A. M. Dogliotti  College of Medicine
University of Liberia

## Exhibit 12 - TEXT OF SLSOM'S "WRIT OF PROHIBITION" PETITION

IN THE SUPREME COURT OF THE REPUBLIC OF LIBERIA
SITTING IN IT'S A.D. 2005 MARCH TERM.

CHAMBERS……………………….CAMPBELL……………JUSTICE

| | |
|---|---|
| St. Luke School of Medicine by & thru | ) |
| Its President, Dr. Jerroll B.R. Dolphin, | ) |
| M.D., of the City of Monrovia, R.L… | ) |
| ……………………PETITIONER | ) |
| | ) |
| V E R S U S | ) |
| | ) **PETITION FOR A WRIT** |
| The Government of Liberia by & thru | ) **OF** |
| The Ministry of Justice & the Ministry | ) **PROHIBITION** |
| Of Education & the 5 – man Committee | ) |
| Represented by its Chairman of the City | ) |
| Of Monrovia, R.L…..RESPONDENTS | ) |

### PETITIONER'S PETITION

Petitioner most respectfully petitioning of and against Respondents showeth reasons therefor, to wit:

• That Petitioner, by Legislative Enactment approved April 24, 2003, and published on August 8, 2003, is a duly accredited legal entity existing under such Act (Law) with all rights and privileges to exist and operate a medical school within the Republic of Liberia, as will evidentially appear from photocopies of said Act hereto annexed and marked exhibit "A" and formal approval letter signed by the Chief Executive of Liberia, marked exhibit "B " hereof.

• That following its incorporation it was duly recognized and accredited by the various appropriate authorized functionaries of Government including the Ministry of Health and Social Welfare by & thru Minister Peter Coleman, MD, through a communication bearing date August 15, 2000, relevant excerpt of which reads verbatim:

REPUBLIC OF LIBERIA

MINISTRY OF HEALTH & SOCIAL WELFARE
P.O. BOX 10-0000
1000 – MONROVIA, 10 – LIBERIA

WEST AFRICA

AUGUST 15, 2005

OFFICE OF THE MINISTER

MH&SW/GOL/PSC – M/1255/"00/RL

Mr. Sandra Dumont
HDP ASU/HQ
World Health Organization
CH – 1211, Geneva 27, Switzerland

Dear Madam:

This is to certify that the government of Liberia has accredited the St. Luke School of Medicine to operate within the Republic of Liberia. This Medical School will grant four-year Doctor of Medicine (MD) and is regulated through the Ministry of Health.

The date of accreditation is effective August 1, 2000.

It is our hope that this information will be useful and that all necessary courtesies will be accorded the above mentioned Medical School.

Kind regards.

Sincerely yours,

Peter Coleman, MD, MS/FWAC
Minister

And attached hereto as exhibit "C" hereof.

Also, Statement of Attestation dated March 3, 2005 duly issued and signed by Dr. Isaac Roland, Director General of NCHE, for and behalf of the said National Commission on Higher Education and a Permit issued on September 17, 2002 by the National Commission on Higher Education, hereto attached and marked exhibits "D" & "E" respectively.

• That subsequent to the foregoing, Petitioner was duly granted a Charter by the Legislative Enactment proffered supra, thus authorizing it to exist and operate in Liberia as an educational Institution and/or medical school..

• That having been granted the right to operate as a school of medicine, Petitioner opened an office and began to identify a commodious and conducive space befitting of such an Institution, having already imported valuable medical pieces of equipment, as will evidentially appear from photocopies of an Articles of Incorporation and Lease Agreement hereto attached as exhibits "F" & "G" respectively.

• That Respondent being the second Branch of Government divested of the constitutional mandate and authority to annul, abrogate, invalidate and declare any Act or Law null and void ab initio, has arrogated unto itself the sole power of publicly declaring a Legislative Act null and

void, by which it has grossly usurped the function of the Judiciary by unconstitutionally nullifying the Act creating Petitioner and granting it charter to exist and operate as a legal entity, without due process of law. Quoted hereunder verbatim is the unconstitutional Executive Decision of Respondent:

"REPUBLIC OF LIBERIA
      **PUBLIC AFFAIRS**
MINISTRY OF INFORMATION, CULTURE AND TOURISM
P.O. BOX 10-9021 – CAPITOL HILL
1000 MONROVIA, 10 LIBERIA

Office Of The Director Of Public Affairs

**<u>PRESS RELEASE</u>**

**MICAT/MONROVIA/JULY 15 2005: -** The Government of Liberia
Has ordered the immediate closure of the St. Luke School of Medicine
for illegally operating in the Country.

