MICHAEL D. YOUNG (SBN 120787)
NICOLE C. RIVAS (SBN 179337)
**ALSTON & BIRD LLP**
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
Telephone:  (213) 576-1000
Facsimile:  (213) 576-1100
Email:  mike.young@alston.com
          nicole.rivas@alston.com

Attorneys for Defendants THE BOARD OF TRUSTEES
OF THE UNIVERSITY OF ILLINOIS, erroneously sued as
THE UNIVERSITY OF ILLINOIS-URBANA CHAMPAIGN;
and DR. GEORGE GOLLIN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ST. LUKE SCHOOL OF MEDICINE; DR. JERROLL B.R. DOLPHIN and DR. ROBERT FARMER on behalf of himself and all others similarly situated, as applicable, <br><br> Plaintiffs, <br><br> v. <br><br> REPUBLIC OF LIBERIA; MINISTRY OF HEALTH, a Liberian Governmental Agency; MINISTRY OF EDUCATION, a Liberian Governmental Agency; LIBERIAN MEDICAL BOARD, a Liberian Governmental Agency; NATIONAL COMMISSION ON HIGHER EDUCATION, a Liberian Governmental Agency; NATIONAL TRANSITIONAL LEGISLATIVE ASSEMBLY, a Liberian Governmental Agency; DR. ISAAC ROLAND; MOHAMMED SHERIFF; DR. BENSON BARH; DR. GEORGE GOLLIN; EDUCATION COMMISSION FOR FOREIGN MEDICAL GRADUATES; a Pennsylvania Non-Profit organization; FOUNDATION FOR ADVANCEMENT OF INTERNATIONAL EDUCATION AND RESEARCH; a Pennsylvania Non-Profit organization, UNIVERSITY OF ILLINOIS-URBANA CHAMPAIGM, an Illinois Institution of Higher Learning; STATE OF OREGON, Office of Degree Authorization, <br><br> Defendants. | Case No.:  10-CV-01791 RGK (SHx) <br><br> [Honorable R. Gary Klausner] <br><br> **APPENDIX OF STATE AND UNPUBLISHED AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT DR. GEORGE GOLLIN:** <br><br> **(a)   TO DISMISS (ON GROUNDS OF SOVEREIGN IMMUNITY AND VIOLTION OF RULE 8)** <br><br> **(b)   ALTERNATIVELY FOR MORE DEFINITE STATEMENT; AND** <br><br> **(c)   TO STRIKE FOR FAILURE TO PLEAD CLASS** <br><br> **[FILED CONCURRENTLY WITH NOTICE OF MOTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MICHAEL D. YOUNG; AND [PROPOSED] ORDER]** <br><br> **[FRCP 8, 12(b)(1), 12(e), 12(f) & 41(b)]** <br><br> DATE:              July 26, 2010 <br> TIME:              9:00 a.m. <br> COURTROOM:  850 |

**STATE AUTHORITIES**

*Wozniak v. Conry* (Ill. App. Ct., 1997) 679 N.E.2d 1255, 288 Ill.App.3d 129..........1

**UNPUBLISHED AUTHORITIES**

*Pollak v. Board of Trustees of the University of Illinois* (N.D. Ill 2004) 2004 U.S. Dist. Lexis 12046...................................................................................................2

*Stearns v. Select Comfort Retail Corp.* (N.D. Cal. 2009) 2009 U.S. Dist. Lexis 112971.....................................................................................................3

*Stewart v. California Dept. of Education* (S.D. Cal. 2008) 2008 U.S. Dist. Lexis 76228...........................................................................................4

Respectfully Submitted

DATED:  June 22, 2010            MICHAEL D. YOUNG
                                NICOLE C. RIVAS
                                **ALSTON & BIRD LLP**


                                         /s/
                                _____
                                      Nicole C. Rivas
                                Attorneys for Defendants THE BOARD OF
                                TRUSTEES OF THE UNIVERSITY OF ILLINOIS;
                                and DR. GEORGE GOLLIN

LEGAL02/31982510v1

# EXHIBIT 1



LEXSEE 288 ILL. APP. 3D 129, 135

**LOUIS WOZNIAK, Plaintiff-Appellant, v. THOMAS F. CONRY, Defendant-Appellee, and MICHAEL H. PLECK, LARRY R. FAULKNER, C.K. GUNSALUS, WAYNE J. DAVIS, EDWARD N. KUZNETSOV, L. DANIEL METZ, DAVID E. GOLDBERG, JURAJ V. MEDANIC, MARK W. SPONG, WILLIAM R. SCHOWALTER, KEN MURPHY, MICHAEL AIKEN, ROSCOE PERSHING, CAROLYN REED, and THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Respondents in Discovery.**

NO. 4-96-0631

**APPELLATE COURT OF ILLINOIS, FOURTH DISTRICT**

**288 Ill. App. 3d 129; 679 N.E.2d 1255; 1997 Ill. App. LEXIS 268; 223 Ill. Dec. 482**

March 19, 1997, Oral Argument Held
May 8, 1997, FILED

**SUBSEQUENT HISTORY:** [***1] As Corrected September 23, 1997.

**PRIOR HISTORY:** Appeal from Circuit Court of Champaign County. No. 96L60. Honorable John G. Townsend, Judge Presiding.

**DISPOSITION:** Affirmed.

**COUNSEL:** For LOUIS WOZNIAK, Plaintiff-Appellant: Robert G. Kirchner, Lerner & Kirchner, Champaign, IL. ARGUER: For Appellant: Robert G. Kirchner.

For THOMAS F. CONRY, Defendant-Appellee: Michael R. Cornyn, Thomas, Mamer & Haughey, Champaign, IL. William J. Brinkmann, Thomas, Mamer & Haughey, Champaign, IL. ARGUER: For Appellee: Michael R. Cornyn.

**JUDGES:** Honorable Robert J. Steigmann, P.J., Honorable Rita B. Garman, J. - CONCUR, Honorable Robert W. Cook, J. - CONCUR. PRESIDING JUSTICE STEIGMANN delivered the opinion of the court.

**OPINION BY:** Robert J. Steigmann

**OPINION**

[*130] [**1256] PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In February 1996, plaintiff, Louis Wozniak, sued defendant, Thomas F. Conry, for tortious interference with an employment contract. In July 1996, the circuit court dismissed the complaint for lack of jurisdiction. The court ruled that because Conry's conduct arose solely out of conduct related to duties imposed on him by virtue of his job at the University of [***2] Illinois (University), a state institution, Wozniak's suit could only be brought in the Court of Claims. 705 ILCS 505/8 (West Supp. 1995). Wozniak appeals, and we affirm.

I. BACKGROUND

Prior to July 1995, Wozniak was an associate professor in the Department of General Engineering (Department) at the University. In August 1995, Wozniak was reassigned from a teaching position to a position maintaining a website on the World Wide Web for the College of Engineering (College). In February 1996, Wozniak filed a one-count complaint against Conry, the acting Department head, alleging that Conry had tortiously interfered with his employment contract with the University's Board of Trustees (Board).

In his complaint, Wozniak alleged Conry made false accusations about him, knowing they were untrue or acting with reckless disregard [*131] for their truth. These accusations included statements that Wozniak had (1)

sexually harassed a female employee; (2) deliberately failed to comply with course standards and departmental policy regarding assignments, practice exams, and grade books; and (3) graded capriciously and in violation of University policies and procedures.   [**1257] Wozniak also alleged that Conry falsely [***3] told others in the Department that Wozniak was unable to carry out his teaching duties in compliance with professional and ethical standards. Further, Wozniak alleged that Conry told the Department's executive committee members that the Dean of the College had requested the committee's support in removing Wozniak from his assigned responsibilities, knowing this statement to be untrue or acting with reckless disregard for its truth.

Wozniak also alleged that Conry knew of Wozniak's contractual relationship with the Board and had acted with the intent to interfere with this relationship. Wozniak did not allege that a specific provision of his contract had been breached, but alleged that Conry intentionally interfered with his employment relationship, directly and proximately causing him to be removed from his position as associate professor. Wozniak alleged that this removal caused him to suffer emotional distress, humiliation, embarrassment, a loss of sleep and appetite, and a loss of reputation.

In March 1996, Conry filed a motion to dismiss the complaint, contending that the circuit court lacked jurisdiction over Wozniak's claim. Conry argued that Wozniak's claim was, in effect, [***4] a claim against the state, which could only be brought in the Court of Claims under section 8 of the Court of Claims Act (Act) ( 705 ILCS 505/8 (West Supp. 1995)). In the alternative, Conry contended that the court should dismiss the complaint because it failed to state a cause of action for tortious interference with a contractual relationship. Specifically, Conry asserted that Wozniak failed to allege his contract with the Board had been breached by his reassignment.

In May 1996, the circuit court dismissed Wozniak's complaint for lack of jurisdiction without addressing the sufficiency of the pleadings. In its opinion letter, the court based its decision on the fact that Wozniak's charges of negligence arose solely out of duties imposed on Conry by virtue of his job at the University.

In June 1996, Wozniak filed a motion to reconsider. He argued that (1) the only duty Conry breached was the duty imposed on all people, regardless of employment, not to interfere with others' contractual relations; and (2) his claim was based on Conry's intentional conduct, not negligence. In July 1996, the circuit court sent a second opinion letter to counsel, reaffirming its conclusion [*132] that it lacked [***5] jurisdiction because Conry's conduct was related to his job duties at the University. In both opinion letters, the court relied on the holdings in *Currie v. Lao*, 148 Ill. 2d 151, 592 N.E.2d 977, 170 Ill. Dec. 297 (1992), and *Nikelly v. Stubing*, 204 Ill. App. 3d 870, 562 N.E.2d 360, 149 Ill. Dec. 896 (1990).

## II. ANALYSIS

The issue before us is whether Wozniak's suit against Conry, a supervisor for a state entity, is in reality a suit against the state such that the Court of Claims has exclusive jurisdiction over the action.

The parties disagree on the relevant standard for determining if a suit against a supervisor for a state entity for allegedly tortious statements about an employee's work is effectively a suit against the state. Wozniak contends that his suit is not effectively against the state because Conry's statements regarding him did not arise out of a duty imposed solely by virtue of Conry's employment; instead, those statements arose out of a duty imposed on the general public not to interfere with others' contractual relationships. Conry contends that a suit against a state employee constitutes a suit against the state as long as the employee acted within the [***6] scope of his governmental authority when engaging in the conduct giving rise to the suit. See *Robb v. Sutton,* 147 Ill. App. 3d 710, 716, 498 N.E.2d 267, 272, 101 Ill. Dec. 85 (1986). Accordingly, Conry contends that the circuit court has no jurisdiction in this case because his statements regarding Wozniak were made within the scope of his employment at the University.

Section 8 of the Act provides, in pertinent part, as follows:

> "The [Court of Claims] shall have exclusive jurisdiction to hear and determine the following matters:
>
> [**1258]  (a) All claims against the State founded upon any law of the State of Illinois, or upon any regulation thereunder by an executive or administrative officer or agency *** or claims for expenses in civil litigation.
>
> * * *
>
> (d) All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit, and all like claims sounding in tort against *** the [Board] ***." 705 ILCS 505/8(a), (d) (West Supp. 1995).

Determining whether an action constitutes a suit against the state turns upon an analysis of the issues involved and the relief sought, rather than the [***7] formal designation of the parties. *Healy v. Vaupel*, 133 Ill. 2d 295, 308, 549 N.E.2d 1240, 1247, 140 Ill. Dec. 368 (1990). In *Currie*, the supreme court specifically held that a state employee is not immunized by sovereign immunity for his own acts of negligence merely [*133] because he was acting within the scope of his employment. *Currie*, 148 Ill. 2d at 158, 592 N.E.2d at 980; see also *Healy*, 133 Ill. 2d at 312-13, 549 N.E.2d at 1249 (finding that a suit was effectively against the state, not an individual coach at a state university, for violation of a duty identical to duties imposed on coaches at private universities), cited with approval in *Currie*, 148 Ill. 2d at 165-66, 592 N.E.2d at 983. Instead, the supreme court concluded that where a state employee, although acting within the scope of his employment, is charged with breaching a duty that arose independently of his state employment, a suit against him will not be shielded by sovereign immunity. *Currie*, 148 Ill. 2d at 159-60, 592 N.E.2d at 980.

Although Conry's statements regarding Wozniak may have been made within the scope of his employment at the University, Wozniak argues nonetheless that they violated [***8] a duty imposed on the general public not to interfere with others' contractual relationships. Wozniak asserts that because this duty is not imposed solely because of Conry's employment, the suit was not effectively against the state.

In *Currie*, the supreme court also recognized that a suit against a state employee in his individual capacity constitutes a claim against the state when a judgment for the plaintiff could control the state's actions or subject it to liability. *Currie*, 148 Ill. 2d at 158, 592 N.E.2d at 980. This rule "protects the State from interference in its performance of the functions of government and preserves its control over State coffers." *S.J. Groves & Sons Co. v. State of Illinois*, 93 Ill. 2d 397, 401, 444 N.E.2d 131, 133, 67 Ill. Dec. 92 (1982), *overruled on other grounds, Rossetti Contracting Co. v. Court of Claims*, 109 Ill. 2d 72, 485 N.E.2d 332, 92 Ill. Dec. 521 (1985).

A suit against a state employee controls the state's actions when the relief sought would limit the ability of the employee to engage in lawful activity on behalf of the state. See *Management Ass'n of Illinois, Inc. v. Board of Regents of Northern Illinois University*, [***9] 248 Ill. App. 3d 599, 609, 618 N.E.2d 694, 701, 188 Ill. Dec. 124 (1993). The threat of private suits against supervisors for work-related statements about those under their authority clearly would affect the way supervisors communicate, allocate tasks, and make employment decisions. Accordingly, when a supervisor for a state department or entity is sued by an employee for statements

regarding the employee's work-related conduct and pending personnel decisions, the suit necessarily threatens to control the actions of the state. It does not matter if, as here, the plaintiff alleges the statements were knowingly false. See *Rembis v. Board of Trustees of the University of Illinois*, 249 Ill. App. 3d 1, 4, 618 N.E.2d 797, 799, 188 Ill. Dec. 227 (1993) (notwithstanding *dicta* in *Robb* (147 Ill. App. 3d at 714, 498 N.E.2d at 271)). Instead, the relevant inquiry [*134] is whether the supervisor would be acting within the scope of his duties by making truthful statements of the general type alleged. *Cf. President Lincoln Hotel Venture v. Bank One, Springfield*, 271 Ill. App. 3d 1048, 1057, 649 N.E.2d 432, 438-39, 208 Ill. Dec. 376 (1994) (focusing on whether individual defendant [**1259] had authority [***10] to take general type of action giving rise to contract claim, not whether action violated contract).