According to an information Ministry release issued today, The
Government's decision is based on the findings and recommendations of a five – member committee constituted last March to prope the existence of St. Luke.

A full criminal investigation is to be conducted against the proprietor of the school and others who may have knowingly aided the process of opening the school.

All medical degrees issued by St. Luke School of Medicine are nullified and the school pronounced non – existent in Liberia, in keeping with the committee's recommendations approved by the Chairman of the National Transitional Government of Liberia. His Excellency Charles Gyude Bryant.

The committee had observed that an Act to Incorporate St. Luke was approved in 2003, but was never enacted by the legislature in session.

The cabinet committee further observed that the St. Luke School issued medical degrees in December 2001, January 2002, June 2002, August 2002, February 2003 and June 2003 when Monrovia was under attack.

The Cabinet Committee chaired by Justice Minister Kabineh Ja'neh, included Education Minister Evelyn Kandakai, Transport Minister Vamba Kanneh, Health Minister Peter Coleman and the Director – General of the Cabinet, Hon. Soko V. Sackor.

Signed: Director of Public Affairs"

Also attached hereto as exhibit "H" is photocopy of said decision.

•     That by operation of Law and under the doctrine of Separation of power, the Executive Branch of Government wantonly lacks the authority to abrogate any Act of the Legislature or to say the least to investigate and invalidate any Law, however odious it be, except the Judicial Branch which shall do so through judicial review. Hence, the Respondent utterly violated the constitution of Liberia when it declared the subject Act fraudulent and subsequently ordered the closure of the office of Petitioner, even without due process of Law.

• That in furtherance of Respondent's unconstitutional act, it has ordered the arrest and incarceration of Petitioner's officers without recourse to judicial proceeding through due process of law.

Wherefore, Petitioner prays that this Honorable Court will prohibit Respondent from invalidating, nullifying and declaring null and void its legal charter or Legislative Enactment and to further prohibit Respondent from closing down its offices and to undo those acts done by Respondent appertaining thereto, without jurisdiction; and to further grant unto Petitioner such relief justice and right may demand in the premises.

Dated this 21 day of
July, A.D. 2005

Respectfully submitted
Petitioner by & thru its
Legal Counsel:

_____

Francis Y.S. Garlawolu
**COUNSELLOR-AT-LAW**

$5.00 Revenue Stamp affixed hereto on the original.

REPUBLIC OF LIBERIA   )   IN THE OFFICE OF THE JUSTICE OF THE PEACE
MONTSERRADO COUNTY)   FOR MONTSERRADO COUNTY, R.L.

| | |
|---|---|
| St. Luke School of Medicine by & thru   ) | |
| Its President, Dr. Jerroll B.R. Dolphin,   ) | |
| M.D., of the City of Monrovia, R.L…   ) | |
| …………………PETITIONER   ) | |
|    ) | |
| **V E R S U S**   ) | |
|    ) | **PETITION FOR A WRIT** |
| The Government of Liberia by & thru   ) | **OF** |
| The Ministry of Justice & the Ministry   ) | **PROHIBITION** |
| Of Education & the 5 – man Committee   ) | |
| Represented by its Chairman of the City   ) | |
| Of Monrovia, R.L…..RESPONDENTS   ) | |

## PETITIONER'S AFFADAVIT

**PERSONALLY APPEARED BEFORE ME**, a duly qualified and commissioned Justice of the

Peace for the City of Monrovia, Montserrado County, Republic of Liberia, Jerroll B.R. Dolphin,

M.D, Petitioner in the above entitled cause of action and made oath according to law and facts

that every and singular the allegation as contained in the annexed PETITIONER'S PETITION

are true and correct to the best of his knowledge and belief and as to those matters of information

received he verily believes them to be true and correct.

Sworn and subscribed to before me
This ___ day of July A.D. 2005


_____
Justice of the Peace for Montserrado
County, Republic of Liberia

_____
Jerroll B.R. Dolphin, M.D
    **PETITIONER**