However, this rule--that a suit against a state employee constitutes a suit against the state when a judgment for a plaintiff could control the state's actions--is not without limits. Whenever a state employee performs illegally, unconstitutionally, or without authority, a suit may still be maintained against the employee in his individual capacity and does not constitute an action against the State of Illinois. *Sass v. Kramer*, 72 Ill. 2d 485, 492, 381 N.E.2d 975, 977, 21 Ill. Dec. 528 (1978); *Village of Riverwoods v. BG Ltd Partnership.*, 276 Ill. App. 3d 720, 725, 658 N.E.2d 1261, 1265-66, 213 Ill. Dec. 240 (1995).

Here, Conry's conduct goes to the *core* of the state's ability to control its own affairs. A state is a purely legal entity that can act only through its agents. See *Local 3236 v. Illinois State Board of Education*, 121 Ill. App. 3d 160, 164-65, 459 N.E.2d 300, 303, 76 Ill. Dec. 663 (1984). Almost every aspect of every employment relationship with the state manifests itself through the immediate working relationships between co-workers, supervisors, and fellow [***11] state agents. Therefore, limiting the actions of state employees acts to control the actions of the state. *Currie*, 148 Ill. 2d at 159-60, 592 N.E.2d at 980.

To allow Wozniak's suit against Conry in his individual capacity clearly would limit Conry's ability to engage in lawful activity on behalf of the University--namely, to communicate, allocate tasks, and make personnel and other employment decisions. Conry's comments, which were within the scope of his employment, related to the employment relationship between Wozniak and the University. One comment concerned the Dean's response to Wozniak's alleged misconduct. The rest of Conry's comments involved Wozniak's performance as a teacher and supervisor. A judgment for Wozniak would directly influence Conry's ability as a state employee to

288 Ill. App. 3d 129, *; 679 N.E.2d 1255, **;
1997 Ill. App. LEXIS 268, ***; 223 Ill. Dec. 482

handle departmental personnel issues. Accordingly, this suit threatens to control the actions of the state.

Suits against supervisors of state departments or state agencies for statements they would not be authorized by their position to make--even if the statements were true--are only indirectly related to the employment relationship and are unlikely to control the actions [*135] of the state. See [***12] *Robb*, 147 Ill. App. 3d at 715, 498 N.E.2d at 272. This factor distinguishes *Ritchey v. Maksin*, 49 Ill. App. 3d 974, 365 N.E.2d 127, 7 Ill. Dec. 842 (1977), *rev'd on other grounds*, 71 Ill. 2d 470, 376 N.E.2d 991, 17 Ill. Dec. 662 (1978), relied on by Wozniak. In that case, the fifth district held that a meat inspector can be sued individually for tortiously initiating false criminal charges and making false public accusations because initiating criminal charges and making public statements were not part of his normal duties. *Ritchey*, 49 Ill. App. 3d at 975, 365 N.E.2d at 128. This factor also distinguishes *Hoffman v. Yack*, 57 Ill. App. 3d 744, 746, 373 N.E.2d 486, 488, 15 Ill. Dec. 140 (1978), in which the fifth district also held that a suit was not against the state when the defendant supervisor made personal accusations that did not relate solely to the employee's job, and the supervisor also intercepted the employee's mail.

Wozniak urges this court to adopt an alternative rule that would attribute a supervisor's conduct (in making work-related statements) to the state only if the circuit court makes some preliminary evidentiary finding regarding their truthfulness. [***13] Because Conry obviously would possess the authority to make the statements giving rise to the suit if they were true, the truth-fulness of the statements would then become dispositive of the circuit court's jurisdiction. However, jurisdiction generally does not turn on the merits of the underlying claim. See *People of the State of California v. Western Tire Auto Stores, Inc.*, 32 Ill. 2d 527, 531, 207 N.E.2d 474, 476-77 (1965); 3 R. Michael, Illinois practice §§ 6.2, 6.5, at 60, 68 (1989). Because courts look only to the complaint to determine if sovereign immunity attaches, we decline to adopt the rule Wozniak urges. *Cf. Christiansen v. Masse*, 279 Ill. App. 3d 162, 169, 664 N.E.2d 314, 319, 215 Ill. Dec. 917 (1996); *President Lincoln Hotel*, 271 Ill. App. 3d at 1056, [**1260] 649 N.E.2d at 438.

To summarize our holding, the Court of Claims provides the only forum for a suit against a supervisor of a state department or agency for making statements regarding pending personnel decisions and work-related conduct about an employee under his or her supervision. Such statements are within the scope of the supervisor's duties as a state employee. While acting within the scope of one's employment [***14] is not usually enough to satisfy the analysis set forth by the supreme court in *Currie*, it is sufficient in this context, because any limit on such a supervisor's ability to make such statements would necessarily control the actions of the state.

[*136]  III. CONCLUSION

For the reasons stated, we affirm the circuit court's dismissal for lack of jurisdiction.

Affirmed.

GARMAN and COOK, JJ., concur.

1071NQ

********** Print Completed **********

Time of Request: Wednesday, June 16, 2010  21:07:09 EST

Print Number:    1842:227017759
Number of Lines: 211
Number of Pages:

Send To:  RIVAS, NICOLE
          ALSTON & BIRD LLP- LA TRANSACTIONAL
          333 S HOPE ST FL 16
          LOS ANGELES, CA 90071-1406

# EXHIBIT 2



LEXSEE 2004 U.S. DIST. LEXIS 12046



Positive
As of: Jun 22, 2010

**RAYMOND POLLAK, M.D., Plaintiff, v. BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, et al., Defendants.**

**Case No. 99 C 710**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

**2004 U.S. Dist. LEXIS 12046**

**June 29, 2004, Decided**
**June 29, 2004, Filed; June 30, 2004, Docketed**

**DISPOSITION:** [*1] Defendants' motions to Dismiss GRANTED.

**COUNSEL:** For RAYMOND POLLAK, United States of America and the State of Illinois ex rel, plaintiff: Robin B. Potter, Robin Potter & Associates, P.C., Chicago, IL. Laurie J Wasserman, Law Offices of Laurie J. Wasserman, Skokie, Il. Ronald E Osman, Ronald E. Osman & Associates, Marion, IL.

For BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, defendant: William Denby Heinz, Jerold Sherwin Solovy, Lise Taylor Spacapan, Robert R. Stauffer, Jenner & Block, LLC, Chicago, IL. Patrick Sean Coffey, Jamie Marie Haberichter, Gardner Carton & Douglas LLP, Chicago, IL.

For JAMES J STUKEL, President of the University of Illinois, CHARLES RICE, Vice Chancellor for Health Affairs, R K DIETER HAUSSMANN, former Vice Chancellor for Health Affairs, GERALD S MOSS, Dean, College of Medicine, WILLIAM CHAMBERLIN, Associate Dean, College of Medicine, individually, defendants: Robert R. Stauffer, Jenner & Block, LLC, Chicago, IL.

**JUDGES:** Harry D. Leinenweber, Judge, United States District Judge.

**OPINION BY:** Harry D. Leinenweber

**OPINION**

**MEMORANDUM OPINION AND ORDER**

[*2] Plaintiff Raymond Pollak, M.D. (hereinafter, "Pollak") filed both qui tam and individual claims against Defendants Board of Trustees of the University of Illinois (hereinafter, the "BOT") and several of his former supervisors (hereinafter, the "Individual Defendants") under the federal False Claims Act (the "FCA"), 31 U.S.C. § 3729 and the Illinois Whistleblower Recovery and Protection Act (the "IWRPA"), 740 ILCS 175/4. The United States and the State of Illinois intervened in the qui tam actions, and settled these claims against the BOT, leaving only Pollak's private claims for retaliation outstanding. These claims are based on 31 U.S.C. § 3730(h) and 740 ILCS 175/4(g), respectively. The BOT and the Individual Defendants have each moved to dismiss the remainder of Pollak's case in its entirety on Eleventh Amendment grounds.

**I. STANDARD OF REVIEW**

2004 U.S. Dist. LEXIS 12046, *

Federal Rule of Civil Procedure 8(a)(2) requires that "[a] pleading which sets forth a claim for relief, . . . shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A motion to [*3] dismiss under Rule 12(b)(6) tests whether the plaintiff has properly stated a claim upon which relief could be granted, not whether the plaintiff will ultimately prevail on the merits. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974). In ruling on a motion to dismiss, a court must construe all well-pleaded allegations of the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Id.* A motion to dismiss will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).

## II. DISCUSSION

### A. Claims against the BOT

By suing the BOT, Pollak has invoked serious Eleventh Amendment concerns. The Eleventh Amendment protects states and "arms of the states" from suit in federal court absent their consent or Congress' explicit decision to confer jurisdiction. *Benning v. Board of Regents,* 928 F.2d 775, 777 (7th Cir. 1991).

In *Cannon v. University of Health Sciences/Chicago Medical School,* 710 F.2d 351 (7th Cir. 1983) the Seventh [*4] Circuit held that the BOT qualified as an "arm of the state" for Eleventh Amendment purposes, barring a suit against it in federal court. *Canon* has been consistently upheld by numerous decisions within the Seventh Circuit and its subservient district courts. See *Kaimowitz v. Bd. of Trustees of the University of Illinois,* 951 F.2d 765, 767 (7th Cir. 1991); *Goshtasby v. Bd. of Trustees of the University of Illinois,* 123 F.3d 427 (7th Cir. 1997); *McMiller v. Bd. of Trustees of the Univ. of Illinois,* 275 F. Supp. 2d 974, 979 (N.D. Ill. 2003). Similarly, state courts within Illinois have also held that the BOT qualifies as an arm of the state for sovereign immunity purposes. See *Ellis v. Board of Governors of State Colleges & Universities,* 102 Ill. 2d 387, 393, 466 N.E.2d 202, 80 Ill. Dec. 750 (1984).

Pollak hopes to overcome this precedential case law by asking the Court to revisit the reasoning underpinning *Canon.* Pollak argues that, although the BOT qualified as an arm of the state circa *Canon* in 1984, it does not necessarily follow that it remains an arm of the state in perpetuity. To support this argument, Pollak notes that the State of Illinois [*5] now contributes a significantly smaller portion of the BOT's budget than it did in 1984. Additionally, Pollak points out that some of our sister courts have rejected claims that state universities qualify as arms of the state when the state at issue contributed a significantly higher share of the university budget than Illinois does here. See *Kovats v. Rutgers,* 822 F.2d 1303 (3rd Cir. 1987); *Honadle v. University of Vermont,* 115 F. Supp. 2d 468 (D. Vt. 2000). Accordingly, Pollak urges the Court to conduct a "fact intensive inquiry" to determine whether or not the BOT still qualifies as an arm of the state, and not blindly follow *Canon* and its progeny.

Pollak makes a cogent point that the designation of an agency or organization as an arm of the state is not immutable. Certainly, the Court can envision circumstances in which an agency so designated would lose its sovereign immunity protection upon acquiring significant autonomy from the State or ceasing to depend on the State for financial support. In the most obvious example, if a State totally privatizes a once public college or hospital, the newly private body would indisputably lose its privileged status.

[*6] That being said, in the absence of such a clear change of status here, the Court does not believe it appropriate for the District Court to engage in Pollak's requested fact-intensive inquiry. The Court notes that it has received precedential guidance on this question from the Seventh Circuit as recently as 1997. In the intermediate time, Pollak has shown nothing so extreme as to warrant this Court from engaging in the judicial hubris of attempting to overrule a higher authority. If Pollak wishes to reargue the BOT's status as an arm of the state, he may do so within the appropriate forum of the Seventh Circuit upon appeal. As of now, the Court finds that BOT still qualifies as an arm of the state under the Eleventh Amendment.

Pollak makes two other arguments that he believes permits his claims to survive. First, Pollak contends that the BOT waived its right to claim sovereign immunity when the State of Illinois intervened and settled the qui tam claims originally filed by Pollak. Alternatively, Pollak argues that the intervention of the United States in the qui tam action voided any claim that the BOT had to invoke sovereign immunity. These arguments are without merit. To begin with, [*7] although the United States and the State of Illinois intervened and settled the qui tam claims, they expressly declined to intervene (nor arguably, could they intervene) in the at-issue retaliation claims. Furthermore, the settlement agreement that resolved the qui tam claims provided that the BOT "expressly reserves any and all defenses to any and all remaining counts of the Civil Action." Ergo, the BOT specifically refused to waive its sovereign immunity defense and, in the settlement agreement, the United States and the State of Illinois consented to permit the BOT to retain these defenses.

As a result, the Court finds that sovereign immunity protects the BOT from suit under both the FCA and the IWRPA.

### B. Claims against the Individual Defendants

In addition to the BOT, Pollak has sued the Individual Defendants in both their official and individual capacities. With respect to suing the Individual Defendants in their official capacities, Pollak runs afoul of the same Eleventh Amendment concerns that preclude him from maintaining a suit against the BOT. Therefore, for the same Eleventh Amendment reasons as discussed above, the Court dismisses Pollak's suit against the Individual [*8] Defendants in their official capacities.

With respect to his suit against the Individual Defendants in their individual capacities, Pollak does not face an Eleventh Amendment bar. Nevertheless, these claims also lack merit, as Pollak fails to establish that the FCA even authorizes him to file such a suit. The Court notes that, unlike other federal statutes, 31 U.S.C. § 3730(h) of the FCA imposes liability only upon "employers," not any person who could conceivably retaliate against a whistleblower. Although the Seventh Circuit has never addressed this issue, our sister courts have uniformly held that supervisors, such as the Individual Defendants, do not qualify as "employers" subject to liability under the FCA. See United States, ex rel. Golden v. Arkansas Game & Fish Commission, 333 F.3d 867, 871 (8th Cir. 2003), cert. denied, 157 L. Ed. 2d 894, 124 S. Ct. 1069 (2004); United States, ex rel. Siewick v. Jamieson Science and Engineering, Inc., 355 U.S. App. D.C. 278, 322 F.3d 738, 740 (D.C. Cir. 2003); United States, ex rel. Wilkins v. Ohio, 885 F. Supp. 1055 (S.D. Ohio 1995); United States, ex rel. McVey v. Bd. of Regents, 165 F. Supp. 2d 1052, 1056 (N.D. Cal. 2001). [*9] Pollak gives this Court no reason to doubt that the Seventh Circuit, should it ever address this issue, would

reach a different conclusion than every other court that has ever considered it.

The Court therefore dismisses Pollak's FCA claims against the Individual Defendants. As a result of this dismissal, combined with the Court's dismissal of the FCA claims against the BOT, Pollak no longer has any federal claims pending. This, in turn, prevents the Court from exercising supplemental jurisdiction over any IWRPA claims Pollak might have against the Individual Defendants (such claims against the BOT having been dismissed due to the BOT's sovereign immunity). Therefore, the Court also dismisses the IWRPA claims against the Individual Defendants.

### CONCLUSION

For the reasons stated herein, the Court finds Pollak's claims barred by precedent within the Seventh Circuit and the State of Illinois, and the Motions to Dismiss of the BOT and the Individual Defendants are **GRANTED.**

### IT IS SO ORDERED.

Harry D. Leinenweber, Judge

United States District Court

Dated: June 29, 2004

### JUDGMENT IN A CIVIL CASE

Decision by Court. This action came before the [*10] Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the motions to dismiss of the Board of Trustees and the Individual Defendants are granted.

Date: 6/29/2004

12

# EXHIBIT 3

13



LEXSEE 2009 U.S. DIST. LEXIS 112971



Positive
As of: Jun 22, 2010

**MOLLY STEARNS, et al., Plaintiffs, v. SELECT COMFORT RETAIL CORPO-RATION, a Minnesota Corporation; BED BATH & BEYOND, INC. a New York Corporation; and THE SLEEP TRAIN, a California Corporation, Defendants.**

**Case Number 08-2746 JF (PVT)**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

**2009 U.S. Dist. LEXIS 112971**

**December 4, 2009, Decided
December 4, 2009, Filed**

**PRIOR HISTORY:** Stearns v. Select Comfort Retail Corp., 2009 U.S. Dist. LEXIS 48367 (N.D. Cal., June 5, 2009)

**COUNSEL:** [*1] For Molly Stearns, Plaintiff: Robert M. Gagliasso, LEAD ATTORNEY, Andrew Vinson Stearns, Bustamante O'Hara & Gagliasso, San Jose, CA.

For Ruth Rose, Dennis Fuller, Dan Schlesinger, Bonnie Fuller, Karen Williams, Brian Williams, Plaintiffs: Andrew Vinson Stearns, Bustamante O'Hara & Gagliasso, San Jose,, CA.

For Select Comfort Retail Corporation, a Minnesota Corporation, Defendant: Dianne L. Sweeney, LEAD ATTORNEY, Vernon H. Granneman, Pillsbury Winthrop Shaw Pittman LLP, Palo Alto, CA; Andrew Scott Hansen, PRO HAC VICE, Oppenheimer Wolff & Donnelly, Minneapolis, MN; Heidi A.O. Fisher, Meghan M Anzelc, PRO HAC VICE, Oppenheimer Wolff & Donnelly LLP, Minneapolis, MN; Jennifer Hutcheson McCune, Wendy L. Wilcox, Jampol Zimet Skane and Wilcox LLP, San Francisco, CA.

For Bed Bath & Beyond, Inc, Defendant: Dianne L. Sweeney, LEAD ATTORNEY, Vernon H. Granneman, Pillsbury Winthrop Shaw Pittman LLP, Palo Alto, CA;

Andrew Scott Hansen, PRO HAC VICE, Oppenheimer Wolff & Donnelly, Minneapolis, MN; Heidi A.O. Fisher, Meghan M Anzelc, PRO HAC VICE, Oppenheimer Wolff & Donnelly LLP, Minneapolis, MN.

For THE SLEEP TRAIN, Defendant: Dianne L. Sweeney, LEAD ATTORNEY, Pillsbury Winthrop Shaw Pittman LLP, [*2] Palo Alto, CA.

**JUDGES:** JEREMY FOGEL, United States District Judge.

**OPINION BY:** JEREMY FOGEL

**OPINION**

ORDER [1] GRANTING MOTIONS TO STRIKE AND DISMISS WITH LIMITED LEAVE TO AMEND

1 This disposition is not designated for publication in the official reports.

[re: docket no. 64]

Plaintiffs, on behalf of themselves and all residents of California and Florida similarly situated, assert various claims arising from the development of mold in beds designed, manufactured, distributed and sold by Defen-

14

dant Select Comfort Retail Corporation ( "Select Comfort"), a Minnesota corporation. Defendant The Sleep Train, Inc. ("Sleep Train") is a California corporation that sells Sleep Number (R) beds in its retail stores. Defendant Bed Bath & Beyond ("BBB") is a New York corporation that at one time leased space to Select Comfort in some of its stores for the sale of Sleep Number (R) beds. Defendants move to strike Plaintiffs' newly-alleged individual claims for personal injuries and putative class allegations based upon Florida Statute 501.202, et seq. They also move to dismiss Plaintiffs' second amended complaint ("SAC") in its entirety and to strike all of the purported class claims contained therein. For the reasons set forth below, both [*3] motions will be granted, with limited leave to amend.

## I. BACKGROUND

### A. Procedural History

On April 25, 2008, Plaintiff Molly Stearns ("Stearns"), a California resident, filed a complaint in the Santa Clara Superior Court alleging that she had found mold in a Sleep Number (R) bed purchased at BBB in 2000. The complaint alleged claims for strict product liability, intentional misrepresentation, negligent misrepresentation, concealment, breach of express warranty, and breach of implied warranty. Stearns also sought to bring a class action on behalf of all purchasers and users of Sleep Number (R) beds purchased between January 1, 1987 and December 31, 2005. Defendants removed the action to this Court and then moved to dismiss all of Stearns' claims except for the product liability claim and to strike the class allegations. On October 1, 2008, the Court dismissed the complaint with leave to amend. In striking Stearns' class claims, the Court noted the inherent difficulty of maintaining a class action arising from alleged personal injuries. Dkt. #28 at 11-12. On October 30, 2008, Stearns and additional named plaintiffs filed their first amended complaint ("FAC"), amending their previous claims [*4] and adding a new defendant (Sleep Train). The FAC also included new claims for relief based upon (1) negligence; (2) violation of the Magnusson-Moss Warranty Act ("MMWA"); (3) unfair competition pursuant to the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (4) false advertising pursuant to the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; (5) violation of Section 1 of the Sherman Act; (6) violation of California's Cartwright Act; (7) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750; (8) violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (9) conspiracy in violation of RICO, 18 U.S.C. § 1962(d); and (10) violation of the Consumer Product Safety Act ("CPSA"), 15 U.S.C. §

2064, et seq. In addition, the claim for breach of express warranty was asserted expressly pursuant to Uniform Commercial Code ("UCC") § 2-313. The implied warranty claim was bifurcated into separate claims for breach of the implied warranty of merchantability (UCC § 2-314) and breach of the implied warranty of fitness (UCC § 2-315). In total, Plaintiffs asserted [*5] seventeen claims for relief, none of which included claims based upon personal injuries. On June 5, 2009, the Court granted Defendants' motion to dismiss with leave to amend in part. Leave to amend was limited expressly to Plaintiffs' claims based upon negligence, strict product liability, breach of express warranty, and violations of the MMWA and UCL. The Court also granted Defendants' motion to strike Plaintiffs' purported class claims. The Order stated clearly that Plaintiffs could "not add any new defendants, plaintiffs or claims for relief without leave of the Court." Dkt. #59 ("Order") at 29.

On July 6, 2009, Plaintiffs filed the operative SAC, asserting claims for negligence, strict product liability, breach of express warranty, and violations of the MMWA and UCL. The SAC also includes a new claim under Florida's unfair competition statute, and personal injuries once again are alleged as a basis for Plaintiffs' claims for negligence and strict product liability. Defendants filed the instant motion on September 18, 2009.

### B. General Allegations

Select Comfort first began designing, manufacturing, distributing and selling Sleep Number (R) beds in 1987. SAC P 29. A limited twenty-year [*6] warranty accompanied each Sleep Number (R) bed. Id. PP 29, 172. Plaintiffs allege that the Sleep Number (R) bed is defectively designed, causing it to develop mildew and mold. Id. P 40. They claim that the bed's frame supports one or two air chambers, also known as bladders, that are surrounded by foam pieces known as inserts or toppers. Id. PP 39, 40. The inserts and toppers then are "enclosed by another level of foam and a cover which completes the enclosure." Id. P 39. The bladders are covered with a canvas material that, along with the foam components, allegedly "absorb[s] moisture which is never naturally ventilated due in part to the construction of the bladder which is a piece of rubber or PVC sandwiched between two pieces of canvas." Id. Plaintiffs allege that the bed's design is "inherently defective" because it is "an encapsulated closed system that is not air permeable." Id. P 40.

According to Plaintiffs, moisture produced by human perspiration "collects on top of the bladder and is absorbed and stored in the foam padding which acts as a sponge." Id. Mold then allegedly develops on the bladder and the foam and cannot be cleaned off, as it is found in an enclosed area. Id. [*7] The SAC alleges that the "air migrates from the outside environment into the bed and

stops at the top of the vapor barrier (bladder) where it is then exhausted in contaminated form into the outside environment -- some of the spores become airborn[e] and migrate up through the mattress cover and into the bedding." Id. Plaintiffs allege that mold does not typically grow in other beds, because most "upholstered products...account for the need for ventilation and provide breathable features to prevent exactly the scenario that the Sleep Number (R) bed produces." Id. P 41. Plaintiffs claim that Select Comfort has received thousands of complaints related to mold growth in its Sleep Number (R) bed prior to and since 2004. Id. P 45.

Plaintiffs allege that in 2005, when Select Comfort made improvements to the Sleep Number (R) bed, it allegedly applied mold inhibitors only to the "mattress covers" and not to the air chambers and foam toppers of the bed. Id. P 69. This allegation is directly contradicted by language found in Exhibit F (a Yahoo! Buzz article entitled, "The Real Deal," posted on June 8, 2008), which Plaintiffs themselves attached as an exhibit to the FAC. FAC Ex. F at 47. In this [*8] article, Select Comfort represented publicly that, "All key components of the Sleep Number (R) bed -- including foam, air chambers, and fabrics -- are treated with a proprietary antimicrobial agent to deter the growth of mold, mildew, and bacteria." Id.

Select Comfort's limited warranty promises repair or replacement of a defective product or component. SAC P 34. The language of the limited warranty indicates that repair or replacement of the defective product or component is the "exclusive remedy, in lieu of all incidental, special or consequential damages, including for negligence...Select Comfort will bear no other damages or expenses." Id. Plaintiffs allege that Defendants are unable to repair the defect and that replacements of the defective product only has led to replacement of one defective part with another defective part. Id. P 33. While the limited warranty does not mention explicitly the availability of a full refund for customers who have found mold in their beds, Select Comfort in fact has offered, in addition to replacement components and replacement of the entire bed, a full refund at no charge to the customer. FAC, Ex. B at 17 (indicating in an online customer complaint [*9] board that a customer who has an issue with mold is entitled to a full refund and providing the Select Comfort Customer Care phone number). However, Plaintiffs now claim that Select Comfort "selectively enforces the terms of the warranty and provides refunds to customers in a selective manner and customarily only to those that complain and assert injury beyond the product itself and in some cases not at all." SAC P 34.

## C. Individual Allegations

### 1. Molly Stearns

Stearns alleges that she purchased a Sleep Number (R) bed in 2000 at BBB, that she discovered mold in her bed, contacted Select Comfort customer service in April 2008, and subsequently received a refund check from Select Comfort without having requested one. The check did not include additional money for Stearns' alleged additional property damage or "associated costs with replacing the defective products." Id. PP 17, 56, 76 (including replacement bedding). Stearns alleges that she suffered personal injuries as a result of the mold. Id. PP 85, 86, 106, 107 (describing, not individually, but generally as to Stearns, Dennis Fuller, Schlesinger, and Rose, "personal injuries to their pulmonary system including allergies, asthma and [*10] other pulmonary distress; and to their skin in the form of an allergic reaction"). Stearns asserts individual negligence and strict product liability claims stemming from her alleged injuries and purports to act as a California class representative with respect to Plaintiffs' warranty and unfair competition claims. Id. PP 121, 165-225.

### 2. Ruth Rose

Ruth Rose ("Rose"), a California resident, alleges that she bought a Sleep Number (R) bed in 1996 and that she called Select Comfort to complain of mold in her bed in May 2008. Id. P 18, 46. Rose was offered free replacement parts, but she rejected them when Select Comfort's customer service representative would not guarantee that the replacements would not incubate mold. Id. P 46. Select Comfort then provided Rose a full refund for her twelve-year-old bed, but it did not provide any additional compensation for other property damage allegedly caused by the mold. Id. P 47, 76 (including replacement bedding). Rose also asserts that she suffered personal injuries as a result of the mold in her bed. Id. PP 85, 86, 106, 107 (describing, not individually, but generally as to Stearns, Dennis Fuller, Schlesinger, and Rose, "personal injuries to their [*11] pulmonary system including allergies, asthma and other pulmonary distress; and to their skin in the form of an allergic reaction"). Like Stearns, Rose asserts individual claims for negligence and strict product liability based upon her alleged personal injuries and purports to act as a California class representative with respect to Plaintiffs' warranty and unfair competition claims. Id. PP 121; 165- 225.

### 3. Dennis and Bonnie Fuller

Dennis and Bonnie Fuller ("the Fullers"), residents of Florida, allege that they purchased a Sleep Number (R) bed in 1996. Id. P 19. The Fullers contacted Select Comfort about mold in their bed in 2008 and were provided a refund for their twelve-year-old bed, but they were not compensated for additional property damage they allegedly sustained or for the costs of replacing the defective products they requested. Id. PP 48-49, 76, 89

(including the cost of replacement bedding, a HVAC ("heating, ventilation, and air conditioning") replacement, and carpet cleaning to mitigate the effect of mold contamination allegedly caused by the Sleep Number (R) bed). Dennis Fuller also allegedly suffered physical injuries, although Bonnie Fuller did not. *Id.* PP 85, 86, 106, 107 [*12] (describing, not individually, but generally as to Stearns, Dennis Fuller, Schlesinger, and Rose, "personal injuries to their pulmonary system including allergies, asthma and other pulmonary distress; and to their skin in the form of an allergic reaction"). Dennis Fuller brings personal claims for negligence and strict liability premised upon his alleged personal injuries (First and Second Causes of Action) and purports to act as a Florida class representative for Plaintiffs' warranty and unfair competition claims. *Id.* PP 121, 165-225. Dennis Fuller's claims also include a claim for violation of a Florida consumer protection statute that is referenced for the first time in the SAC. *Id.* PP 210-224. Bonnie Fuller brings negligence and strict products liability claims as a purported Florida class representative based upon her alleged economic injuries. *Id.* PP 119, 136-164.

### 4. Dan Schlesinger

Dan Schlesinger ("Schlesinger"), a California resident, alleges that he purchased a Sleep Number (R) bed in 1994. *Id.* P 20. Schlesinger's factual allegations in the SAC are materially inconsistent with his allegations in the FAC. In the FAC, Schlesinger alleged that he contacted Select Comfort in *2004* [*13] and that he received replacement parts before the antimicrobial reformulation conducted by Select Comfort in 2005. FAC P 189. Schlesinger claimed that these replacement parts subsequently developed mold and that when he reported this to Select Comfort, he was provided a full refund on his fourteen-year-old bed. *Id.* The SAC alleges that Schlesinger contacted Select Comfort in *2003,* that Select Comfort provided replacement parts on two different occasions, that both sets of replacements developed mold, and that he *never* received his requested refund. SAC PP 53-54, 90.

### 5. Karen and Bryan Williams

Karen Williams, a California resident, alleges she purchased a Sleep Number (R) bed from Sleep Train for her son, Bryan Williams, on February 10, 2004. *Id.* PP 21, 22. Bryan Williams, a California resident, was the user of the bed. *Id.* Karen Williams states that she contacted Select Comfort to complain about mold in Bryan Williams' bed in 2006 and 2007 and that replacement parts were sent to Bryan Williams. *Id.* P 50. The Williamses allege that the new parts developed mold and that "K. Williams also called and reported mold to Select Comfort and Sleep Train after the new parts developed mold, mildew, [*14] and wetness." *Id.* Defendants con-

tend that this allegation is demonstrably false based upon a recorded customer service call dated January 26, 2007, during which Karen Williams requested a refund for Bryan Williams' bed but made no mention of mold. MTS at 7, citing Order n. 2 (clarifying that the Court need not consider the substance of the telephone call to decide the instant motion, but recognizing that in the call Karen Williams was talking about moisture in the bed rather than mold). The SAC also alleges that Karen Williams sent a letter, with return receipt requested, to Lisa Riedesel and Bill McLaughlin, the CEO of Select Comfort, on May 14, 2007, complaining of the mold issues in her son's bed, the outstanding "need for a recall notice to be sent out to all those with Sleep Number (R) beds," and documenting several telephone calls to Select Comfort about the need for a recall. SAC P 51. Karen Williams alleges that she requested a refund in writing and was refused both a refund and reimbursement for related expenses totaling $ 32,000. *Id.* P 51, 52.

Select Comfort allegedly redesigned the Sleep Number (R) bed in 2005 to inhibit mold growth in response to customer complaints. *Id.* P 69. [*15] Plaintiffs argue that Defendants thus were on notice of the defect in the beds. Plaintiffs claim that Select Comfort nonetheless continued to distribute defective replacement beds and parts to consumers who had mold in their beds. *Id.* PP 57, 58. Moreover, when Select Comfort learned of the defect that caused the mold growth, Defendants allegedly did not provide notice to the public or any warning to Plaintiffs of the defect. *Id.* PP 60-61. Plaintiffs assert that putative class members and the named plaintiffs have "obtained replacement parts since the 2005 redesign and the results are identical-mold incubation in the internal components." *Id.* P 72. Plaintiffs allege specifically that "Schlesinger, Rose, and Williams have each told Select Comfort that mold growth has occurred in their beds since the 2005 reformulation," but that Select Comfort continues to claim that "there have been 0 confirmed cases of mold in a Sleep Number (R) bed sold after the antimicrobial reformulation in 2005." *Id.*

Each named plaintiff claims to have removed or replaced his or her defective bed. Each claims to have suffered consequential damages in the form of the cost of replacement bedding, including sheets, [*16] pillows, comforters, and blankets ("replacement bedding"). *Id.* P 76. Plaintiffs contend that the cost of replacement bedding is property damage independent of the defective products themselves, and that no plaintiff has received compensation for this damage. In addition, all Plaintiffs allege that they suffered damages in the form of shipping and handling costs for the original bed and replacement parts. *Id.* P 77.

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *See Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533-34 (9th Cir. 1984). Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1997); *see also Pareto v. FDIC,* 139 F.3d 696, 699 (9th Cir. 1998). However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001); [*17] *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 561, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ("a wholly conclusory statement of [a] claim" will not survive motion to dismiss).

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n,* 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. *In re Silicon Graphics, Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th Cir.1999). Leave to amend should be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrs.,* 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp,* 90 F.3d 386, 393 (9th Cir. 1996).

## III. DISCUSSION

### A. Newly-Alleged Claims

"Under Federal Rule of Civil Procedure 12(f), a court may strike a pleading or any portion of a pleading that is "redundant, impertinent, or scandalous." Fed. R. Civ. P. 12(f). In its order on [*18] June 5, 2009, this Court expressly limited Plaintiffs' leave to amend to claims for negligence, strict product liability, breach of express warranty, and violations of the MMWA and UCL. Order at 29. The Court also stated clearly that "Plaintiffs shall not add any new defendants, plaintiffs or claims for relief without leave of the Court." *Id.; see also* Fed. R. Civ. P. 15(a)(2) (after a response is filed, a party may amend its pleadings "only by leave of court or by written consent of the adverse party"); *Serpa v. SBC Telecommunications, Inc.,* No. 03-4223, 2004 U.S. Dist. LEXIS 18307, 2004 WL 2002444, at *3 (N.D. Cal. Sep. 7, 2004) (striking a newly-asserted claim that was outside the scope of the court's previous order's leave to amend). While it is true that the SAC does not add new claim *headings,* Plaintiffs in fact assert new claims for personal injuries within their negligence and strict liability claims, *see* SAC PP 85-86, 106-09 (describing, not individually, but generally as to Stearns, Dennis Fuller, Schlesinger, and Rose, "personal injuries to their pulmonary system including allergies, asthma and other pulmonary distress; and to their skin in the form of an allergic reaction"); as well as violation of [*19] an entirely new statute, Florida Statute 501.202, et seq., within their UCL claim. SAC PP 210-221. The new allegations are material additions rather than amendments and should not have been asserted without leave of court. [2] Order at 6, 29 (addressing the FAC's deficient general allegations of property damages beyond any broken contractual promise found in paragraph 72 and providing leave to amend so that Plaintiffs may identify which of the named plaintiffs suffered what harm and to make a distinction between harm already suffered and harm that may be suffered in the future); *see also* Order at 24-27 (dismissing the FAC's UCL claim and providing leave to amend so that Plaintiffs may articulate more clearly the basis for the alleged violation).

2 In addition, Stearns may have waived her right to assert personal injury claims by omitting such claims from the FAC after having asserted them in her original complaint. *London v. Coopers & Lybrand,* 644 F.2d 811, 814 (9th Cir. 1981). While a number of courts have criticized the *London* rule as "formalistic," *see Davis v. TXO Production Corp.,* 929 F.2d 1515, 1517-18 (10th Cir. 1991), the rule is well-established in the Ninth Circuit. *See Loux v. Rhay,* 375 F.2d 55, 57 (9th Cir. 1967) [*20] ("The amended complaint supersedes the original, the latter being treated thereafter as nonexistent."); *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987) ("All causes of action alleged in an original complaint which are not alleged in an amended complaint are waived."); *Marx v. Loral Corp.,* 87 F.3d 1049, 1055 (9th Cir. 1996); *see also Nelson v. Capital One Bank,* 206 F.R.D. 499, 501 (N.D. Cal. 2001) ("[c]onsolidated complaint . . . supersedes the original complaint"); *Lindner Dividend Fund, Inc. v. Ernst & Young,* 880 F. Supp. 49 (D. Mass. 1995) (holding that a consolidated class action complaint superseded earlier complaints).

### B. Warranty Claims

#### 1. Breach of Express Warranty (UCC § 2-313)

Plaintiffs' breach of express warranty claim is brought on behalf of a purported class represented by

Stearns, Dennis Fuller, Schlesinger, Rose, Karen Williams, Bryan Williams [3] and Bonnie Fuller. SAC P 121. An explicit promise by the seller with respect to the quality of goods that is part of the bargain between the parties creates an express warranty "that the goods shall conform to the affirmation or promise." UCC § 2-313. To plead a claim for breach of express warranty, the buyer must allege that [*21] the seller "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Blennis v. Hewlett-Packard Co.*, No. C 07-00333, 2008 U.S. Dist. LEXIS 106464, 2008 WL 818526, at *2 (N.D. Cal. Mar. 25, 2008) (citation omitted). Such a claim must describe the exact terms of the warranty, allege that buyer reasonably relied on those terms, and that the breach of the warranty was the proximate cause of the buyer's injury. *See id.* A buyer also must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovering the breach. UCC § 2-607(3)(a); *see also Pollard v. Saxe & Yolles Dev. Co.*, 12 Cal.3d 374, 380, 115 Cal. Rptr. 648, 525 P.2d 88 (1974) ("The requirement of notice of breach is...designed to allow the defendant opportunity for repairing the defective item, reducing damages, avoiding defective products in the future, and negotiating settlements."). The buyer has the burden of showing that reasonable notice was provided. *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 135, 87 Cal. Rptr. 3d 5 (2008). [4]

> 3 Bryan Williams cannot represent [*22] a class of purchasers who entered into a warranty agreement because he was not the purchaser of his bed.
> 4 Timely notice of breach is not required where the buyers did not purchase the product from the manufacturer directly. *See Sanders v. Apple Inc.*, No. C 08-1713, 672 F. Supp. 2d 978, 2009 U.S. Dist. LEXIS 6676, 2009 WL 150950, at *8 (N.D. Cal. Jan. 21, 2009), citing *Greenman v. Yuba Power Prods.*, 59 Cal.2d 57, 61, 27 Cal. Rptr. 697, 377 P.2d 897 (1963). The SAC alleges that five of the seven named Plaintiffs purchased their Sleep Number (R) beds directly from Select Comfort. SAC PP 17-18. The remaining named Plaintiffs purchased their beds through Sleep Train, a retailer. *Id.* P 21.

**A. Pre-Suit Notice**

A buyer must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovering the breach. UCC § 2-607(3)(a); *see Pollard*, 12 Cal.3d at 380. Defendants contend that the Court already has determined that Stearns failed to provide pre-

suit notice, and that this determination is fatal to Stearns' express warranty claim in the SAC. MTS at 15, citing Order at 7, n. 4 (concluding that Stearns did not provide adequate opportunity for Select Comfort to address her concerns as the original complaint alleged that she first discovered [*23] mold on April 22, 2008, only three days before the filing of that complaint in state court). While the SAC now omits the date when Stearns first discovered mold, it indicates that she first contacted Select Comfort some time in April 2008. The generalized nature of Stearns' amended allegations makes it even less clear whether notice was provided before Stearns filed her original complaint in the Santa Clara Superior Court. For this reason, Stearns once again has failed to allege a viable express warranty claim.

Defendants also contend that Karen Williams did not provide adequate notice to Select Comfort that her replacement parts had developed mold. Reply at 7, citing Order at 3, n. 2 (noting but not relying upon or determining the admissibility of a January 26, 2007 telephone call with Select Comfort, in which Karen Williams called about moisture in the bed, but made no mention of mold). In the SAC, Karen Williams alleges that she called Select Comfort to complain about the design defect in 2007, that she also called to complain in 2006, that she "communicated by U.S. Mail, return receipt requested, to Lisa Riedesel and CEO Bill McLaughlin of Select Comfort of the mold issues involving the bed she purchased for her son and the need for a recall notice to be sent out to all those with Sleep Number (R) beds," and that she called Select Comfort to complain when the new foam and replacement parts sent to Bryan Williams developed mold. SAC PP 50-51. Defendants point out that the May 14 letter is not attached to the SAC and that there is no allegation that Karen Williams received proof of delivery. On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court generally must assume that Plaintiffs' allegations are true. Nonetheless, Plaintiffs still fail to allege when Karen Williams or Bryan Williams complained to Select Comfort about the allegedly defective *replacement parts*. While it is apparent that Select Comfort was provided notice of and indeed attempted to cure the original defect about which Karen Williams complained, it still is unclear from the SAC whether Select Comfort was provided with adequate notice and opportunity to cure the subsequent defect in the replacement parts.

Notice is pled adequately as to the remaining named Plaintiffs. The SAC alleges that Select Comfort was notified of the alleged mold growth, and that in each instance the seller attempted to remedy the issue through replacement parts or a refund. *See* UCC § 2-607 Official Comment 4 ("The content of the notification need merely

be sufficient to let the seller know that the transaction is still troublesome and must be watched.")

## B. Select Comfort's Limited Warranty

### 1. Breach

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 525, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992). The express warranty at issue here provided that Sleep Number (R) beds would be "free from defects in materials and workmanship for a period of 20 years from the original purchase date." Order at 8, citing FAC Ex. G. In its June 5 Order, the Court held that because Defendants offered repair or replacement goods, and when that remedy proved unsatisfactory provided full refunds to all named Plaintiffs, the buyer was provided with the "substantial value of the bargain" and thus suffered no cognizable injury. Order at 8-10; *See* UCC § 2-719 Official Comment 1; *see also Marr Enters., Inc. v. Lewis Refrigeration Co.,* 556 F.2d 951, 955 (9th Cir. 1977) ("if the seller did not replace [*26] the defective parts, the purchaser was entitled to refund of the purchase price...mere failure to replace or repair would not cause the court to read in the general remedy provisions of the UCC [due to failure of essential purpose]"). Moreover, when the named Plaintiffs accepted the refund, they essentially modified the terms of the express warranty and the remedies available for breach. *See* UCC § 2-719 Official Comment 1 ("parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.")

Plaintiffs Schlesinger and Karen Williams now allege that their request for a refund was refused. While the FAC was silent as to whether Williams received a refund, it stated explicitly that Schlesinger did in fact receive a refund from Select Comfort when he complained about mold. Plaintiffs offer no explanation for this directly contradictory statement of material fact as to Schlesinger or newly-alleged fact as to Williams. In both cases, Select Comfort's failure to provide a refund or repair the mold found in the customers' beds would constitute a potential breach of the warranty if proper notice and an [*27] opportunity to cure was provided. However, as discussed above, *see supra* III.B.1A, there still are no allegations by Karen Williams or Bryan Williams as to when or if Karen Williams provided adequate notice of the mold that developed in the replacement parts. In addition, Schlesinger fails to allege an actionable warranty claim at all because he claims to have discovered the mold in his bed in 2003, well outside the four-year limitations period. Cal. Com. Code § 2725; SAC P 53.

Defendants also raise a new legal argument. They contend that the Limited Warranty contains a condition precedent to Select Comfort's warranty obligation, which is that "the original purchaser must deliver the defective product or component to a Select Comfort service center prior to such expiration at the original purchaser's expense." FAC Ex. A. Defendants point out that the SAC contains no allegations that any plaintiff complied with this condition. However, just as it may be concluded that Plaintiffs' waived their right to a replacement under the warranty when they accepted the refund, Select Comfort may be considered to have waived the purported condition precedent when it provided full refunds or replacement [*28] parts upon the receipt of Plaintiffs' complaints. *See* UCC § 2-719 Official Comment 1 ("parties are left free to shape their remedies to their particular requirements and reasonable agreements limiting or modifying remedies are to be given effect.")

### 2. Special or Consequential Damages

Finally, the express warranty excludes recovery for "special or consequential damages." FAC Ex. G. The enforceability of such an exclusion is addressed in the California Commercial Code, which provides in pertinent part that:

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is invalid unless it is proved that the limitation is not unconscionable. Limitation of consequential damages where the loss is commercial is valid unless it is proved that the limitation is unconscionable.

Cal. Com. Code § 2719(3).

"Unconscionability has both a procedural and a substantive element." *Aron v. U-Haul Co. of California,* 143 Cal.App.4th 796, 808, 49 Cal.Rptr.3d 555 (2006), citing *Armendariz v. Foundation Health Psychcare Services, Inc.* 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000). [*29] The procedural element of unconscionability focuses on two factors: oppression and surprise. *Id.* (internal citation omitted). Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. *Id.* (internal quotation and citation omitted). Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms. *Id.* (internal quotation and citation omitted). The

2009 U.S. Dist. LEXIS 112971, *

substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create overly harsh or one-sided results as to shock the conscience. *Id.* (internal quotation and citation omitted). There must be a showing of both elements at the time the contract is made. *See Avinelis v. BASF Corp.,* No. CV F 08-0618, 2008 U.S. Dist. LEXIS 84122, 2008 WL 4104277, at *6 (E.D. Cal. Sep. 3, 2008), citing *Am. Software, Inc. v. Ali,* 46 Cal. App. 4th 1386, 54 Cal. Rptr. 2d 477, 480 (Cal. Ct. App. 1996).

Plaintiffs argue that the limited warranty is unconscionable because it does not provide for a refund on its face and the right to a refund is available only after a customer discovers [*30] a defect and makes a complaint. They assert that the warranty is procedurally unconscionable because consumers have no bargaining power with respect to the warranty at the time of purchase and substantively unconscionable because refunds are provided selectively. Plaintiffs attempt to characterize Select Comfort's business policy of providing a refund upon a customer request, when a repair or replacement is either refused or not possible, as a "surprise" and as a "secret warranty" program. However, the Court concluded in its June 5 Order that Select Comfort's conduct is consistent with California public policy as expressed in the Song-Beverly Consumer Warranty Act:

> [I]f the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer, less tat amount directly attributable to sue by the buyer prior to the discovery of the nonconformity.

*See* Cal. Civ. Code § 1793.2(d)(1). Given the fact that Select Comfort's policy is consistent with California law, [*31] Plaintiffs' arguments lack merit. Plaintiffs themselves allege that Select Comfort provided a full refund to at least some consumers without discounting the refund based on present value, regardless of how long the consumer had owned an allegedly defective bed.

Nor do Plaintiffs allege any facts that would support a conclusion that the consequential damages limitation of the express warranty is substantively unconscionable. All of Plaintiffs' alleged damages, such as the cost of replacing bedding, shipping and handling costs for replacement beds and parts, and the replacement of the HVAC system, are incidental and consequential. Because Plaintiffs

have not shown that the Limited Warranty is unconscionable, the warranty as such excludes recovery for anything beyond the cost of the bed itself. Plaintiffs also fail to provide sufficient detail with respect to the alleged damages to their bedding and the Fullers' HVAC system, such as the reasons the bedding and HVAC system needed to be replaced and the approximate cost of such replacement.

### 2. Violation of Magnusson-Moss Act

The SAC alleges that Defendants' breach of the express warranty also constituted a violation of the MMWA. *See* SAC P  [*32] 165-83. While the MMWA provides a federal cause of action for state warranty claims, *Monticello v. Winnebago Indus. Inc.,* 369 F. Supp. 2d 1350, 1356 (N.D. Ga. 2005), it does not expand the rights available under such warranties, and dismissal of the state law claims requires the same disposition with respect to an associated MMWA claim. *See id. See also Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1022 (9th Cir. 2008) ("disposition of the state law warranty claims determines the disposition of the Magnusson-Moss Act claims."); *Daugherty v. Am. Honda Motor Co., Inc.,* 144 Cal. App. 4th 824, 833, 51 Cal. Rptr. 3d 118 (2006) ("the trial court correctly concluded that failure to state a warranty claim under state law necessarily constituted a failure to state a claim under Magnusson-Moss.") The MMWA also provides that no private action may be brought unless the defendant first is "afforded a reasonable opportunity to cure such failure to comply" and in the case of a purported class action, "such reasonable opportunity will be afforded by the named plaintiffs and they shall at that time notify the defendant they are acting on behalf of the class." 15 U.S.C. § 2310(e). While the SAC contains allegations that [*33] the named Plaintiffs contacted Select Comfort about mold in their beds, Plaintiffs once again have failed to allege that they provided adequate notice to Select Comfort that they were acting on behalf of the class prior to filing suit.

### C. Negligence and Strict Products Liability

### 1. Individual Claims

### A. Personal Injuries

As discussed above, *see supra* III.A, the Court will strike all allegations of personal injury from the SAC, without prejudice to Plaintiffs' right to seek leave of court to allege personal injury claims.

### B. Property Damage

To state a claim for negligence, a plaintiff must allege that the defendant owed a duty to the plaintiff that subsequently was breached, and that such breach was the

proximate cause of the plaintiff's injury. *See Ditto v. McCurdy,* 510 F.3d 1070, 1078 (9th Cir. 2007). To prevail on a claim for strict product liability, a plaintiff must show that "a manufacturer is or should have been aware that a product is unreasonably dangerous absent a warning and [if] such warning is feasible, the manufacturer will be held strictly liable if it fails to give an appropriate and conspicuous warning." *Maneely v. Gen. Motors Corp.,* 108 F.3d 1176, 1179 (9th Cir. 1997). "[R]ecovery [*34] under the doctrine of strict liability is limited solely to 'physical harm to person or property." *Jimenez v. Sup. Ct.,* 29 Cal. 4th 473, 482, 127 Cal. Rptr. 2d 614, 58 P.3d 450 (2002), quoting *Seely v. White Motor Co.,* 63 Cal.2d 9, 18, 45 Cal. Rptr. 17, 403 P.2d 145 (1965).

Defendants contend that the economic loss doctrine bars recovery of economic damages on either theory because full refunds or replacement parts were provided to all of the named Plaintiffs. As discussed previously, when "a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be contract alone, for he has suffered only 'economic' losses.'" *Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal. 4th 979, 988, 22 Cal. Rptr. 3d 352, 102 P.3d 268 (2004) (citations omitted). Thus, any damages related to Plaintiffs' "disappointed" expectations or purely economic loss are not recoverable pursuant to either claim. *See id.* ("The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise.") *Jimenez,* 29 Cal. 4th at 482 ("Damages available under strict product liability do not include economic loss, which includes 'damages [*35] for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits - without any claim of personal injury or damages to other property.") (citations omitted).

Plaintiffs argue that they have alleged harm beyond a broken promise, and that they suffered property damage because they needed to purchase replacement bedding. SAC PP 39-42, 76, 144, 160 (identifying replacement bedding as sheets, pillows, comforters, and blankets). However, while Plaintiffs allege that mold migrates from the bed into the "bedding" and that each Plaintiff has purchased replacement bedding, the SAC does not explain who had to replace what bedding, why the presence of mold in a particular bed necessitated that the bedding for that bed be replaced, or approximately how much the replacement cost.

The Fullers allege that they had to replace their HVAC system. However, beyond a conclusory allegation of causation, Plaintiffs do not offer any explanation of how, when or why the mold in the Fullers' bed forced them to replace their HVAC. [5] *Id.* P89, 110. The Fullers

do not claim that they notified Select Comfort of the need to replace their HVAC system in 2008, when they complained [*36] of mold in their Sleep Number (R) bed. *Id.* Plaintiffs' allegations regarding the costs of shipping and handling for their beds and any replacement parts relate to the product itself and thus are subject to the economic loss rule. *Id.* PP 77, 145, 161.

>   5   Even if the Fullers' had a valid negligence claim for property damage notwithstanding the economic loss rule, Defendants argue that this Court has no interest in a dispute between the Fullers, who are residents of Florida, and Select Comfort Retail Corporation, a Minnesota corporation. 28 U.S.C. § 1391(a). Defendants also contend that the Fullers' claims are unique and inappropriate for class treatment.

## 2. Purported Class Claims

Plaintiffs' Third and Fourth Causes of Action for negligence and strict product liability are asserted on behalf of "Class I" plaintiffs, defined as "[a]ll persons located within California and Florida who used the Sleep Number (R) bed by Select Comfort from January 1, 1987 through the present and whose beds contain mold." *Id.* P 116. The proposed class representatives for these claims are California resident Karen Williams and Florida resident Bonnie Fuller.

These claims are facially defective as currently pled. First, [*37] as noted previously, Karen Williams cannot serve as a representative of this class because the SAC alleges not that she used the bed, but that she purchased the bed that was used subsequently by her son Bryan Williams. *Id.* P 21.

Second, the Class alleges property damage in the form of shipping and replacement costs, in addition to the cost of replacement bedding. The shipping and replacement costs are connected to the product itself and are plainly barred by the economic loss rule. *Id.* PP 145, 161. The allegations with respect to replacement bedding do not explain why the bedding had to be replaced or what the cost of the replacement was. The latter omission is important, because *de minimis* damage claims in cases of this kind have been rejected by courts both in California and elsewhere. MTS at 13, citing *County of Santa Clara v. Atl. Richfield,* 137 Cal. App. 4th 292, 40 Cal. Rptr. 3d 313, 335-36; *Theideman v. Mercedes-Benz USA, LLC,* 183 N.J. 234, 872 A.2d 783, 795 (N.J. 2005), *Frank v. Daimler Chrysler Corp.,* 292 A.D.2d 118, 120, 127, 741 N.Y.S.2d 9 (N.Y. 2002). Plaintiffs argue in their opposition that the cost of replacement bedding is more than *de minimis,* but there are no such allegations in the SAC. Finally, as discussed above, [*38] conse-

quential damages are barred by the express limitations of the warranty.

### 3. Unreasonably Dangerous

Plaintiffs claim that the Sleep Number (R) bed is unreasonably dangerous based upon the personal injuries alleged in the SAC. Because the Court will strike the relevant personal injury allegations, this aspect of Plaintiffs' claims is subject to dismissal without prejudice.

### D. UCL

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Accordingly, "[a]n act can be alleged to violate any or all of the three prongs of the UCL--unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.,* 152 Cal.App.4th 1544, 1554, 62 Cal. Rptr. 3d 177 (2007).

#### 1. "Unlawful" Business Practices

For an action based upon an allegedly unlawful business practice, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999); *see also Farmers Ins. Exchange v. Superior Court,* 2 Cal. 4th 377, 383, 6 Cal. Rptr. 2d 487, 826 P.2d 730 (1992). However, such allegations "must [*39] state with reasonable particularity the facts supporting the statutory elements" of the alleged violation. *Silicon Knights, Inc. v. Crystal Dynamics, Inc.,* 983 F. Supp. 1303, 1316 (N.D. Cal. 1997), quoting *Khoury v. Maly's of Cal., Inc.,* 14 Cal. App. 4th 612, 619, 17 Cal. Rptr. 2d 708 (1993). Plaintiffs' negligence and product liability claims may not constitute predicate acts for a UCL claim. *See Hartless v. Clorox Co.,* No. 06-CV-2705, 2007 U.S. Dist. LEXIS 81686, 2007 WL 3245260, at *5 (S.D. Cal. Nov. 2, 2007) (common-law claims cannot form the basis for a UCL claim). Accordingly, only Plaintiffs' warranty claims could serve as a predicate for the "unlawful" prong, and these claims are insufficient for the reasons discussed above. *See supra* III.B.

#### 2. "Unfair" Business Practices

Plaintiffs also allege a "standalone" UCL claim, *see* SAC PP 214-225, accusing Defendants of unfair business practices. "[A] practice may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech,* 20 Cal. 4th at 180. First, Plaintiffs argue that their allegations satisfy the elements of an unfair business practices claim under *Camacho v. Automobile Club of Southern California,* 142 Cal. App. 4th 1394, 48 Cal.

Rptr. 3d 770 (2006), in which the court stated that [*40] a viable claim for relief may exist if the following conditions are met: "1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Id.* at 1403. However, Plaintiffs must set forth more than conclusory allegations that mirror the elements of the claim. Plaintiffs' sole allegation as to the "substantial" nature of the injury is the following:

> [D]efendants' malfeasance is substantial in that plaintiffs are unable to determine or even identify the mold without taking apart the product. Further, plaintiffs have not been notified to inspect in the event mold has occurred. This failure to notify has resulted in property damage and confusion amongst consumers. Mold in particular has unique properties and is hazardous which makes its permanent removal difficult and often time impossible.
>
> SAC P 216.

This allegation fails to satisfy the "substantial injury" element of an unfair business practices claim under *Camacho.* First, Plaintiffs argue that Defendants' "malfeasance," rather than their own injuries, is substantial. Second, [*41] the precise nature of Defendants' malfeasance is unclear. Finally, Plaintiffs' injuries, to the extent they are addressed in the allegations, appear to be property damage and confusion. While property damage might be substantial, Plaintiffs do not explain how their damage in this case meets that definition. Although the injury allegations of Plaintiffs' other claims are incorporated by reference into their UCL claim, *see* Opp. Mot. at 21, it is not the Court's responsibility or Defendants' to determine which of Plaintiffs' many factual allegations are meant to apply to the UCL claims. [6]

> 6   Plaintiffs allege that they have paid for shipping costs for the product and replacement parts the manufacturer knew were defective at the time of purchase. SAC P 220. However, Plaintiffs do not allege with any particularity that this injury was substantial or indicate the cost incurred by any particular plaintiff.

Plaintiffs cite additional authority for their argument that "an 'unfair' business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Opp Mot. at 22, citing

*State Farm Fire & Casualty Co. v. Superior Court,* 45 Cal. App.4th 1093, 1104, 53 Cal. Rptr. 2d 229 (1996). [*42] However, Plaintiffs offer no meaningful analysis as to how the allegations of the SAC satisfy the elements of a UCL claim pursuant to this authority.

### 3. Statute of Limitations

Defendants contend that the UCL claim is barred by the statute of limitations. A claim for relief brought pursuant to the UCL must be "commenced within four years after the cause of action accrued." Cal. Bus. & Prof. Code § 17208; *see also Harshbarger v. Philip Morris, Inc.,* 2003 U.S. Dist. LEXIS 25023, 2003 WL 23342396, at *5 (N.D. Cal. April 1, 2003). According to the SAC, all of the named Plaintiffs purchased their Sleep Number (R) bed more than four years prior to the filing of the instant action. Courts have arrived at different conclusions as to when a UCL claim accrues. *Compare Rambus Inc. v. Samsung Elecs. Co.,* Nos. C-05-02298 & C-05-00334, 2007 U.S. Dist. LEXIS 3088, 2007 WL 39374, at *3 (N.D. Cal. Jan. 4, 2007) ("[plaintiff] cannot rely upon the discovery rule for its Section 17200 claim"); *Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson,* 96 Cal. App. 4th 884, 891, 117 Cal. Rptr. 2d 331 (2002) ("The 'discovery rule,' which delays accrual of certain causes of action until the plaintiff has actual or constructive knowledge of facts giving rise to the claim, [*43] does not apply to unfair competition actions. Thus, 'the statute begins to run...irrespective of whether plaintiff knew of its accrual, unless plaintiff can successfully invoke the equitable tolling doctrine.'") (citation omitted), *with Mass. Mut. Life Ins. Co. v. Superior Court,* 97 Cal. App. 4th 1282, 1295, 119 Cal. Rptr. 2d 190 (2002) (statute of limitations for a UCL claim "will probably run from the time a reasonable person would have discovered the basis for a claim").

This Court need not determine now whether or not the discovery rule applies to Plaintiffs' UCL claims, because Plaintiffs fail to allege when any of the individual plaintiffs actually discovered the mold in their Sleep Number (R) bed. [7] SAC PP 46, 48, 50, 51, 53, 55 (indicating when Plaintiffs contacted Select Comfort regarding the mold in their bed, but providing no date as to when Plaintiffs discovered the mold). Absent allegations as to the time and manner of discovery and their inability to have discovered the defect earlier, Plaintiffs' claims under the UCL are time-barred. *Rambus Inc. v. Samsung Elecs. Co,* No. 05-02298, 2007 U.S. Dist. LEXIS 3088, 2007 WL 39374, at *3 (N.D. Cal. Jan. 4, 2007).

> 7   According to the SAC, Plaintiff Schlesinger called Select Comfort [*44] to complain about mold in 2003, meaning that he must have discovered the mold outside of the limitations period. SAC P 53.

### 4. Available Remedies

A UCL action is equitable in nature, and damages cannot be recovered. *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1144, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003). A plaintiff may obtain restitution and/or injunctive relief against unfair or unlawful practices in order to protect the public and restore to the parties in interest money or property taken by means of unfair competition. *State v. Altus Fin., S.A.,* 36 Cal. 4th 1284, 1303, 32 Cal. Rptr. 3d 498, 116 P.3d 1175 (2005). Here, Plaintiffs seek restitution for the "payment of consideration in the purchase of the bed, shipping costs for defective replacement parts and fees for disposal to Select Comfort." SAC P 224. As just discussed, Schlesinger's UCL claim appears to be time-barred. Karen Williams is the only other named plaintiff who claims that she did not receive a refund upon request, and Williams' allegations to this effect in the SAC are inconsistent with the FAC.

### E. Class claims

The SAC defines two purported classes. Class I asserts claims for negligence and product liability and includes: "all persons located within California and Florida [*45] who used the Sleep Number (R) bed by Select Comfort from January 1, 1987 through the present and whose beds contain mold," *Id.* P 116. Class II asserts breach of express warranty and violations of the MMWA and UCL and includes: "all persons located within California and Florida who purchased a Sleep Number (R) bed by Select Comfort from January 1, 1987 through the present and whose beds contain mold." *Id.* P 120. Class I excludes "any persons claiming personal injury arising from the negligence and strict product liability claims against defendants." *Id.* P 117. "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery." *Sanders v. Apple, Inc.* No. 08-1713, 2009 U.S. Dist. LEXIS 6676, 2009 WL 150950, at *9 (N.D. Cal. Jan. 1, 2009). Although Plaintiffs contend that Defendants' motion to strike is premature, it is procedurally proper to strike futile class claims at the outset of litigation to preserve time and resources.

A plaintiff seeking to bring a class action has the burden of showing that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common [*46] to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see Dukes v. Wal-Mart, Inc.,* 509 F.3d 1168, 1176 (9th Cir. 2007). If the plaintiff demonstrates that these four requirements have been satisfied, then he or she must also show "that

24

2009 U.S. Dist. LEXIS 112971, *

the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); *see also Wiener v. Dannon Co., Inc.,* 255 F.R.D. 658, 668 (C.D. Cal. 2009).

## 1. Predominance of individual issues

Defendants contend that in the instant case individual issues will predominate and the action will become unmanageable. They point to the differing claims of property damage even among named plaintiffs, including the Fullers' unique claim that they had to replace their HVAC system. They suggest that such claims inevitably will raise issues of causation that are individualized and do not lend themselves well to class treatment.

Second, Defendants contend that substantial statute of limitations issues complicate the claims of both Class I and [*47] Class II. This argument is persuasive. The proposed classes encompass individuals who purchased their mattresses as long as twenty years ago, with no limitation as to when such individuals may have discovered mold in their Sleep Number (R) beds. Even if such a limitation were incorporated in accordance with California's delayed discovery rule, there still would have to be an individualized inquiry as to each plaintiff's circumstances. Plaintiffs do not respond to this concern in their opposition papers.

Next, Defendants suggest that warranty claims generally are considered improper for class treatment. *Cole v. Gen. Motors Corp.,* 484 F.3d 717, 724-30 (5th Cir. 2007). They contend that such claims involve elements that are individual to each purported class member, such as the provision of notice, an opportunity to cure, and reliance. This contention also is persuasive, especially given the varying allegations as to notice provided by the named plaintiffs in the SAC.

Finally, Defendants contend that Plaintiffs' attempt to maintain individual claims and two separate classes will lead to a complicated and unworkable class scheme, "making the class action vehicle not 'superior' in this case." [*48] MTS at 24, citing Fed. R. Civ. P. 23(b)(3). The Court finds this argument the least convincing of Defendants' concerns.

## 2. Plaintiffs as Class Representatives

Defendants also contend that the named plaintiffs are not "typical" of the purported class they represent. They point out that Schlesinger's claims, as presently alleged, are barred by the statute of limitations; that Bryan Williams purports to represent a class of purchasers even though he did not purchase a Sleep Number (R) bed; and that Karen Williams purports to represent a

class of users even though she never used the bed she purchased for her son. SAC PP 21-22, 119. Plaintiffs do not respond to this argument.

Defendants also assert that Plaintiffs will not fairly and adequately protect the class's interests. They point out that four of the named plaintiffs assert individual claims based upon personal injuries, yet the SAC expressly excludes persons who have suffered such injuries from its purported class action claims. Defendants suggest that Plaintiffs have made this strategic decision to improve their prospects for class certification while at the same time maintaining their own individual interests in obtaining recovery for [*49] personal injuries, and that the named Plaintiffs' interests thus are antagonistic to those of the rest of the class. *Krueger v. Wyeth, Inc.,* No. 03cv2496, 2008 U.S. Dist. LEXIS 12236, 2008 WL 481956, at *3 (S.D. Cal. Feb. 19, 2008) (finding plaintiff inadequate as a class representative because of claim-splitting and concluding that "claim splitting constitutes a compelling reason to deny class certification").

Finally, "Article III requires that the representative or named plaintiff must share the same injury or threat of injury." *DuPree v. U.S.,* 559 F.2d 1151, 1153 (9th Cir. 1977), *see also Sosna v. Iowa,* 419 U.S. 393, 403, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975) ("A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified"). In the instant case, it is not yet clear whether any of the named Plaintiffs can state a cognizable claim under any of their numerous legal theories. Accordingly the motion to strike will be granted, without prejudice to Plaintiffs seeking class certification based upon an amended pleading.

## IV. ORDER

Good cause therefor appearing, the motion to strike Plaintiffs' newly-alleged claims and class allegations is GRANTED as set forth herein. Plaintiffs may seek leave of [*50] Court to plead these new claims. The motion to dismiss is GRANTED, with leave to amend only with respect to Plaintiffs' previously-asserted claims for negligence, strict product liability, breach of express warranty, and violations of the MMWA and UCL. Any amended complaint shall be filed within thirty (30) days of the date of this order. Plaintiffs shall not add any new defendants, plaintiffs or claims for relief without leave of Court.

IT IS SO ORDERED.

DATED: December 4, 2009

JEREMY FOGEL

United States District Judge

25

# EXHIBIT 4



LEXSEE 2008 U.S. DIST. LEXIS 76228

JASON P. STEWART, Plaintiff, v. CALIFORNIA DEPARTMENT OF EDUCA-
TION, et al., Defendants.

Civil No. 07cv0971 JAH(CAB)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
CALIFORNIA

2008 U.S. Dist. LEXIS 76228

September 30, 2008, Decided
September 30, 2008, Filed

**COUNSEL:** [*1] Jason P. Stewart, Plaintiff, Pro se,
Poway, CA.

For California Department of Education, (CDE), Defen-
dant: Michael Eric Hersher, California Department of
Education, Sacramento, CA.

For State Office of Administrative Hearings, (OAH),
Defendant: Michelle M. Mitchell, LEAD ATTORNEY,
Office of the Attorney General, Sacramento, CA.

For McGeorge College of Law, Fait, -, Defendants: Mi-
chael Eric Hersher, LEAD ATTORNEY, California De-
partment of Education, Legal Division, Sacramento, CA.

For San Diego County Board of Education, (SDCOE),
Poway Unified School District Governing Board,
(PUSD), Defendants: Jeffery Allen Morris, LEAD AT-
TORNEY, Stutz Artiano Shinoff and Holtz, Temecula,
CA.

For San Diego County Board of Supervisors, (SD
County), Defendant: David G Axtmann, County of San
Diego Office of County Counsel, San Diego, CA.

For Rady's Children's Hospital, (RCH), Defendant: Rita
R Kanno, Lewis Brisbois Bisgaard and Smith, San
Diego, CA.

For Betsy A. Slavik, (Slavik), K.I.D.S Therapy Associ-
ates, Inc., (KIDS), Defendants: Julie Renee Dann, Lewis
Brisbois Bisgaard & Smith, LLP, San Diego, CA.

For Akinson, Andelson, Loya, Ruud & Romo,
("AALRR"), Defendant: Nancy Long Cole, LEAD AT-
TORNEY, Atkinson Andelson [*2] Loya Ruud and
Romo, Cerritos, CA.

**JUDGES:** JOHN A. HOUSTON, United States District
Judge.

**OPINION BY:** JOHN A. HOUSTON

**OPINION**

**ORDER RE: DEFENDANTS' MOTIONS TO DIS-
MISS [Doc. Nos. 6, 28, 36, 38, 40, 44, 47, 55, 82] AND
PLAINTIFF'S MOTIONS [Doc. Nos. 51, 80, 99, 108,
118]**

**BACKGROUND**

Plaintiff filed a complaint on May 29, 2007, seeking
relief under 42 U.S.C. § 1983, Title IX, 42 U.S.C. 2000d,
42 U.S.C. § 12101, 42 U.S.C. § 1985, 20 U.S.C. § 1400
and the Rehabilitation Act, and for violations of the First,
Fourth, and Fourteenth Amendments. California De-
partment of Education, Superintendent, Jack O'Connell,
State office of Administrative Hearings, McGeorge Col-
lege of Law, Glenn Fait, San Diego County Board of
Education, San Diego County Board of Supervisors, Po-
way Unified School District Governing Board, PUSD
Special Education Local Plan Area, Jo Ann Murphy,
Theresa Kurtz, Emily Shieh, PUSD IEP Teams, Rady's
Children's Hospital, Betsy A. Slavik, K.I.D.S. Therapy

Associates, Inc., Kelli Marsaglia, the firm Akinson, Andelson, Loya, Ruud and Romo, and Does 1-50 were named as defendants.

On July 2, 2007, Defendant County of San Diego [1] ("the County") filed a motion to dismiss or in the alternative, a motion for a more definite [*3] statement. See Doc. No. 6. Defendant Rady's Children's Hospital filed a motion to dismiss and a motion to strike request for punitive damages on July 13, 2007. See Doc. No. 28. Defendants Slavik, and K.I.D.S. Therapy Associates ("K.I.D.S.") filed a motion to dismiss and motion to strike request for punitive damages. [2] See Doc. No. 36. On July 16, 2007, Defendant San Diego County Office of Education ("BOE") filed a motion to dismiss (Doc. No. 38) and Defendant Akinson, Andelson, Loya, Ruud and Romo ("AALRR") filed a motion to dismiss or alternatively, for a more definite statement (Doc. No. 40). Defendants Pacific McGeorge School of Law and Fait filed a motion to dismiss on July 20, 2007. See Doc. No. 44. On July 23, 2007, Poway Unified School District (sued as PUSD Special Education Local Plan, PUSD IEP Teams and PUSD Governing Board) ("PUSD") and Defendants Shieh, Marsaglia, Murphy and Kurtz filed a motion to dismiss (Doc. No. 47). On August 16, 2007, Defendant Office of Administrative Hearings ("OAH") filed a motion to dismiss and motion to strike (Doc. No. 55).

> 1   Sued as "San Diego County Board of Supervisors (S.D. County)"
> 2   Defendant Rady's Children's Hospital joined in the motion.

Plaintiff's [*4] opposition to Defendant County of San Diego's motion was filed *nunc pro tunc* to August 7, 2007. Plaintiff filed an opposition to Defendants Fait and Pacific McGeorge School of Law's motion to dismiss on August 20, 2007. See Doc. No. 57. Defendants filed a reply on August 27, 2007.

Plaintiff filed oppositions to Defendant San Diego County Office of Education's motion, Defendant AALRR's motion, Defendant PUSD's motion, and Defendants Slavik and K.I.D.S.'s motion on August 27, 2007. See Doc. Nos. 60, 61, 62, 65.

Defendant County of San Diego filed a reply on August 31, 2007. See Doc. No. 67. Defendants Slavik and K.I.D.S. filed a reply on September 4, 2007. See Doc. No. 68. Defendant PUSD filed a reply on September 7, 2007. See Doc. No. 71. Defendant AALRR filed a reply on September 10, 2007. See Doc. No. 74.

On October 11, 2008, Defendants California Department of Education and O'Connell filed a motion to dismiss on October 11, 2007. See Doc. No. 82. Plaintiff filed a response to Defendant Office of Administrative

Hearing's motion on October 26, 2007. See Doc. No. 92. On November 8, 2007, Defendant Office of Administrative Hearings filed a reply. See Doc. No. 96.

On May 23, 2008, Plaintiff [*5] filed an application for leave to file a response to Defendant California Department of Education's motion. Upon finding lack of good cause, the Court denied the request. See Doc. No. 114. Plaintiff has filed a motion for reconsideration of the order. See Doc. No. 118.

## DISCUSSION

The various defendants seek dismissal of the complaint pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6). They also seek to dismiss or move for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure for failing to comply with Rule 8. Certain Defendants also seek to strike portions of the complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Defendant California Department of Education and O'Connell also seek dismissal under Federal Rule of Civil Procedure 12(b)(5).

### I. Plaintiff's Generally Inadequate Complaint

#### A. Federal Rule of Civil Procedure 8

As an initial matter, the Court finds Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8 and should be dismissed in its entirety without prejudice. Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint "shall contain (1) a short and plain statement of the grounds upon [*6] which the court's jurisdiction depends . . ., (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). Similarly, Rule 8(d) requires that "each averment of a pleading shall be simple, concise and direct." Rule 8 is designed to provide defendants with fair notice of the claims against them and the grounds on which those claims rest. McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991); see McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996)

Sifting through the allegations of the 98 page complaint is an arduous task. The rambling complaint which primarily discusses aspects of Plaintiff's education is at times incoherent and is very confusing. It contains disconnected allegations against a number of individuals, some of whom are not named as defendants, quotes from correspondence between Plaintiff's parent and the individuals involved in Plaintiff's education, verbatim legal arguments made in other cases involving Plaintiff and his parent, and quotes from testimony provided in other actions. At one point, Plaintiff appears to have cut and pasted the cover page of the [*7] third amended com-

plaint in Lindsey Stewart v. Poway United School Dist.; case number 04cv0438 into the complaint in this action.

The complaint fails to conform with Rule 8(d) which requires a pleading be "simple, concise and direct." The Ninth Circuit has recognized that "confusing complaints. . .impose unfair burdens on litigants and judges." McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th Cir. 1996). This Court finds weeding through the complaint to determine what allegations are leveled at each defendant to determine whether Plaintiff states a claim imposes a heavy burden sought to be avoided by Rule 8. It is nearly impossible to identify the allegations asserted against each defendant.

Although not all Defendants move to dismiss pursuant to Rule 8 or move for a more definite statement under Rule 12(e), they all recognize Plaintiff's failure to comply with Rule 8. See County of San Diego Motion at 1, n.1 ("[I]t should be noted that it is challenging to distill the allegations [in the complaint] due to the structure and nature of the narrative in the pleading."); Defendant Rady's Motion at 2 (Referring to the complaint as unintelligible and difficult to decipher); Defendants Slavik and  [*8] K.I.D.S.'s Motion at 13 (Seeking dismissal of the complaint, described as "convoluted and undecipherable," pursuant to Rule 8); San Diego County Office of Education's Motion at 2 (Describing the complaint as "vague and confusing with lengthy recitations of incomprehensible facts."); Defendant AALRR's Motion at 3 ("Plaintiff's complaint is extremely lengthy, rambling, disorganized and vague."); Defendants University of the Pacific McGeorge School of Law's Motion at 2 ("Plaintiff JASON P. STEWART has filed a largely incomprehensible document entitled Complaint. . ."); Defendant OAH's Motion at 14 (Describing the complaint as "confused and redundant."); Defendants CDE and O'Connell's Motion at 2 (Describing the complaint at "largely incomprehensible").

Accordingly, the complaint is dismissed in its entirety for failure to comply with Rule 8. Defendants' motions seeking dismissal pursuant to Rule 8 and seeking a more definite statement pursuant to Rule 12(e) are GRANTED. The motions to dismiss pursuant to Rule 12(b)(6) based upon insufficient allegations are DENIED without prejudice.

**B. Leave to Amend**

Plaintiff will be provided an opportunity to file an amended complaint that complies with  [*9] Rule 8 and sufficiently states claims against the named defendants. To comply with Rule 8, the amended complaint must, at a minimum, give fair notice and state the elements of each claim against each defendant plainly and succinctly. Jones v. Community Redevelopment Agency, 733 F.2d

646, 649 (9th Cir. 1984); Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).

**1. The First Amended Complaint Must State a Claim**

To make out a claim cause of action under section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).

42 U.S.C. § 2000d, Title VI, provides that "no person in the United States shall, on the ground of race, color or national origin be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Accordingly, claims brought under 42 U.S.C. § 2000d must allege discrimination based upon race, color or national origin. Claims brought pursuant to Title IX of the Education Amendments of 1972 to the Civil Rights Act of 1964,  [*10] which protects against discrimination based upon sex, must at minimum, allege discrimination based upon sex.

To properly allege a claim under the ADA or the Rehabilitation Act [3], a plaintiff must allege that: (1) he or she is a qualified individual with a disability; (2) he or she was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities or was otherwise discriminated against by the public entity; and (3) the exclusion, denial of benefits or discrimination was by reason of the disability. Weinreich v. Los Angeles County Metropolitan Transp. Authority, 114 F.3d 976, 978 (9th Cir. 1997).

> 3   Title II of the ADA extended the reach of the Rehabilitation Act to all public entities, irrespective of whether they receive federal funds. As such, courts read the Rehabilitation Act consistently with Title II of the ADA. Armstrong v. Davis, 275 F.3d 849, n. 17 (9th Cir. 2001).

To state a claim pursuant to 42 U.S.C. § 1985 requires allegations showing (1) a conspiracy to deprive him, as a member of a protected class, equal protection of the laws, (2) an act by one of the conspirators in furtherance of the conspiracy, and (3) a personal injury,  [*11] property damage or deprivation of a right or privilege guaranteed to him as a citizen of the United States. Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980).

Plaintiff must also clearly and sufficiently allege facts to support a claim under the IDEA. He must also include allegations showing he exhausted his administrative remedies or exhaustion is unnecessary. See Robb v.

2008 U.S. Dist. LEXIS 76228, *

Bethel School Dist. No. 403, 308 F.3d 1047, 1050 (9th Cir. 2992).

## 2. The First Amended Complaint Must Address Statute of Limitations Issues

Defendants Slavik and K.I.D.S., and Defendants Pacific McGeorge School of Law argue Plaintiff's civil rights actions are untimely. Defendants maintain California's one year statute of limitations for personal injury actions governs civil rights claims brought under section 1983 and section 1985; and claims under section 2000d are brought under the same limitations period as section 1983 claims. Plaintiff alleges Defendants' misconduct is based on Slavik's testimony from the hearing which was conducted from February 28, to March 1, 2006 and based on her report dated March 2, 2004. According to Defendants, Plaintiff, whose date of birth is March 21, 1988, failed to file the [*12] complaint one year after reaching the age of majority. As such, defendants contend the statute of limitations bars his claims.

"California's one-year statute of limitations for personal injury actions governs claims brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1985." Taylor v. Regents of Univ. Of California, 993 F.2d 710, 711 (9th Cir. 1993) (citing Wilson v. Garcia, 471 U.S. 261, 275, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985); McDougal v. County of Imperial, 942 F.2d 668, 672-74 (9th Cir. 1991)). However, a plaintiff's claim is tolled under California law until the plaintiff reaches the age of eighteen. Cal.Civ.Proc.Code § 352(a); Cal. Fam.Code § 6500 (providing that the age of majority in California is eighteen).

Plaintiff reached the age of majority in March 2006. His complaint was filed May 2007. Accordingly, his claims under sections 1983 and 1985, absent tolling, are untimely. The claims based upon Slavik's testimony from the hearing conduct February 28 to March 1, 2006 and the March 2, 2004 report are DISMISSED WITHOUT PREJUDICE. In the event Plaintiff desires to include these claims, Plaintiff's amended complaint must include facts supporting tolling.

## II. Defendant's Remaining Motions to Dismiss

Although the [*13] complaint is dismissed in its entirety for failure to comply with Rule 8, the Court finds it appropriate to address certain motions made by Defendants not addressing the sufficiency of the allegations which will preclude Plaintiff from bringing the claims in an amended complaint. [4] The Court must also address Defendant Rady's and Defendants Slavik and K.I.D.S.'s motions to strike and Defendant CDE's motion to dismiss for improper service.

[4]   Several Defendants move to dismiss based upon res judicata. Rady's argues the judgment in the state court action in favor of Rady's in Stewart v. PUSD, case no. GIC868954, which contained allegations which are the basis of Plaintiff's present claims against Rady's bars the action. Defendants Slavik and K.I.D.S. contend Plaintiff's action in Superior Court and the administrative proceedings which were based upon essentially the same factual allegations contained in Plaintiff's present complaint bar the pending matter. Defendants PUSD, Shieh, Marsaglia, Murphy and Kurtz maintain the pending action is barred by res judicata, the action filed by Plaintiff's mother, Stewart v. Poway Unified Sch. Dist. Bd. of Educ. Trs., case number 04cv0438 WQH (POR) resulted [*14] in a final judgment, which raised claims asserted in the pending action and the parties are in privity.

Determination of the possible preclusive effect of prior actions requires a review of Plaintiff's current allegations. Because the Court dismisses the action based upon the confusing and incoherent nature of the claims, it is more appropriate to address res judicata after Plaintiff files his amended complaint that complies with Rule 8.

Defendant Rady's, and Defendants Slavik and K.I.D.S. also assert they are immune from litigation pursuant to California Code of Civil Procedure section 47(b). Defendants argue if each of Plaintiff's claims are based on the allegation that Rady and Defendant Slavik conspired to falsify reports and this was discovered during Slavik's testimony at the administrative law proceeding, said communications are absolutely protected from litigation and cannot be the basis of this lawsuit.

"[F]ederal courts will recognize state privileges only in cases in which state law supplies the rule of decision." Religious Technology Center v. Wollersheim, 971 F.2d 364, 367 n. 10 (9th Cir. 1992). Defendants fail to demonstrate that the state litigation privilege is relevant [*15] to claims brought under the federal claims asserted in the pending complaint. Accordingly, the motion to dismiss on this basis is DENIED.

## A. Claims Plaintiff is Precluded from Bringing in an Amended Complaint

## 1. Claims Against Defendant OAH

Defendant OAH argues Plaintiff's claims arise from Administrative Law Judge Geren's decisions and imposition of sanctions and therefore, it is entitled to judicial immunity. Judges are absolutely immune from suits for money damages for acts performed in their official capacities. Mireles v. Waco, 502 U.S. 9, 11-12, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991); Dennis v. Sparks, 449 U.S. 24, 27, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980); Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986). This immunity is extended to a hearing officer's judicial or quasi-judicial functions. See Taylor v. Mitzel, 82 Cal.App.3d 665, 147 Cal. Rptr. 323 (1978); Ashelman v. Pope, 793 F.2d 1072 (9th Cir. 1986) ("[Those performing judge-like functions are absolutely immune from damage liability for acts performed in their official capacities."). Judicial immunity is not overcome by allegations of bad faith, malice or conspiracy. Mireles, 502 U.S. at 11. The only circumstances in which a judicial officer will not have judicial immunity are where the judicial officer [*16] did not perform a judicial act, and where the judicial officer acted in clear absence of all jurisdiction. See Stump v. Sparkman, 435 U.S. 349, 356-57, 360, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); Mireles, 502 U.S. at 11-12.

Plaintiff maintains ALJ Geren had no jurisdiction to review his parents' past investigations in reaching his decision in April 2006. Plaintiff does not argue the ALJ lacked jurisdiction to hear the action. Instead, he challenges the ALJ's review of certain information in reaching the decision. Clearly, Plaintiff is challenging acts taken by ALJ Geren's in his role as a judicial officer and within Geren's jurisdiction as an ALJ. Accordingly, Defendant OAH is entitled to judicial immunity. Accordingly, Plaintiff is precluded from bringing any claims against OAH based upon rulings made by ALJ Geren.

## 2. Claims against Pacific McGeorge School of Law and Fait

Defendants Pacific McGeorge School of Law and Fait maintain they are entitled to judicial immunity from suit based upon their acts taken in their quasi-judicial capacity as hearing officers in due process hearings.

Plaintiff argues Fait, a hearing officer with the Special Education Hearing Office ("SEHO") run by Pacific McGeorge School of Law, was [*17] not authorized to act as a judicial officer when he issued the orders on August 11, 2005 and August 31, 2005. He maintains the OAH took over judicial duties on July 1, 2005. In reply, Defendants argue they were authorized and acting under their contractual duty when Fait ruled on the motions. They maintain that the OAH was contracted to hear actions filed after July 1, 2005, and those filed before, but not yet heard. They further maintain Plaintiff's case,

which as heard in part before July 1, 2005, remained the responsibility of the SEHO.

Plaintiff fails to demonstrate Fait was not acting as a judicial officer when his issued the orders and fails to demonstrate a clear lack of jurisdiction. Accordingly, Defendant Pacific McGeorge School of Law and Fait are entitled to judicial immunity. Plaintiff's amended complaint shall not assert any claims against Defendants based upon Fait's conduct as a judicial officer.

## 3. Claims Against Poway Unified School District and District Employees

### a. Section 1983 Claim

Defendants argue the Eleventh Amendment bars section 1983 claims against PUSD and the individual district employees. Beyond stating the claim is not barred by the Eleventh Amendment, Plaintiff [*18] sets forth no argument.

### i. Poway Unified School District

The Eleventh Amendment prohibits suits against a state, and section 1983 does not abrogate this immunity since a state is not a "person" for purposes of the statute. Will v. Michigan Dept of State Police, 491 U.S. 58, 62, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). As an "arm" of the state, the Poway Unified School District itself is shielded from liability under the Eleventh Amendment. Id. at 70; Belanger v. Madera Unified School District, 963 F.2d 248, 251 (9th Cir. 1992) (California school districts are considered to be state agencies for immunity purposes); Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201 (9th Cir. 1988). "[I]n the absence of consent a suit in which the State or one of its agencies or department is named as the defendant is proscribed by the Eleventh Amendment. The state has not consented to be sued under section 1983 and Congress did not override states' sovereign immunity when it enacted section 1983. Will, 491 U.S. at 67; Southern Pacific Transp. Co. v. City of Los Angeles, 922 F.2d 498 (9th Cir. 1990). Accordingly, PUSD is entitled to Eleventh Amendment Immunity from the section 1983 claim for damages. Plaintiff is precluded [*19] from bringing such a claim against PUSD in his amended complaint.

### ii. District Employees

The Eleventh Amendment also prohibits damage actions against state officials acting in their official capacities. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.10, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). However, the Eleventh Amendment "does not bar actions against state officers in their official capacities if the plaintiffs seek only a declaratory judgment or injunctive relief." Chaloux v. Killeen, 886 F.2d 247, 252 (9th Cir. 1989) (internal quotations omitted); Pennhurst, 465 U.S.

89, 104-06, 104 S. Ct. 900, 79 L. Ed. 2d 67. "It is well established that the Eleventh Amendment does not bar a federal court from granting prospective injunctive relief against an officer of the state who acts outside the bounds of his authority." Porter v. Bd. of Trustees, Manhattan Beach Unified Sch. Dist., 307 F.3d 1064, 1074 (9th Cir. 2002) (quoting Cerrato v. San Francisco Community College Dist., 26 F.3d 968, 973 (9th Cir. 1994); Ex parte Young, 209 U.S. 123, 159-60, 28 S. Ct. 441, 52 L. Ed. 714 (1908)). Injunctive relief, however, is available only if there is a "real or immediate threat that the plaintiff will be wronged again." City of Los Angeles v. Lyons, 461 U.S. 95, 111, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983).

Defendants [*20] Shieh, Marsaglia, Murphy and Kurtz are entitled to immunity from the section 1983 claims for damages against them in their official capacities. Plaintiff is precluded from bringing those claims in his amended complaint.

**b. Americans with Disabilities Act**

Defendants maintain Plaintiff's ADA claim is barred by the Eleventh Amendment. They argue suits to recover money damages for failure to comply with Title I of the ADA are barred by the Eleventh Amendment. However, states are not entitled to Eleventh Amendment immunity from claims brought under Title II of the ADA. See Phiffer v. Columbia River Correctional Institute, 384 F.3d 791 (9th Cir. 2004).

Accordingly, Plaintiff may not bring claims under Title I of the ADA against PUSD and the district employees.

**4. Request for an Appeal of the Administrative Hearings**

Defendant Rady's, Defendants Slavik and K.I.D.S., and Defendant San Diego Board of Education argue a party may bring a civil action in the appropriate state or federal court if dissatisfied with a state educational agency's determination following a due process hearing. Defendant Ray's contends Plaintiff appealed his case to the San Diego Superior Court instead of federal court when [*21] he filed his first amended complaint against defendants on January 18, 2007 and the case was decided in favor of the defendants. Defendants argues, according to the allegations of the complaint, Plaintiff is attempting a second untimely appeal to federal court regarding his dissatisfaction with the Administrative Law Judge's ruling of April 13, 2006, because the Section 56505(k) provides a party 90 days from receipt of a hearing decision to appeal. The state agencies decision was made on April 13, 2006. As such, Rady's argues the present lawsuit filed May 29, 2007 is barred as untimely. Plaintiff does not address this argument.

Pursuant to the IDEA, when a complaint is received the state or local education entity shall hold an impartial due process hearing. 20 U.S.C. 1415(f)(1)(A). Any party aggrieved by the decision at the due process hearing may appeal the decision to the state education entity. 20 U.S.C. § 1415(g). A party aggrieved by the appeal may file a civil suit in state court or district court. 20 U.S.C § 1415(i). The civil action must be filed within 90 days of the decision or such time as the state allows. California state law allows for a 90 day statute of limitations for [*22] appeals of administrative hearings decisions. See California Education Code 56505.

Plaintiff filed the pending action on May 29, 2007. To the extent he seeks to appeal administrative hearing decisions occurring before February 28, 2007, the claims are barred as untimely and shall not be asserted in an amended complaint.

**5. Claims Asserted on behalf of Others**

Defendants PUSD, Shieh, Marsaglia, Murphy and Kurtz and Defendant OAH argue Plaintiff, who is appearing *pro se* in this action cannot represent other alleged members of a class. This Court agrees. Plaintiff, a non-attorney, has no authority to represent anyone other than himself. See McShane v. United States, 366 F.2d 286, 288 (9th Cir. 1966). Absent attorney representation, the amended complaint should not include claims asserted on behalf of others.

**6. Wiretapping Claims**

Defendant AALRR argues, to the extent Plaintiff seeks relief for alleged unlawful recordings of Plaintiff's parent's conversations he has no standing to sue under statutes prohibiting wiretapping. Plaintiff states he desires to amend his complaint to add state and federal wiretapping claims.

The wiretapping statutes noted by Defendants allow the government or the speaker [*23] a right of action. See 18 U.S.C. § 2511 (Providing the Federal Government the right to file a suit for violations therein); 18 U.S.C. § 2520 (Providing the person whose communication was intercepted to file a civil action); Cal. Penal Code § 637.2 (Permitting a person injured by unlawful wiretapping to bring a civil action). Plaintiff, as such, has no standing to bring an action based upon recordings of his parent under the federal and state statutes. The amended complaint shall not assert claims under 18 U.S.C. § 2511, 18 U.S.C. § 1520 or California Penal Code § 637.2.

**B. Motions to Strike**

Defendants Rady's, Slavik and K.I.D.S. argue Plaintiff's claim for punitive damages must be stricken, be-

32

cause allegations against healthcare providers are precluded at this stage of the litigation by virtue of California Code of Civil Procedure section 425.13, which acts as a substantive state-law protection requiring a special motion in order to proceed with a punitive damages claim against healthcare providers. Defendants fail to demonstrate state substantive law applies to Plaintiff's claims brought under federal statutes. According the motions to strike are DENIED.

## C. Motion to Dismiss for Improper [*24] Service

Defendants CDE and O'Connell maintain they have not been properly served and moves to dismiss pursuant 12(b)(5). According to Federal Rule of Civil Procedure 4(j), a state or state created governmental organization must be served by either "(A) delivering a copy of the summons and of the complaint to its chief executive officer or (B) serving a copy of each in the manner prescribed by the state's law on such a defendant." Under California law, service upon a public entity may be effected "by delivering a copy of the summons and of the complaint to the clerk, secretary, president, presiding officer, or other head of its governing body." Cal. Civ. Pro. § 416.50. Defendants must be served within 120 days after the complaint is filed. If good cause is shown, the Court may extend the time for service. See FED.R.CIV.P. 4(m).

According to the records of this case, service was initially attempted by the United States Marshals Service, pursuant to Plaintiff's *in forma pauperis* status. See Process Receipt (Doc. No. 13). Service was returned unexecuted, because it was left with the Department of Justice who is "not authorized to receive or accept documents on behalf of the California Department [*25] of Education." Id. Plaintiff also attempted service by certified mail. Plaintiff appears to recognize Defendants have not been properly served and seeks an enlargement of time to effect service.

The Court finds good cause for granting the enlargement of time. Although Plaintiff provided the United States Marshal with the incorrect address for service purposes, he did make an attempt to provide another address. See Application to Reissue Order for Service (Doc. No. 72). Plaintiff's motion is GRANTED. Plaintiff shall take the action necessary to effect service of the amended complaint as to these defendants pursuant to rule 4(j). Defendant's motion to dismiss for improper service is DENIED as moot.

## III. Plaintiff's Motions

## A. Motion to Lodge Complete Exhibits

Plaintiff asks the Court to direct Defendant Slavik and K.I.D.S. to lodge complete copies of certain exhibits filed in support of their motion. Because the Court does not consider the exhibits in dismissing Plaintiff's complaint, the motion is DENIED as moot.

Plaintiff also seeks appointment of counsel based upon Defendants argument that Plaintiff lacks the capacity to sue. This Court finds Defendants Slavik and K.I.D.S.'s argument that [*26] Plaintiff lacks the capacity to sue, because he alleges he has Aspergers Syndrome, which is a form of autism and autism exists in children who are mentally retarded is completely devoid of merit. As such, Plaintiff's motion is DENIED.

## B. "Judicial Notice of Request for Ex Parte Communication

Plaintiff filed a document notifying the Court that "defamatory, false discriminatory remarks were posted in a blogg [sic] format" involving the current law suit. Plaintiff asks the Court to issue an injunction to stop the blogging.

The Court construes Plaintiff's document as a motion for a temporary restraining order. The purpose of a temporary restraining order is to preserve the *status quo* before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974) (noting that a temporary restraining order is restricted to its "underlying purpose of preserving the *status quo* and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"). As such, an applicant for a temporary restraining [*27] order is required to demonstrate "immediate and irreparable injury, loss or damage." FED. R. CIV. P. 65(b); see also Caribbean Marine Serv. Co., Inc. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988).

The standard for issuing a temporary restraining order is similar to the standard for issuing a preliminary injunction. Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). The Ninth Circuit recognizes two tests for demonstrating preliminary injunctive relief: the traditional test or an alternative sliding scale test. Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987). Under the traditional test, a party must show: "1) a strong likelihood of success on the merits, 2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, 3) a balance of hardships favoring the plaintiff, and 4) advancement of the public interest (in certain cases)." Save Our Sonoran, Inc. v. Flowers, 408 F.3d 1113, 1120 (9th Cir. 2005). Where a party demonstrates that a public interest

is involved, a "district court must also examine whether the public interest favors the plaintiff." Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1400 (9th Cir. 1992).

Alternatively, [*28] a party seeking injunctive relief under Fed. R. Civ. P. 65 must show either (1) a combination of likelihood of success on the merits and the possibility of irreparable harm, or (2) that serious questions going to the merits are raised and the balance of hardships tips sharply in favor of the moving party. Immigrant Assistance Project of the L.A. County of Fed'n of Labor v. INS, 306 F.3d 842, 873 (9th Cir. 2002); Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1119 (9th Cir. 1999); Roe v. Anderson, 134 F.3d 1400, 1402 (9th Cir. 1998). "'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" Roe, 134 F.3d at 1402 (quoting United States v. Nutri-cology, Inc., 982 F.2d 394, 397 (9th Cir. 1992)); accord Sun Microsystems, 188 F.3d at 1119. "Thus, 'the greater the relative hardship to the moving party, the less probability of success must be shown." Sun Microsystems, 188 F.3d at 1119 (quoting Nat'l Ctr. for Immigrants Rights, Inc. v. INS, 743 F.2d 1365, 1369 (9th Cir. 1984)).

The Ninth Circuit makes clear that a showing of immediate irreparable harm is essential for prevailing [*29] on a temporary restraining order. See Caribbean Marine, 844 F.2d at 674. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." Id.

Plaintiff's allegations in support of his motion are unrelated to the action currently pending before this Court. As such, Plaintiff is unable to demonstrate a likelihood of success of the merits of his action or that serious questions going to the merits of his claims exists. Plaintiff, therefore, is not entitled to injunctive relief in this action. Accordingly, the motion is DENIED.

**C. Motion to Add Additional Parties**

Plaintiff seeks to amend his complaint to add new plaintiffs, his mother Lindsey E. Stewart and his sister Caitlin Stewart. As previously stated the Court finds Plaintiff's attempt to represent his mother and sister in this action as a non-attorney improper. See McShane, 366 F.2d at 288. The motion to add new plaintiffs is DENIED.

Plaintiff is also seeking leave to add LRP Publications and 10 News as defendants. Because the Court is dismissing the complaint and providing Plaintiff an opportunity to file an amended complaint to include all parties from whom he believes he may seek [*30] relief, the request to add new defendants is moot. Accordingly,

the motion to amend to add defendants is DENIED as moot.

**D. Motion for Reconsideration**

Plaintiff seeks reconsideration of the Court's order denying his request to file an untimely response to Defendant CDE and O'Connell's motion to dismiss. Because the Court dismisses the complaint for failure to comply with Rule 8, Plaintiff's response to the motion is moot. Accordingly, the motion for reconsideration is DENIED.

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED:

1. Plaintiff's complaint is **DISMISSED without prejudice.** Plaintiff shall file and serve [5] a First Amended Complaint that complies with Rule 8 and sufficiently addresses the deficiencies discussed above **on or before November 3, 2008.**

2. Defendant County of San Diego's motion to dismiss (Doc. No. 6-1) is **DENIED as moot.** Defendant's motion for a more definite (Doc. No. 6-2) is **GRANTED.**

3. Defendant Rady's Children's Hospital motion to dismiss (Doc. No. 28-1) is **DENIED as moot.** Defendant's motion to strike (Doc. No. 28-2) is **DENIED.**

4. Defendant Slavik and K.I.D.S. Therapy Associates's motion to dismiss (Doc. No. 36-1) is **DENIED as moot.** Defendants' motion [*31] to strike (Doc. No. 36-2) is **DENIED.**

5. Defendant San Diego County Office of Education's motion to dismiss (Doc. No. 38-1) is **DENIED as moot.** Defendant's motion for a more definite statement (Doc. No. 38-2) is **GRANTED.**

6. Defendant AALRR's motion to dismiss (Doc. No. 40-1) is **DENIED as moot.** Defendant's motion for a more definite statement (Doc. No. 40-2) is **GRANTED.**

7. Defendant Pacific McGeorge School of Law and Fait's motion to dismiss (Doc. No. 44) is **DENIED as moot.**

8. Defendant Poway Unified School District's motion to dismiss (Doc. No. 47-1) is **DENIED as moot.** Defendant's mo-

2008 U.S. Dist. LEXIS 76228, *

tion for a more definite statement (Doc. No. 47-2) is **GRANTED.**

9. Defendant Office of Administrative Hearing's motion to dismiss (Doc. No. 55-1) is **DENIED as moot.** Defendant's motion to strike (Doc. No. 55-2) is **DENIED.**

10. Defendants California Department of Education and O'Connell's motion to dismiss (Doc. No. 82) is **GRANTED.**

11. Plaintiff's motion to lodge exhibits and for appointment of counsel (Doc. No. 51) is **DENIED.**

12. Plaintiff's motion for injunctive relief (Doc. No. 80) is **DENIED.**

13. Plaintiff's motion for extension of time to effect service (Doc. No. 99) is **GRANTED.** Plaintiff shall serve Defendants California [*32] Department of Education and O'Connell with the summons and amended complaint pursuant to rule 4(j).

14. Plaintiff's motion to add plaintiffs (Doc. No. 108) is **DENIED.**

15. Plaintiff's motion to add defendants (Doc. No. 108) is **DENIED as moot.**

16. Plaintiff's motion for reconsideration(Doc. No. 118) is **DENIED as moot.**

5   Service of the amended complaint upon parties properly served the original complaint may be made pursuant to Federal Rule of Civil Procedure 5 and Local Rule 4.1. Service upon Defendant CDE and any new defendants must be effected pursuant to Federal Rule of Civil Procedure 4.

DATED: September 30, 2008

/s/ John A. Houston

JOHN A. HOUSTON

United States District Judge

35