# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF DOCUMENT DISCREPANCIES

To: ☒ U.S. District Judge / ☒ U.S. Magistrate Judge _KLAUSNER_

From: _Michele Mullay_, Deputy Clerk   Date Received: _07-15-10_

Case No.: _CV10-1791 RGK (SHx)_   Case Title: _St Luke School of Medicine_

Document Entitled: _-v- Republic of Liberia Opposition to Points / authorities Opposition to Defendant's State of Oregon & Oregon Office of Degree Authorization Pursuant to FRCP 12(B)(2) + (6)_

Upon the submission of the attached document(s), it was noted that the following discrepancies exist:

☐ Local Rule 11-3.1   Document not legible
☐ Local Rule 11-3.8   Lacking name, address, phone and facsimile numbers
☐ Local Rule 11-4.1   No copy provided for judge
☐ Local Rule 19-1   Complaint/Petition includes more than ten (10) Does or fictitiously named parties
☐ Local Rule 15-1   Proposed amended pleading not under separate cover
☐ Local Rule 11-6   Memorandum/brief exceeds 25 pages
☐ Local Rule 11-8   Memorandum/brief exceeding 10 pages shall contain table of contents
☐ Local Rule 7.1-1   No Certification of Interested Parties and/or no copies
☐ Local Rule 6.1   Written notice of motion lacking or timeliness of notice incorrect
☐ Local Rule 56-1   Statement of uncontroverted facts and/or proposed judgment lacking
☐ Local Rule 56-2   Statement of genuine issues of material fact lacking
☐ Local Rule 7-19.1   Notice to other parties of ex parte application lacking
☐ Local Rule 16-6   Pretrial conference order not signed by all counsel
☐ FRCvP Rule 5(d)   No proof of service attached to document(s)
☒ Other: _Plaintiff (Dolphin) Represented By Counsel_

**FILED
CLERK, U.S. DISTRICT COURT**

**JUL 19 2010**

**CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY**

**Note: Please refer to the court's Internet website at www.cacd.uscourts.gov for local rules and applicable forms.**

---

### ORDER OF THE JUDGE/MAGISTRATE JUDGE

IT IS HEREBY ORDERED:

**RECEIVED & RETURNED
CLERK, U.S. DISTRICT COURT**

**JUL 19 2010**

**CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY**

☐ The document is to be filed and processed. The filing date is ORDERED to be the date the document was stamped "received but not filed" with the Clerk. Counsel* is advised that any further failure to comply with the Local Rules may lead to penalties pursuant to Local Rule 83-7.

_____   _____
Date   U.S. District Judge / U.S. Magistrate Judge

☒ The document is **NOT** to be filed, but instead **REJECTED**, and is ORDERED returned to *counsel. *Counsel shall immediately notify, in writing, all parties previously served with the attached documents that said documents have **not** been filed with the Court.

_JUL 19 2010_   _Gary Klausner_
Date   U.S. District Judge / U.S. Magistrate Judge

*The term "counsel" as used herein also includes any pro se party. See Local Rule 1-3.

JERROLD DOLPHIN, M.D.
P.O. BOX 941009
Los Angeles, CA 90064
310-384-4483
IN PRO PER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ST. LUKE SCHOOL OF MEDICINE, et al,

   Plaintiff,

  vs.

REPUBLIC OF LIBERIA, et al,

   Defendant

Case No.: 10-CV-1791 RGK (SHx)

PLAINTIFF'S OPPOSITION TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY DEFENDANT DR. GEORGE GOLLIN:

(a) TO DISMISS (ON GROUNDS OF SOVEREIGN IMMUNITY AND VIOLTION OF RULE 8)

(b) ALTERNATIVELY FOR A MORE DEFINITE STATEMENT

(c) TO STRIKE FOR FAILURE TO PLEAD CLASS

[FRCP 8, 12(b)(1), 12(e), 12(f) & 41(b)]

DATE: July 26, 2010
TIME: 9:00 a.m.
COURTROOM: 850

Plaintiff'S OPPOSITION





# TABLE OF AUTHORITIES

**FEDERAL CASES**

Louisiana State Board of Education of Baker (denial of education) (1964, CA5 La)

    339 F2d  911

Gagne v Maher (1979, CA2 Conn) 594 F2d 336, affd (1980) 448 US 122, 65 L Ed

    2d 653, 100 S Ct 2570

Wilson v Beebe (1985, CA6 Mich) 770 F2d 578

Will v. Michigan Dept. Of State Police 491 U. S. 58 (1989)

Griffin v. Breckenridge 403 U.S. 88 (1971)

Means v. Wilson 522 F. 2d 833

Collins v. Hardyman 341 U.S. 651 (1951)

Tenney v. Brandhove 341 U.S. 367 (1951)

United Bhd. of Carpenters & Joiners, Local 610 v. Scott 463 U.S. 825; 103 S. Ct.

    3352; 77 L. Ed. 2D 1049

Wisconsin v. Constantineau 400 U.S. 433; 91 S. Ct. 507

Collins v. Purdue Univ., 38 Media L. Rep. 1481   (Internet Defamation)(1964,

    CA5 La) 339 F2d  911

Goshtasby v. Board of Trustees of the University of Illinois (7th Cir. 1997) 123

    F.3d 427;

Melinda Benton v Oregon Student Assistance Commission, Oregon Office of

    Degree Authorization, and Alan Contreras 421 F.3d 901, 2005 U. S. App.

    Lexis 18301

**RULES**

Federal Rules of Civil Procedure    Rule 8(a)(2)

Federal Rules of Civil Procedure    Rule 8(d)(1)

Federal Rules of Civil Procedure    Rule 8(e)(2)

Federal Rules of Civil Procedure    Rule 11

Federal Rules of Civil Procedure        Rule 12(b)(6)

## LOCAL RULES

Local Rule 23-2

## CONSTITUTIONAL PROVISIONS

United States Constitution, Article 1, Section 8

United States Constitution, Article 1, Section 10

United States Constitution, Article 2, Section 2

United States Constitution Article 3

United States Constitution Article 6

U.S. Constitution, Amendments 1, 4, 5, 6, 7, 8, 9, 11, 14

## UNITED STATES CODES

42 U.S.C.S. § 1983

Title 18, Part I, Chapter 13

Title 18, Part I, Chapter 41

## PLAINTIFF'S EXHIBITS

Exhibit A     Pages 1-6 of the 91-page Document Sent By Dr. George Gollin,
              Professor of Physics, University of Illinois, to the National
              Accreditation Board of the Republic of Ghana

Exhibit B     Letter from National Accreditation Board of the Republic of Ghana to
              the Attorney-General of the Republic of Ghana

Exhibit C     Letter from Ghanaian Ministry of Foreign Affairs to Kwame Dattey,
              Ghana National Accreditation Board

Exhibit D     Letter from Alan Contreras, Oregon Office of Degree Authorization,
              to Kwame Dattey of the National Accreditation Board of Republic of
              Ghana (Fax Version)

Exhibit E     Letter from Alan Contreras, Oregon Office of Degree Authorization, to Kwame Dattey of the National Accreditation Board of Republic of Ghana (Regular Mail)

Exhibit F     Letter from Dr. Brad Schwartz, Dean of the University of Illinois College of Medicine, to Kwame Dattey of the  National Accreditation Board of the Republic of Ghana

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' 71-page, 211-paragraph [First Amended] Class Action Complaint (hereinafter "complaint") does state more than ten causes of action against a dozen different defendants, ranging from the government of Liberia and its current or former officials, to the University of Illinois and one of its professors, and specifies the causes of actions to each defendant.

The Plaintiff did not state in its complaint that it is suing Dr. George Gollin as an employee of the State of Illinois. The Defendant is now attempting hide his responsibility for his tortious acts under the color of law of the 11th Amendment of the United States Constitution. However, when a person acting under color of state law violates rights embodied in a substantive guarantee of the Constitution, such as the Amendments 1, 4, 5, 6, 7, 8, and 9, it makes no difference that the state affords a remedy; the victim may choose to pursue his federal remedy under 42 U.S.C.S. § 1983, without resorting to the courts of the state

Professor George Gollin tortious actions against St. Luke School of Medicine ( SLSOM ), Dr. Jerroll Dolphin, and the students and graduates of SLSOM, were not within the scope of his employment, a Professor of Physics. In fact, the University of Illinois did state that Professor Gollin's research was not within the scope of his employment and that it should be removed from the University of Illinois's website.

The tortious acts of Professor Gollin violated the civil rights of SLSOM, Dr. Jerroll Dolphin, and the students and graduates of SLSOM declared and protected by the Amendments  1, 4, 5, 6, 7, 8, 9, and 14,  and  42 U.S.C.S. § 1983,  Title 18, Part I, Chapter 13, Title 18, Part I, Chapter 41 and other statutes. The acts of the United States Congress have placed the adjudication of civil rights violation under the jurisdiction of federal courts.

The Plaintiff has also alleged in its complaint that the University of Illinois was negligently responsible for the Defendant Dr. George Gollin's publications on the Internet and elsewhere.  The defendant University of Illinois now declares that it is responsible for and endorses the activities of Professor George Gollin against St. Luke School of Medicine in the Defendant's Motion to Dismiss.

The Plaintiff and his counsel did not have to accept the position of the defendant.  Therefore, sanctions are not warranted, since plaintiffs have filed and are litigating this action in good faith. Consequently, Defendant's motion in its entirety, including its request for sanctions, should be denied.

Contrary to the defendant's statements, no student has ever graduated from St. Luke School of Medicine without attending class and neither has any student graduated from SLSOM by doing coursework online only.  The Defendant's counsel intends to sway the judgment of this court, without a trial, through fear by presenting statements similar to the false statements made by the Defendant Dr. George Gollin in his public attack against St. Luke School of Medicine and its principle owner, Dr. Jerroll Dolphin.

The Plaintiff's previous counsel has not returned a phone call or email to the Plaintiff as well as the Defendant's counsel.  However, it is the Plaintiff's authentic belief that there are higher issues involved in this case than a mere complaint of defamation against St. Luke School of Medicine.  The actions of Dr. George Gollin have violated the civil rights of its owners (Dr. Jerroll Dolphin and St. Luke's Medical Program, Inc). and the students and graduates of SLSOM.  Dr. George Gollin's research has also violated the civil rights of perhaps hundreds of other lawful educational institutions, and perhaps thousand of students and graduates, who either do not have the courage or the money to litigate an action such as this.

If St. Luke School of Medicine were an unaccredited institution, being an unaccredited institution is not a crime, and as such, unaccredited institutions, their

1  owners, students and graduates should not be treated as criminals.  Most small

2  tertiary institutions have to earn their accreditation over a few years of operation,

3  or they are grated interim accreditation by an accreditation agency.

4          Without due process of law, Dr. George Gollin's research is used by the

5  states of Oregon, Texas, Maine, Michigan, North Dakota and other states and

6  foreign countries as if it were legislated law, and students and graduates of

7  SLSOM and other institutions on the "diploma mill" list are subject to prosecution.

8  In fact, Dr. George Gollin's  research is amateurish, and does not meet even

9  minimum standards of journalism or professional research.  Dr. George Gollin's

10 research reflects his personal preferences and biases.

11         The Plaintiff will show to this court that the "diploma mill" list that Dr.

12 George Gollin publishes on the University of Illinois's and the Oregon Office of

13 Degree Authorization's websites (used by many other states and countries as law)

14 reflects racial, cultural, regional, and personal prejudices of its primary author.

15         The Plaintiff's complaint regarding the tortious conduct of Dr. George

16 Gollin is brief and concise.  It features short and plain statements of the claim

17 showing that the pleader is entitled to relief.  The remainder of the 71-page

18 complaint lays the basis for claims against the other 11 Defendants, and presents

19 other evidence.  The facts will show that Dr. George Gollin and other Defendants

20 in the lawsuit did conspire to violate the civil rights of the plaintiffs, which are

21 clearly demonstrated in the complaint.

22         The complaint's prayer clearly declares that Dr. George Gollin is being sued

23 for all causes in the complaint.  So, there is no glaring defect in the Plaintiff's

24 pleading.  The Plaintiff apologizes to this court if some of the grammar used in its

25 complaint does not clarify an action done, performed or spoken by a defendant.

26 However, a few grammatical mistakes should not justify the dismissal of this

27 lawsuit.

28

1    The bulk of the complaint was submitted to the Plaintiff's previous counsel
2  as a source of information by Dr. Dolphin, however the complaint should not be
3  dismissed because Dr. Dolphin wrote some of it and parts of it appear as if it were
4  written by a layman.

5    The portion of the complaint describing the cause of action against Dr.
6  George Gollin and the University of Illinois is very brief and concise and satisfies
7  Rule 41(b).3.

8    The Defendant's counsel's Memorandum, itself, consists of 17 pages. How
9  can the Defendant justify dismissal of the complaint based on it 71 pages against
10  12 Defendants and its Memorandum for a single Defendant is 17 pages. If the
11  length of a complaint itself is an issue than the Defendant's Motion to dismiss
12  should be quashed.

13    The complaint does briefly state that the civil rights of all students and
14  graduates of St. Luke School of Medicine have been violated by each and every
15  one of the Defendants, including Dr. George Gollin. The complaint does identify
16  the class and the reasons for their class-action. The "diploma mill" list authored
17  by Dr. George Gollin is used as law. The students and graduates of St. Luke
18  School of Medicine, and, indeed, hundreds of other legitimate educational
19  institutions are subjected to violations of their civil rights without due process of
20  law.

21    The Plaintiffs are also discovering more violations of its civil rights done by
22  Dr. George Gollin that are too numerous to identify in a brief complaint, as the
23  Plaintiffs can provide hundreds of documents written by Dr. George Gollin that
24  furthers the basic complaints against the Defendant. Therefore, the Plaintiff's class
25  allegations should not be stricken from the complaint.

26    The Plaintiffs can clearly demonstrate that the Defendant Dr. George Gollin
27  did conspire with others to violate the civil rights of the Plaintiffs by sending the
28  libelous 91-page document to officials of the Republic of Ghana and violated

criminal as well as civil laws of the United States, as alleged in their complaint.
This evidence clearly shows that Dr. Brad Schwartz of the University of Illinois
and Alan Contreras of the Oregon Office of Degree Authorization conspired with
Dr. George Gollin to violate the civil rights of the Plaintiffs and threaten foreign
officials.  Please see Plaintiff's Exhibits A-F.

**Defendant's Motion to Dismiss Standard Should be Denied**

A.      Plaintiff can prove facts in accordance to Federal Rules of Civil Procedure
Rule 12(b)(6) that supports their claims of conspiracy to commit civil rights
violations and other claims:

1.      Information on the defendants websites that demonstrate the
collaboration of defendants Professor George Gollin, "Professor of
Physics, University of Illinois at Champaign-Urbana" and the Oregon
Office of Degree Authorization against St. Luke School of Medicine
(SLSOM) since 2003.

2.      Documents and letters and letters sent to the Ghanaian officials in the
United States and Ghana, that were submitted to Ghanaian Court of
Appeals in December 2009, in an effort to block the accreditation of
St. Luke School of Medicine's campus in Ghana that SLSOM gained
through adjudication.  Those documents and letters sent to the
Ghanaian officials by the defendants in 2009 clearly demonstrate
Internet Stalking. Trade Libel, Interference with Prospective
Economic Advantage, Loss of Consortium, Denial of Due Process,
Denial of Equal Opportunity Under the Color of Law, Malfeasance,
Threatening Foreign Officials, Harassment by Government Officials,
and other violations of the Plaintiffs' civil rights protected by the
United States Constitution, and further defined by Congress in 42

U.S.C.S. § 1983 and Title 18, Part I, Chapter 13 and other statutes. Please see Plaintiff's Exhibits A-F.

4.   Alan Contreras of the Oregon Office of Degree Authorization and Professor George Gollin, "Professor of Physics, University of Illinois at Champaign-Urbana" despite knowing that SLSOM had orders from the Liberian Supreme Court to restore its accreditation conspired and continued to defame SLSOM since 2006 on the Oregon Office of Degree Authorization's website and elsewhere.

B.   Plaintiffs' claims against the State Defendants are not barred by the Eleventh Amendment. Violations of Plaintiffs' civil rights are protected through the 14th amendment and further defined by Congress in 42 U.S.C.S. § 1983 and Title 18, Part I, Chapter 13 and other statutes.

C.   This court has personal jurisdiction over the State Defendants.

1   Purposeful Availment. The Defendant's actions satisfy the three elements of the effects test  If the defendant

(1)   "committed an intentional act." The Defendant deliberately posted libelous information on its ODA website since 2003 against SLSOM that caused harm to the reputation, career, and business opportunity of Dr. Jerroll Dolphin, the principle owner of St. Luke School of Medicine. Again in 2009 the Defendant's representative, Dr. George Gollin, and co-conspirators Alan Contreras and Dr. Brad Schwartz (of the University of Illinois) sent libelous, malicious and threatening documentations and letters to officials of the Republic of Ghana, that also to damaged the reputation, career, and business opportunity of Dr. Jerroll Dolphin, the principle owner of St. Luke School of Medicine. Please see Plaintiff's Exhibits A-F.

(2)     "that was expressly aimed at the forum state."  The Defendant did target the Plaintiff SLSOM and Dr. Jerroll Dolphin in the State of California in their libel and conspiracy.  The Defendant's website at the time of the writing of this opposition states: "Saint Luke School of Medicine, **California**, Ghana, Liberia, Disowned by Liberian government in 2005"

(3)     "and, caused harm, the brunt of which is suffered and which the defendant knows is likely to have been suffered in the forum state." The Defendant knew at all times that the principle owner of SLSOM resided the State of California and that Dr. Dolphin would suffer harm in his home state.

2.     <u>There Must be Forum-Related Activity by the Defendant.</u>

The defendant Dr. George Gollin's and the Office of Degree Authorization's websites are more than passive websites that makes information available to those interested.  It is used a the source for criminal prosecutions in Oregon, Texas and other states against those students or graduates of the "unaccredited" colleges or universities on the "diploma mill" list.  Without due process or legislative approval those schools on the list are referred to as "fraudulent", "fake", and other derogatory statements and phrases on this and numerous other websites on the Internet.  Students and graduates of those institutions on the list are subject to persecution and derogations with less evidence than what is required to give a traffic ticket.  The Plaintiff will also demonstrate to this court that the defendant does not apply standards equally and fairly, and that the defendant demonstrates personal racial, cultural and regional bias in its "diploma mill" list.

D    .     The Defendant Oregon Office of Degree Authorization  has previous judgments and orders in Federal Court for civil rights violations and the

Defendants continues to violate the civil rights of citizens of the United States, alien residents, and others, based on the "diploma mill" list produced by Dr. George Gollin.

E.     The use of "diploma mill" list as if it were legislated law is unconstitutional as it violates the civil rights of citizens and residents of the United States, and it attempts to exercise authority of the State of Oregon over the foreign policy of the United States and over the sovereignty and authority of foreign nations worldwide.

## II. FACTUAL BACKGROUND

The Defendant alleges that the complaint is lengthy. The facts presented in the complaint are very relevant to the causes of action against the Defendant Dr. George Gollin and the length of the complaint is justified.

The St. Luke's Medical Program (SLMP), the registered owners of St. Luke School of Medicine, was a documented foreign corporation in the State of California, doing business in California as St. Luke School of Medicine  Dr. Jerroll Dolphin is the majority owner of SLMP.

SLSOM was an accredited medical school in the Republic of Liberia since 2001  Furthermore, it obtained its "charter" in the Republic of Liberia, FAC Exhibit 31, Legislative Enactment, signed by President Charles Taylor in August 2003, FAC Exhibit 4, President Signed SLSOM Charter Act in August 2003. A charter is a national law in Liberia that is passed in the House and Senate of the Republic of Liberia, and signed by its President. Of the more than 24 other universities and colleges in Liberia, only three other universities and colleges in Liberia other than St. Luke School of Medicine have charters. The legal status of SLSOM has always been clear. Dr. Dolphin has never claimed that his efforts to establish SLSOM as an accredited institution were thwarted at every turn.  (FAC, 42, 43, 52, 58, 104, 125, 138, 165.)

1   SLSOM operated without government disruption until September 2004.
2   Until that time, SLSOM was also listed as an accredited medical school on the
3   website of the Embassy of Liberia, Washington D.C.  In September 2004, SLSOM
4   was attacked by officials of the National Transitional Legislative Assembly
5   (NTLA) who were members of a rebel group LURD, an opposition group that
6   fought against the elected government of Charles Taylor.  The NTLA was a
7   temporary legislature that existed from 2004-2006 in Liberia.  The NTLA was not
8   allowed to pass laws, and the assemblymen of the NTLA were also temporary.
9   The Liberian Embassy in Washington DC, posted the 'Disclaimer', FAC Exhibit 6
10  on its website in September 2004 (it has since been removed in 2009).

11   The Educational Commission for Foreign Medical Graduates (ECFMG),
12  through controversy on the Internet, removed SLSOM from the International
13  Medical Education Directory (IMED) in January 2005.  The National Commission
14  on Higher Education (NCHE) of the Republic of Liberia requested  ECFMG to
15  include SLSOM in the IMED in March 2005.

16   Then, the NCHE though pressure by LURD representatives in the NTLA,
17  sent a fraudulent letter to the ECFMG in April 2005 claiming that SLSOM was a
18  "computer school" and the ECFMG removed SLSOM from the IMED.

19   In July 2005, SLSOM filed a Writ of Prohibition in the Supreme Court of
20  Liberia against the Government of Liberia requesting an end to the harassment of
21  SLSOM and the deprivation of its status as an accredited medical school.  The
22  Government of Liberia failed to respond to the summons and complaint on four
23  occasions.

24   In August 2005, the Liberian Supreme Court ordered a "return to status quo
25  ante" and issued a stay order to the Republic of Liberia to take "no further action"
26  against SLSOM.  SLSOM was also awarded a "Clerk's Certificate" (default
27  certificate) because the government failed to appear or make an argument against
28  SLSOM's complaint even though it was summonsed to four different hearings.

1    Despite receiving two requests from the NCHE and despite receiving the
2  Liberian Supreme Court Order from September through December 2005, the
3  ECFMG refused to restore SLSOM listing on the IMED, even until now.
4    In September 2006, SLSOM initiated a "Damages for Wrong" lawsuit
5  against the Republic of Liberia in the Civil Court of the Republic of Liberia for
6  $120,000,000 USD.  The Republic of Liberia defaulted and SLSOM was awarded
7  another "Clerk's Certificate" in October 2006.
8    However, neither the Liberian Supreme Court nor the Civil Court has met
9  for a judgment due to maneuvering of those same Liberian officials who were sued
10  in original two lawsuits.
11    In summary of the events in Liberia, the Liberian government has not
12  complied with its own Supreme Court's order to restore SLSOM's status to "status
13  quo ante".

## III.   LEGAL STANDARDS

15    SLSOM's complaint asserts that Professors Gollin, "Professor of Physics,
16  University of Illinois, Champaign-Urbana", and Alan Contreras, Director of the
17  Oregon ODA, have conspired against SLSOM by placing SLSOM on the ODA's
18  "diploma mill" list without due cause and without due process of law since 2003.
19  The Plaintiff's complaint asserts that Gollin relied on false information from
20  Internet articles about SLSOM to compile the false information he posted about
21  SLSOM on the ODA's website.
22    The Plaintiff, in its complaint, has presented official legal, judicial and
23  governmental information authorizing SLSOM's existence and accreditation in
24  Liberia as exhibits.  On the other hand, the Defendant Oregon Office of Degree
25  Authorization and the author of the "diploma mill" list, Dr. George Gollin, used
26  Internet news articles to libel and discredit SLSOM and the Plaintiff.
27    The Plaintiff asserts that Gollin and Alan Contreras of the Oregon Office of
28  Degree Authorization knew that SLSOM had obtained a default certificate and an

order to restore its accreditation and status from the Liberia Supreme Court in 2005, against the Republic of Liberia.  Further, Gollin and Alan Contreras of the Office of Degree Authorization knew that SLSOM had also obtained a default certificate in its civil court "Damages for Wrong" lawsuit against the Republic of Liberia in 2006.  Dr. Gollin claims to be a consultant to the Republic of Liberia, and so, had access to official documentation from the Republic of Liberia.

Despite the availability of the official documentation that substantiates SLSOM's claim to legitimacy and accreditation, Alan Contreras of the ODA and Professor George Gollin present the following information from the ODA's website to defame SLSOM and ostensibly brand its owners as disreputable and dishonest, http://www.osac.state.or.us/oda/unaccredited.aspx

" Saint Luke School of Medicine, California, Ghana, Liberia, Disowned by Liberian government in 2005."

On or about November and December 2009, the defendants Dr. George Gollin, and the Oregon Office of Degree Authorization's representative Alan Contreras, and Dr. Brad Schwartz sent through the Internet and United States mail libelous and threatening documents and letters to officials of the Republic of Ghana, in Ghana and the United States, in an effort to further defame and interfere with the business opportunity of SLSOM, Dr. Jerroll Dolphin, his wife, and others. Please see Plaintiff's Exhibits A-F.

Furthermore, the Plaintiff asserts that Dr. George Gollin and Alan Contreras of the Oregon Office of Degree Authorization intentional and willfully violated the civil rights of SLSOM, Dr. Jerroll Dolphin, and SLSOM students and graduates by publishing the "diploma mill" list authored by Dr. George Gollin.. The University of Illinois is responsible to the tortious acts of its employees and consultants.  However, Dr. George Gollin is being sued as an individual, and he was personally served.

The complaint alleges that when SLSOM's accreditation was illegally taken away by corrupt Liberian officials in an extortion attempt. Dr. George Gollin furthered the extortion using the statements made in the media by the same corrupt Liberian officials. The media quotations used by Dr. George Gollin in his numerous postings on the Internet, as well as the lectures and newspaper interviews, use the very same remarks made by the same corrupt Liberians posted on the Internet. Those newspaper articles are presented in the complaint as well as the facts related to them.

One of the principle questions in front of this court is 'do quotations from newspaper articles override lawfully obtained government certificates, authorizations, permits, constitutional legislation, charters, court orders and default certificates obtained by St. Luke School of Medicine and its owners'?

This Plaintiff asks this honorable court if quotations from online Liberian newspapers and Internet articles posted by Dr. Gollin to libel SLSOM, Dr. Dolphin, and the students and staff of SLSOM that are presented under the color of Illinois, or the "diploma mill" list posted on on the ODA's website, also under the color of law, are more truthful than official Liberian laws, government documents, court documents and court orders from the Liberian Supreme Court presented by the Plaintiff to this honorable court of law?

This Plaintiff also asks this honorable court if Employees or Officials of a State Agency can use their positions and authority to launch personal, malicious and libelous attacks on persons, institutions and corporations and then hide themselves behind barrier of 11th Amendment Sovereign Immunity that violate the civil rights of citizens, residents, and corporations in the United States?

Some of those same certificates, authorizations, permits, congressional legislation, charters, court orders and default certificates are presented as exhibits in the Plaintiff's complaint. Those official documents are perhaps too many and burdensome for the Defendant's counsel to read. The length of the complaint, the

number of official documents used as exhibits in the complaint, and the newspaper article quoted in the complaint are all relevant to causes of action against the Defendant Dr. George Gollin.  Consequently, the complaint against the Defendant should not be dismissed.

Dr. George Gollin "diploma mill" list violate the civil rights of SLSOM and its owners, staff, students and graduates.  The "diploma mill" list is used as law in the state of Oregon, Texas, Maine, Michigan, North Dakota, and other states and foreign countries to deny or discredit the lawfully obtained education of many students and graduates of the universities and colleges on the list.  The students and graduates of SLSOM have been damaged by the tortious actions of Dr. George Gollin and is so stated in the complaint.  The requirements of Local Rule 12(f) are satisfied and thus the class action portion of the complaint should not be stricken.

Dr. George Gollin and his co-conspirators knew that St. Luke School of Medicine had obtained defaults in its Liberian Supreme Court "Writ of Prohibition" as well as its Liberian Civil Courts "Damages for Wrong" lawsuit. The Defendant also knew of the Liberian Supreme Court ordered the Liberian government to return SLSOM to "status quo ante" in August 2005, restoring the accreditation that was illegally taken from the institution.  Nonetheless, and with complete disregard for the truth, Dr. George Gollin continued his campaign against St. Luke School of Medicine, its owners, and its students and graduates to smear and further derogate their reputations and credibility.  Dr. George Gollin used his "diploma mill" list to violate the civil rights of St. Luke School of Medicine, its owners, students and graduates.  Civil rights are protected by the 14th Amendment and violations of those civil rights are adjudicated in the federal courts.  Thus this complaint against the Defendant should not be dismissed.

## Opposition to Defendant's Citations

The defendant is wrong. *Regents of the University of California v John Doe, Thompson v. City of Los Angeles, Cannon v University of Health Sciences/the Chicago Medical School* and other cases cited by the defendant are not dispositive of this issue. Although these cases stand for the proposition that in certain circumstances sovereigns are entitled to immunity, they do not stand for the proposition that in all circumstances a sovereign cannot be sued in a federal forum. The 14th Amendment of the United States Constitution and other laws of the United States mandates that violations of civil rights are adjudicated in the Federal Courts. See below.

*Harvis v. Board of Trustees of the University of Illinois.* The Plaintiff is not merely suing for damages on a tort. The State of Illinois is responsible for acts of its employees under the color of law that violate the civil rights of citizens and residents of the United States, and aliens. See below.

Stone v. State of Texas, 76 Cal.App.4th 1043, 1047, 90 Cal.Rptr.2d 657 (1999) - "When a defendant moves to quash service of process on jurisdictional grounds, the Plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction." and California permits the exercise of personal jurisdiction to the full extent permitted by due process. The 14th Amendment of the United States Constitution and other laws of the Congress of the United States authorize jurisdiction of civil rights violations to be in Federal Court. The University of Illinois is responsible to the tortious acts of its employees and may be sued in Federal Court for civil rights violations. Also, the actions of Dr. George Gollin and Dr. Brad Schwartz of sending libelous documentation to officials of the Republic of Ghana that defame the Plaintiff and St. Luke School of Medicine are outside of the scope of their employment. Dr. Jerroll Dolphin and SLMP, the majority owners of SLSOM, are resident in the State of California, and did business in California. Please see Plaintiff's Exhibits A-F.

Bancroft & Masters, Inc., v. Augusta Nat., Inc., 223 F.3rd 1082, 1086 (9th Cir. 2000) - Whether a California court would have personal jurisdiction over the State Defendants is dependent upon whether the Plaintiff has alleged "minimum contacts" between the State Defendants and the State of California for purposes of general or specific jurisdiction and general jurisdiction requires that the contacts be of the sort that approximate physical presence.- The "diploma mill" list authored by Dr. George Gollin and published by the Oregon Office of Degree Authorization claims to exercise jurisdiction over the accreditation of colleges and universities outside of the State of Oregon (including California) and outside of the sovereignty of the United States of America.  The listing of unaccredited universities on the "diploma mill" list, wrtten by Dr. George Gollin and published by the Oregon Office of Degree Authorization, of colleges and universities outside of Oregon, and outside of the United States, satisfies the requirement for minimum contact

Vons Companies, Inc. v. Seabest Foods, Inc., 14 Cal.4th 434, 446,58 Cal.Rptr.2d 899, 926 P.2d 1085 (1996) "the defendant has purposefully availed himself or herself of forum benefits, and the 'controversy is related to or 'arises out of' a defendant' contacts with the forum."  Dr. George Gollin, and co-conspirators Alan Contreras of the Oregon Office of Degree Authorization and Dr. Brad Schwartz (both of the University of Illinois), conspired and acted to violate the civil rights of the Plaintiff and SLSOM by sending libelous and malicious documents and letters to Officials of the Republic of Ghana.  Defendant's representative, Alan Contreras, threatened to place all Ghanaian colleges and universities on the Office of Degree Authorization's "diploma mill" list if the Ghana National Accreditation Board (NAB) or the Courts of Ghana accredit St. Luke School of Medicine (owned by the Plaintiff Jerroll Dolphin and SLMP).  The Plaintiff's medical school had gone through an extensive and arduous accreditation process in Ghana including three physical inspections of its facilities in Ghana

1  from 2007 through 2008. Accreditation was awarded to St. Luke School of
2  Medicine in a judgment of the High Court of Ghana in October 2009.
3      The Office of Degree Authorization's "diploma mill" list is used by Oregon,
4  Texas, Maine, Michigan, North Dakota, and other states, institutions, agencies,
5  and countries (the forum) to deny or discredit the education of students or
6  graduates of the institutions placed in that list.
7      Consequently, without due process of law, equality of process or inspection,
8  the Oregon Office of Degree Authorization threatens to jeopardize the reputation
9  of all Ghanaian colleges and universities because of Alan Contreras' personal bias
10 against St. Luke School of Medicine and the Plaintiff. Again, all without due
11 process of law. See below, and Exhibits A-F that are attached.
12      Ziegler v. Indian River County, 64 F.3d 470,474 (9th Cir. 1995) -
13 1  "the defendant must have performed some act or consummated some
14 transaction within the forum or otherwise purposely availed itself of the privileges
15 of conducting activities in the forum  The defendant's actions  by sending
16 threatening letters to officials of the Republic of Ghana,  have intentionally
17 damaged the Plaintiff's Prospective Business Advantage and has further defamed
18 the owners of SLSOM (Dr. Jerroll Dolphin and others) of their civil rights.  The
19 Oregon Office of Degree Authorization's "diploma mill" list is used to deny the
20 rights of students, graduates, owners and staff of those institutions of education,
21 employment, pursuit of happiness,  and the right to assemble by the states of
22 Oregon, Texas, Maine, Michigan, North Dakota, and other states and countries.
23 See below for details.
24 2      "the claim must arise out of or result from the defendant's forum related
25 activities". Alan Contreras of the Oregon Office of Degree Authorization and Dr.
26 George Gollin, and Dr. Brad Schwartz (both of the University of Illinois),
27 conspired and acted to violate the civil rights of the Plaintiff and SLSOM by
28 sending libelous and malicious documents and letters to Officials of the Republic

1   of Ghana. Furthermore, the defendant's "diploma mill" list denies students,

2   graduates, owners and staff of their civil rights in Oregon, Texas, Maine,

3   Michigan, North Dakota and other states and foreign countries by defaming their

4   universities under the color of law. See below.

5   3   "the exercise of jurisdiction must be reasonable. Amendment 14 of United

6   States Constitution and other laws of the United States provides that violations of

7   civil rights be tried in Federal Courts. See below.

8       <u>Doe v. American National Red Cross, 112 F.3d 1048, 1051 (9th Cir. 1997)</u>

9   The Defendant's actions by sending threatening documents and letters to officials

10  of the Republic of Ghana, and the Oregon Office of Degree Authorization's

11  "diploma mill" list is used to deny rights of education, employment, pursuit of

12  happiness, and the right to assemble in Oregon, Texas, Maine, Michigan, North

13  Dakota, and other states and countries. The casual connection to deny the civil

14  rights of the students and graduates of those institutions on that list is highly

15  amplified by the combination of those actions of the Defendants. See below.

16      <u>California Rules of Civil Procedure §410.10</u> The defendant's actions by

17  sending libelous documents and threats to officials of the Republic of Ghana, and

18  the "diploma mill" list on the website of the Oregon Office of Degree

19  Authorization have violated the Plaintiff's civil rights and the rights of SLSOM

20  guaranteed in the United States Constitution.

21       Additionally, the "diploma mill" list itself is unconstitutional because it

22  asserts the authority of the State of Oregon over the Foreign Policy, Treaties, and

23  other rights of the United States government and over the sovereignty and

24  authority of foreign nations worldwide. See below.

25      <u>Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1121</u>

26  <u>(W.D. Penn. 1997) and also Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (C.A.9</u>

27  <u>Ariz. 1997)</u> The Oregon Office of Degree Authorization's "diploma mill" list

28  website is not merely "A passive website that does little more than make

information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." The "diploma mill" list is used a a legal standard in Oregon, Texas, Maine, Michigan, North Dakota, and other states and countries to deny or discredit the education of students or graduates of the institutions on the list. Those students or graduates of the institutions on the list may be subject to criminal prosecution, censure, and other restrictions without due process of law. The "diploma mill" list is authored by Dr. George Gollin.

The "diploma mill" list itself is unconstitutional because it asserts the authority of the State of Oregon over the Foreign Policy, Treaties, and other rights of the United States government and over the sovereignty and authority of foreign nations worldwide. See below.

## Plaintiff's Opposition to Motion to Dismiss

The Plaintiff's complaint sets out in specific detail all the events that showed the violations of the law and theirs rights by the country of Liberia and all the other defendants that violated their rights, including Alan Contreras of the Office of Degree Authorization. The cause of action against the Oregon Office of Degree Authorization is focused. United States Constitution Amendment XI does not bar an action against a state official or employee individually for his tortious conduct. Alan Contreras and the Oregon ODA conspired with Professor George Gollin in tortious acts of:

1.      Trade libel against St. Luke School of Medicine (SLSOM) and against Dr. Jerroll Dolphin. When a person acting under color of state law violates rights embodied in a substantive guarantee of the Constitution, such as the Amendments 1, 4, 5, 6, 7, 8, and 9, it makes no difference that the state affords a remedy; the victim may choose to pursue his federal remedy under 42 U.S.C.S. § 1983 without resorting to the courts of the state. Will v. Michigan Dept. Of State Police 491 U. S. 58 (1989), Wilson v Beebe (1985,

1   CA6 Mich) 770 F2d 578 and Wisconsin v. Constantineau 400 U.S. 433; 91

2   S. Ct. 507.

3   2.   Intentional Interference with Prospective Business and Economic

4   Advantage. The court recognizes a cause of action under 42 U.S.C.S. § 1983

5   for the intentional deprivation of a liberty interest by one acting under color

6   of state law. Will v. Michigan Dept. Of State Police 491 U. S. 58 (1989),

7   Wilson v Beebe (1985, CA6 Mich) 770 F2d 578 and Wisconsin v.

8   Constantineau 400 U.S. 433; 91 S. Ct. 507.

9   3.   Negligence.  Professor Gollin's misrepresentations against SLSOM and its

10   owners, students and graduates were published under the color of law

11   through his own actions and the actions of Alan Contreras and the Oregon

12   Office of Degree Authorization.  Dr. George Gollin has the responsibility to

13   assure the public that the rights of all citizens and residents of the United

14   States are not violated by his actions as a public employee under the

15   provisions of Amendments 1, 4, 5, 6, 7, 8, and 9.  Violatios of civil rights are

16   under the jurisdiction of federal court is provided by Amendment 14.

17   Collins v. Purdue Univ., 38 Media L. Rep. 1481, (1964, CA5 La) 339 F2d

18   911.

19   4.   Loss of Consortium. 42 U.S.C.S. § 1983 is implicated only when the acts of

20   a defendant under color of state law violate rights protected by the

21   constitution or laws of the United States, specifically the pursuit of

22   happiness. Dr. Dolphin's wife stated to him that the sole reason for her

23   divorce from Dr. Dolphin was the publication in Ghana of the 91-page

24   document sent by Professor Gollin to the National Accreditation Board of

25   Ghana in October or November 2009, and the letters sent to Ghanaian

26   official Dr. Brad Schwartz of the University of Illinois College of Medicine,

27   and by the two letters sent to Ghanaian officials by Alan Contreras of the

28

Oregon Office of Degree Authorization.  Gagne v Maher (1979, CA2 Conn) 594 F2d 336, affd (1980) 448 US 122, 65 L Ed 2d 653, 100 S Ct 2570.

5.  Deprivation of Due Process (see III. LEGAL STANDARD, A. Deprivation of Due Process, below).

6.  Denial of Equal Protection (see IV. Plaintiff Can Pursue a Federal Court Action Against the State of Oregon and its Office of Degree Authorization as a Matter of Law, below)

7  Conspiracy to Commit Civil Rights Violations.

    A.  Since 2003, Professor George Gollin, "Professor of Physics, University of Illinois, Champaign-Urbana" and Alan Contreras, Director of the Oregon ODA, conspired against SLSOM, its owners and its students and graduates by placing SLSOM  on the ODA's "diploma mill" list without due cause and without due process of law. Collins v. Purdue Univ., 38 Media L. Rep. 1481, (1964, CA5 La) 339 F2d 911, and Griffin v. Breckenridge  403 U.S. 88 (1971), Wisconsin v. Constantineau.

    B.  On or about October and November of 2009, Professor George Gollin and Dr. Brad Schwartz (both of the University of Illinois), and Alan Contreras (State of Oregon, Office of Degree Authorization) conspired to violate the civil rights of Dr. Jerroll Dolphin and the owners of SLSOM, by sending defaming documents and letters to the Republic of Ghana in an effort to deprive the Plaintiffs of their civil rights.  Please see Plaintiff's Exhibits A-F.  United Bhd. of Carpenters & Joiners, Local 610 v. Scott 463 U.S. 825; 103 S. Ct. 3352; 77 L. Ed. 2d 1049.  Please see Exhibits A, B, C, D, E, and F attached to this Reply.  These actions by the defendants also violated United States criminal codes

1.    Title 18, Part I, Chapter 13 § 241 Conspiracy to Commit Human Rights Violations. "If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured

2.    Title 18, Part I, Chapter 41 § 876. Mailing threatening communications d) Whoever, with intent to extort from any person any money or other thing of value, knowingly so deposits or causes to be delivered, as aforesaid, any communication, with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to injure the property or reputation of the addressee or of another, or the reputation of a deceased person, or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both."

3    Title 18, Part I, Chapter 41 § 878. Threats and extortion against foreign officials, official guests, or internationally protected persons.

(a) whoever knowingly and willfully threatens to violate section 112, 1116, or 1201 shall be fined under this title or imprisoned not more than five years, or both, except that imprisonment for a threatened assault shall not exceed three years."

(b) whoever in connection with any violation of subsection (a) or actual violation of section 112, 1116, or 1201 makes any

1                     extortionate demand shall be fined under this title or

2                     imprisoned not more than twenty years, or both."

3  8.     Intentional Infliction of Emotional Distress & Negligent Infliction of

4  Emotional Distress. United States Constitution, Amendments and 14. Collins v.

5  Purdue Univ., 38 Media L. Rep. 1481, (1964, CA5 La) 339 F2d 911.

6  9.     Internet Stalking. Professor Gollin in the 91-page document that he sent to

7  the Ghana National Accreditation Board, the two letters sent by Alan Contreras of

8  the ODA, and the letter sent by Dr. Brad Schwartz clearly demonstrate the offense

9  of Internet Stalking. Please see Plaintiff's Exhibits A-F. No official

10  documentation was presented by any of the conspirators. Only information

11  obtained through the Internet was presented, mostly false and libelous.

12  10.    The Federal Courts have already ruled that the Oregon Student Assistance

13  Commission, Office of Degree Authorization has committed Civil Rights

14  violations on previous occasions. Melinda Benton v Oregon Student Assistance

15  Commission, Oregon Office of Degree Authorization, and Alan Contreras, 421

16  F.3d 901, 2005 U. S. App. Lexis 18301. Similarly in a settled case, Kennedy

17  Western University vs. Oregon (citation not available), the District Court ruled

18  that Alan Contreras was a civil rights violator and that training should be

19  undertaken.

20  11.    The actions of Dr. George Gollin, The Oregon Office of Degree

21  Authorization, Alan Contreras, and Dr. Brad Schwartz violated the constitutional

22  authority of the President and Congress of the United States. Defendant Dr.

23  George Gollin, Alan Contreras and Dr. Brad Schwartz further sent documents and

24  letters to officials of the Republic of Ghana to demonstrate the authority of the

25  State of Illinois and the State of Oregon over the sovereignty of the Republic of

26  Ghana.

27       In essence, they violated the "treaty", "commerce", "letters of marque and

28  reprisal", "Agreement or Compact" clauses of the United States Constitution

without the approval of the Congress of the United States.  Please see Plaintiff's Exhibits A-F.

The United States Constitution Article:   Article 1, Section 8:

> ***Section. 8.*** *"The Congress shall have Power , ............................. ;*
>
> *To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes .............. ;*
>
> *To declare War, grant Letters of Marque and Reprisal, .......;"*

The United States Constitution Article 1, Section 10:

> ***Section. 10.*** *No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; .............*
>
> *No State shall, without the Consent of Congress, ............., enter into any Agreement or Compact with another State, or with a foreign Power, ............"*

The United States Constitution Article 2, Section 2:

> ***Section. 2.***   The President ......................,
>
> *He shall have Power, by and with the Advice and Consent of the Senate, to make Treaties,"*

The United States Constitution Article 3.

> *"**Section. 1.**  The judicial Power of the United States shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.*
>
> ***Section. 2.***  *The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States,*

*and Treaties made, or which shall be made, under their Authority; .............. ;--to Controversies between two or more States;-- between a State and Citizens of another State,--between Citizens of different States,--between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."*

The United States Constitution Article 6. *"Article 6. ......... This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."*

A.    Deprivation of Due Process

In 2003 the University of Illinois told Dr. Gollin to stop posting his list of "Diploma Mills" to avoid potential lawsuits (FAC §§ 179(p), 195(p)). The "diploma mill" list that the University of Illinois ordered Dr. Gollin to remove from the University's website in 2003 was moved to the Oregon's Office of Degree Authorization (ODA) website. The ODA's website states that the authority and definitions of "diploma mills" and "fraudulent schools" in contained on the University of Illinois website.

The ODA's "diploma mill" list, authored by Dr. Gollin, is referenced as the source of unapproved colleges and universities by the states of Texas, Maine, Michigan, Indiana, North Dakota, and other states and foreign countries. Dr. Gollin even references his own "research" on other websites to make it seem as though there are numerous different authorities on the subject of an unaccredited institutions when often Gollin himself is the sole source of derogatory information

on that institution.  The Plaintiff will show this honorable  court how Dr. George Gollin and Alan Contreras perpetuate their misinformation campaign through complex manipulations of information they present on the Internet.

There are criminal penalties in the State of Oregon and other states that refer to Gollin's research, the "diploma mill" list, as if were "legislated law".  It is used by those states for criminal prosecution, and the denial of educational credits or credentials. Collins v. Purdue Univ.,  Will v. Michigan Dept. Of State Police, Wilson v Beebe,  Wisconsin v. Constantineau, and Louisiana State Board of Education of Baker (1964, CA5 La) 339 F2d  911.

In some states such as Oregon and Texas, it is a crime to use diplomas from the schools on the ODA's "diploma mill" list and the graduate or student may face criminal prosecution.  Some states do not recognize Gollin's "diploma mill" list, however, Gollin will persecute both the employer and the employee who is a student or graduate until action is taken by the employer.  On accassions, he persecutes the employer by making false claims of the institution being below standard or accepting credentials from diploma mills or unaccredited colleges or universities.  The use of this list, produced by Dr. Gollin and supported by the hosted and promoted by the Oregon Office of Degree Authorization, improperly sanctions the schools, their students and graduates without due process of the law. Tenney v. Brandhove , 341 U.S. 367 (1951), Collins v. Hardyman 341 U.S. 651 (1951) and Collins v. Purdue Univ., 38 Media L. Rep. 1481. Louisiana State Board of Education of Baker (1964, CA5 La) 339 F2d  911.  Consequently, the schools, their students and graduates are denied

- rights to education, Louisiana State Board of Education of Baker
- right to employment and opportunity, United States Constitution Amendments 1, 4, 5, 6, 7, 8, and 9.
- pursuit of happiness, United States Constitution Preamble.

- Rights to free speech, to assemble, and to petition their government for redress.  United States Constitution  Amendment 1
- privileges to be enjoyed by gaining their Doctor of Medicine degree (paper) are denied, even if they have lawfully passed the United States Medical Licensing Examinations, without probable cause.  Amendment 4.
- due process, Amendment 5, Tenney v Brandhove, Collins v Hardyman, Collins v. Purdue Univ.equal protection, Griffin v. Breckenridge
- right to present witnesses in defense of their persecution, Amendment 6
- right to pursue the courts in common law without a charge specifically levied upon them. Amendment 7.
- They are denied bailment (equal opportunity to pursue their career and employment, earn money).  They are label as criminals instead of doctors and cannot find employment in any state because Dr. George Gollin may 'expose' their employment and then persecute the institution that employs the doctor.  Amendment 8.
- Dr. George Gollin uses his title at the University of Illinois to persecute innocent people and institutions under the color of law and authority, thereby violating their civil rights.  Amendments 9.

The schools on the Oregon Office of Degree Authorization's "diploma mill" list, their students and graduates are subjected to

- Harassment
- Prosecution to felony or misdemeanor charges
- Fines or imprisonment

The "diploma mill" list itself is the product of the personal biases of Dr. Gollin and Alan Contreras.  Without notification, due process of law, the equality of process, verifiable documented evidence, hearings, or investigation, institutions are listed as unaccredited or some other derogatory term.  The staff, owners,

students and graduates are subjected to violations of their human rights and
dignities with less evidence or witnesses than it takes to issue a traffic ticket.
Collins v. Purdue Univ.

## IV. PLAINTIFFS' CLAIMS AGAINST DR. GOLLIN, AS AN EMPLOYEE OF THE UNIVERSITY, ARE SUPPORTED BY THE FOURTEENTH AMENDMENT

All the above violations of rights and priviledges are done without due
process of law or substantiated research by the author, Dr. Gollin, or by the
Oregon Office of Degree Authorization. Without a notification and a hearing, and
without a request for information from the institution, a college or university is
inserted on the "diploma mill" list by Dr. Gollin, and the list is published on the
Internet by the Oregon Office of Degree Authorization. Then, usually after a
complaint from the institution's students, the institution learns that it is on the
Oregon Office of Degree Authorization's "diploma mill" list.

Then officials of the institution have the option to challenge the ODA
"diploma mill" list after paying a substantial fee to the ODA and presenting
substantial new documentation the ODA from various agencies, registries or
ministries in the country of the institution. This process may be at a tremendous
cost and expense to the institution, as it would have been to St. Luke School of
Medicine and its owners. The operation of the ODA is similar to an extortion
attempt by criminals: "pay me (or, do what I say) or I will put you on the
'blacklist'". The use of this list amounts to nothing more than governmental
sponsored extortion. Dr. George Gollin and Alan Contreras ruthlessly intimidate
employers, institutions, and even other states that allow graduates of the
institutions on the "diploma mill" list the equal expression of their civil rights.

The use of the "diploma mill" list, authored by Professor Gollin, published
under the authority of law by the Oregon Office of Degree Authorization, and used

as law in the state of Oregon, Texas, Maine, Michigan, Indiana, North Dakota and other states and countries violates the rights protected by the Bill of Rights, Bill of Rights, of Amendments 1, 4, 5, 6, 7, 8, and 9 of the United States Constitution. Laws passed by the United States Congress in 42 U.S.C.S. § 1983 and Title 18, Part I, Chapter 13, and other statutes, authorizes the jurisdiction of violations of these protected civil rights to be in the federal courts.

Again, contrary to the defendant's statements, although normally the University of Illinois and its employees acting in their employment authority may be entitled to immunity from lawsuits in federal court under the 11th Amendment of the United States Constitution, all violations of civil rights are entitled to be heard in United States Federal Court in accordance to the 14th Amendment of the United States Constitution and various sections of 42 U.S.C.S. § 1983; Title 18, Part I, Chapter 13; Title 18, Part I, Chapter 41; and other United States laws.

The use of Oregon Office of Degree Authorization's "diploma mill" list, authored by Dr. Gollin, is also unconstitutional as it violates the civil rights of citizens and residents of the United States, and it attempts to exercise authority of the State of Oregon over the foreign policy of the United States and over the sovereignty and authority of foreign nations worldwide. See United States Constitution references.

The Defendant is wrong.

*Regents of the University of California,* 519 U.S. 429; *Bair v. Krug (9th* Cir. 1988) 853 F.2d 672, 675 are not cases that involve the intentional violation of the civil rights of a corporation, and 5 dozen human beings. Thus, to the extent Professor Gollin is not being sued in his official capacity as a professor of the University of Illinois. Dr. George Gollin used his title as a professor of the University of Illinois to add credibility and the color of law and authority to his malicious activities. He, therefore is not entitled to immunity under the Eleventh

Amendment *Eaglesmith v. Ward* (9th Cir. 1995) 73 F.3d 857, 859; *Harvis v. Board of Trustees of the University of Illinois* (N.D. Ill 1990) 744 F.Supp. 825, 829-831).

Dr. George Gollin's may have the right to exercise his right to free speech under the 1st amendment of the United States Constitution , however, under the laws of libel, violations of civil rights, conspiracy, and others, he also has to honor his responsibilities that come along with his right to speak and write. Employees of the State are not immune for torts that they commit outside of the scope of their employment. Dr. George Gollin is hired as a Professor of Physics. He has no formal training in education or public administration. Contrary to *Harvis, supra,* 744 F.Supp. at 825*Cannon, supra,* 710 F.2d 357 (extending the 11 th Amendment to employees of the University of Illinois). Will v. Michigan Dept. Of State Police 491 U. S. 58 (1989), Wilson v Beebe (1985, CA6 Mich) 770 F2d 578 and Wisconsin v. Constantineau 400 U.S. 433; 91 S. Ct. 507. Dr. George Gollin's obssession with writing about "diploma mills" is just a hobby just as much as a foundry business manager's interest in ancient philosophy.

(The court cites at n. 3 the Illinois statute that "provides that the Board of Trustees has the authority to pay judgments against its employees.") The Plaintiffs concede that the Board of Trustees may pay judgments against Dr. George Gollin, but that does not bar the employees from personal actions against the employee, or even official acts of its employees in all cases.

The Defendant's claim of immunity is not true especially since Dr. George Gollin writes the "diploma mill" list for the ODA. The ODA is operating under the authority of law of the State of Oregon. Where is the contractual agreement that the University of Illinois is paid for Dr. George Gollin's research that is presented on the ODA's website? *Brennan v. University of Kansas* (10th Cir. 1971) 451 F.2d 1287, 1290-91.

1   Contrary to *Wozniak v. Conry* (Ill. App. Ct., 1997) 679 N.E.2d 1255, 288
2   Ill.App.3d 129, Dr. George Gollin, a professor at the University of Illinois, did not
3   make "tortuous interference with an employment contract," arising out of
4   allegedly false representations made by the University of Illinois professor that the
5   plaintiff alleged were made knowingly or with reckless disregard for their truth.
6   Although Dr. George Gollin is an employee of a public university, this lawsuit suit
7   was not against him in his official capacity, and hence he is not entitled to the
8   protections of sovereign immunity.

9   The defendants counsel writes on appeal, the court looked at whether the
10  relief sought against the professor would "limit the ability of the employee to
11  engage in lawful activity on behalf of the state." *Id.* at 1258. In analyzing this, the
12  court identified the relevant inquiry as being whether the individual defendant
13  "would be acting within the scope of his duties by making truthful statements of
14  the general type alleged." *Id.* at 1258. In *Wozniak,* because the professor's
15  statements (assuming they were true) were clearly within the scope of his duties as
16  head of the department at the University, the lawsuit against him was based on his
17  official capacity, and the action was therefore barred by the Eleventh Amendment.
18  However, Dr. George Gollin's statements were not within the scope of his
19  employment as a "Professor of Physics". His statements and writings about the
20  Plaintiffs did not envolve physics at all. The statements made by the Defendant
21  were about unaccreditation, fraud, deceit, criminal actions, diploma mill operation,
22  fake school, fraudulent diplomas, etc., of St. Luke School of Medicine, its owners,
23  and its students and graduates, well outside the areas of his 'expertise' of particle
24  physics, special relativity, the mechanics of dance.

25  The Plaintiff, and this court, cannot envision that the Defendant, Dr. George
26  Gollin, would get any promotion as a Professor of Physics for publishing articles
27  on "diploma mills". The Plaintiffs allege that the Defendant's statements and
28  writings about the Plaintiffs were blatantly wrong and libelous, and being used

under the color of law and the authority and credibility of University of Illinois, these statements and writings have violated the civil rights of the complaintants, each and every one, severally.

Professor Gollin is being sued as an individual not in his official capacity as an employee of the University. The Plaintiffs' primary charge against Professor Gollin is that he has published information on a university website that plaintiffs insist is fully provided by the University. The University of Illinois was negligent in its "watch dog" role to supervise the content of the information present on its websites; and that Dr. George Gollin used his position as a professor to lend credibility and authority to his libelous writings and postings. If the Defendant University of Illinois chooses to pay the cost of defending or guaranteeing Dr. George Gollin, it is their right to do so, however, this Plaintiff is suing Dr. George Gollin as an individual.

Professors are hired to publish in their field of expertice. George Gollin's training and education in education, public administration or public health is minimal. He has no expertise in education public administration or public health. He could not teach in a high school under the laws of the State of California courses on education, public administration, or public health. The plaintiffs have conceded nothing to the Defendant or the Defendant's counsel regarding 11th Amendment Immunity for Dr. George Gollin.

The University of Illinois' Mission and Vision statements of "teaching, scholarship and service," are absolutely irrelevant to this case. Dr. George Gollin was not employed as a "Professor of Physics" to write unscholarly lambastings about innocent little foreign medical institutions, its owners, and students and graduates.

The plaintiffs clearly and repeatedly identify Professor Gollin in the complaint as a professor at the University of Illinois (FAC, §§ 22, 179), and they allege that the University has both taken "responsibility" for this research, and

assisted Professor Gollin in placing his research on appropriate websites. (FAC, 1
79 , pg. 54.). Taking post-action responsibility is far different from being paid to
perform functions on behalf of the University of Illinois. The questions that are
avoided by the Defendant's counsel in its Motion to dismiss are

1. Is Dr. Geoge Gollin paid to write about 'diploma mills' or is he paid to teach
   and research physics?

2. Are the funds that Dr. George Gollin receives for his "research", lectures,
   postings and blogs on "diploma mills" paid to the University of Illinois or to
   him, or others?

3. Can the University of Illinois prove that the entirety of damages from this
   lawsuit will come out of state funds.

Additionally, the complaint charges that the University continues to
negligently publish and host its professor's research (FAC, §§ 179, pg. 55);
negligently supports the professor by allowing him to use the University letterhead
and insignia in his work (id.); and negligently provides the professor with
computers and servers to carry out his diploma mill research. (Id., §§ 180.)

Taken all together, the plaintiffs' seek to hold Professor Gollin personally
liable for his conduct and actions against the Plaintiffs and seeks to hold the
University of Illinois negligently liable by not monitoring Dr. George Gollin's
actions that violated the civil rights of each and every one of the Plaintiffs.
Violations of civil rights are protected by the 14th amendment and are not barred
from federal court which overides *Bair, supra,* 853 F.2d 675; *Harvis, 744* F.Supp.
829-831. *Wilson v. Beebe.* Thus, the action must not be dismissed. This case
satisfies the rules for subject jurisdiction, see above.

# Plaintiff Can Pursue a Federal Court Action Against Dr. George Gollin as a Matter of Law

The law is clear that a sovereign that has condoned civil rights violations and other tortious conduct of one of its employees (professors and officers of the state) can be sued in the federal court. Title 18, Part I, Chapter 13 § 242, Deprivation of Rights Under Color of Law. "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both" Consequently, this honorable Federal Court has jurisdiction over the subject matter and person of the Dr. George Gollin, the University of Illinois, the State of Oregon, Alan Contreras and the Office of Degree Authorization, so, accordingly, the Plaintiff's case should not be dismissed.

Although, the complaint is long and complex it was necessary to present the case in that manner. Each and every defendant is put on notice of what the claims are, and how they are implicated in the claims and the damages being sought. All Plaintiffs, Dr. Dolphin, SLSOM, its students and graduates are clearly included in the tortious wrong doings of the defendants in this complaint. The torts committed by the Liberian defendants violated the Plaintiff's rights:

- rights to education, Louisiana State Board of Education of Baker (1964, CA5 La) 339 F2d 911
- right to employment and opportunity,
- pursuit of happiness,
- denial of Due Process, Tenney v. Brandhove, Collins v. Hardyman, and Collins v. Purdue Univ.
- Denial of Equal Protection, Griffin v. Breckenridge

- Conspiracy to Commit Civil Rights Violations, United Bhd. of Carpenters & Joiners, Local 610 v. Scott
- Intentional Infliction of Emotional Distress, Collins v. Purdue Univ
- Negligent Infliction of Emotional Distress, Collins v. Purdue Univ
- and rights to assemble, United States Constitution Amendment 1

The State of Oregon, Alan Contreras, and the Office of Degree Authorization, in its actual support of George Gollin furthered the Liberians extortion and bribery attempt of Dr. Jerroll Dolphin and SLSOM, and therefore violated the very same Plaintiffs civil rights. Therefore, the proper jurisdiction is in the federal court, according to the 14th amendment and the above-cited United States Statutes.

## V. PLAINTIFFS' COMPLAINT SATISFIES PLEADING REQUIREMENTS

The defendant is wrong. The Plaintiff has followed the rules. The Plaintiff's lack of experience or lack of knowledge of law has compelled the Plaintiff to write more detail into his complaint.

The Federal Rules do not require the claimant to detail the facts upon which he bases his claim. They only require a "short and plain statement of the claim" that will give fair notice to the Defendants of the claim and the grounds on which it rests. The Forms in the rules are an example. Any further facts needed to more narrowly define the scope of the claim and the possible defenses can be obtained through pretrial discovery. Rule 8(f) states that all pleadings shall be "construed as to do substantial justice." Thus, their purpose is to facilitate a proper decision on the merits, not to become a deceptive trap for the less skilled litigant.

I. Multiple Claims

A. Rule 8(e)(2) allows a party to set forth two or more statements of a claim in the alternative, either in one or more separate counts or defenses.

    1.   assists a Plaintiff who may be genuinely uncertain about what substantive law will apply, and what he will have to prove.

    2.   the pleader can take any version of the claim.

B. Definition of a Claim

    1.   analogous to "cause of action"

    2.   can be defined either by a single legal theory or a single natural grouping of events.

        a.   Rule 18(a) minimizes the distinction by permitting a Plaintiff to join all of his claims either independently or in the alternative.

C. Consistency

    1.   Rule 8(e)(2) allows a party to claim as many separate claims as he has regardless of consistency.

    2.   Rule 11 requires that the signature constitute a certification that there is good ground to support it and that it is not interposed for improper purpose.

# VI. CONCLUSION

The defendant is wrong. The Dr. George Gollin is subject to this court's jurisdiction under the mandate of the Fourteenth Amendment of the United States Constitution.

     The Plaintiff seeks injunctive, declaratory, equitable relief and other relief as available to this honorable court as stated in the complaint againt the defendant. The Plaintiff request the court's permission to add causes of action as new evidence mounts against the Defendant Dr. George Gollin.

1        The complaint does present subject matter jurisdiction as well as diversity

2  jurisdiction and should not be dismissed.

3        The plaintiff should not be sanctioned because he is litigating against the

4  defendant in good faith and intentions.

5        For the reasons stated above, this Court should deny the motion to dismiss.

6  In the alternative, if the Court does dismiss Plaintiff's complaint, Plaintiff requests

7  that the Court grant him leave to amend the complaint.

8

9  **Respectfully Submitted**

10

11

12

13              **DATED: July 14, 2010**

14

15

16              **Sign:** _____

17              **JERROLL DOLPHIN**

18              **Plaintiff in pro per**

19

20

21

22

23

24

25

26

27

28

EXHIBIT   A

"A G6"

I

## An Analysis of the Practices and Policies of The St. Luke School of Medicine in Recent Years

George Gollin[1]
Professor of Physics
University of Illinois at Urbana-Champaign

November 5, 2009



Introduction .................................................................................... 4

Immediate disqualifications ............................................................. 5

Past practices as predictors of future conduct .................................. 6

The international stake in quality assurance and postsecondary oversight ..................... 6

The St. Luke School of Medicine's approach to Ghana gives cause for concern ......... 7

The current presentation of the St. Luke School of Medicine ........................... 8

An overview of the current St. Luke School of Medicine ............................. 8

Jerroll Dolphin and Susana Dolphin are SLSOM's California-based principals ........... 9

The Dolphins' request for Ghanaian accreditation of SLSOM and their history of claiming SLSOM is accredited .................................................. 11

Jerroll Dolphin, MD is unlicensed ................................................ 12

Jerroll Dolphin is the primary provider of curriculum and training ..................... 12

The ongoing award of MD degrees to previously matriculated SLSOM students? ..... 15

SLSOM is a California entity, operating in the jurisdiction of the State of California 15

SLSOM is not registered as a California corporation ................................ 16

The St. Luke Medical Foundation is associated with SLSOM and the Dolphins......... 17

The internet domain registration for SLSOM specifies a Ghanaian postal address ..... 19

The physical location of SLSOM in Ghana ....................................... 20

---

[1] G-gollin@illinois.edu

Last saved 10/31/2009 9:31 AM

2

Summary: SLSOM now..................................................................................................... 21

Vital International Foundation and its connection to SLSOM .......................................... 22

An overview of the Vital International Foundation ......................................................... 22

Susana Mitchell Dolphin heads VIF and Jerroll Dolphin runs its training programs... 23

Medical/clinical/instructional tourism run by VIF ......................................................... 24

Corporate and nonprofit registrations of VIF in California .......................................... 25

The Vital International Foundation shares infrastructure and personnel with SLSOM 26

VIF's California and Ghana addresses .......................................................................... 27

Is there a VIF – SLSOM – Earthcare International connection? .................................. 29

Other VIF personnel ...................................................................................................... 31

Summary: the Vital International Foundation ............................................................... 31

The St. Luke School of Medicine, from 2000 to the present .......................................... 32

The St. Luke School of Medicine appears to have been created in 1999 or 2000 ........ 32

The troubling rosters of SLSOM faculty and administration ...................................... 33

June 2001 SLSOM faculty............................................................................................. 33

More about Professor Taliaferro Harris, MD: connection to Jerroll Dolphin .......... 34

More about Professor Taliaferro Harris, MD: practicing medicine without a license
in Ghana in collaboration with Jerroll Dolphin ....................................................... 36

More about Professor Taliaferro Harris, MD: conviction for felony medical fraud in
2009 for his activities in 2005 and earlier................................................................. 39

June 2002 SLSOM faculty............................................................................................. 40

Professor Egbert Phipps runs unsavory degree providers widely described as
diploma mills .............................................................................................................. 40

Steve Arnett is unlicensed and has significant involvement with other medical
diploma mills .............................................................................................................. 40

Early registrations of the SLSOM internet domain used a California postal address .. 41

Internet domain registration history.............................................................................. 42

5

The changing SLSOM faculty and administration ........................................................ 42

Glory Dolphin was SLSOM "CEO" and "Chief Business Development Officer" in 2001.......................................................................................................................... 42

Self-presentation: brochure with Dogliotti school photo (mention author property); course catalog..................................................................................................................... 44

Glory Dolphin is named in a 2001 SLSOM brochure's "properties" as the document's author....................................................................................................................... 44

Physical locations associated with SLSOM infrastructure ............................................ 46

Inglewood, California ................................................................................................... 46

SLSOM identifies a Ghanaian address for its finance and admissions officers ....... 46

David Karam's El Paso, Texas address received surface mail for SLSOM in 2006 47

Outcomes in medical education: the SLSOM classes of 2002 .......................................... 48

The standard for comparison: U.S. medical education ................................................ 48

The classes ................................................................................................................... 49

David W. Karam ............................................................................................................ 49

Karam operates the "Institute for Adaptogenic Science" .......................................... 49

David Karam claims an SLSOM MD and also a LaSalle University diploma mill degree........................................................................................................................... 50

Personnel of the St. Luke School of Medicine faculty and administration ...................... 51

"Students" who immediately assumed leadership roles in SLSOM .............................. 51

Dolphin and Harris appear to arrange medical tours of western Africa ...................... 51

Disturbing connections to other organizations ................................................................ 53

Southern Graduate Institute ........................................................................................ 53

University of Science Arts and Technology Medical College of London..................... 53

Lady Malina Memorial Medical College....................................................................... 53

The St. Luke School of Medicine in November 2009, and before ................................. 53

St. Luke School of Medicine students .......................................................................... 59

4

Larry Lammers ........................................................................................................ 59

Connected organizations ....................................................................................... 59

St. Luke Medical Foundation ................................................................................ 59

Project Africa 2000 ............................................................................................... 61

The Economic Development Fund Foundation ..................................................... 62

Edwin Muniz .......................................................................................................... 63

Herbert W. Winstead ............................................................................................. 65

Early version of SLSOM on pacbell.net ............................................................... 68

Medical tourism ..................................................................................................... 68

## Introduction

The insufficient capacity of postsecondary institutions in the developing world to place students in local facilities, in combination with the economic advantage afforded to those who obtain university degrees, generates an attractive market for foreign degree providers.[2] Most of these foreign schools create legitimate programs featuring instruction by qualified faculty who teach college-level material to engaged students. But government oversight of universities that are international in extent is a challenging task, even when all the stakeholders—students, the university faculty and administration, and the governmental oversight agency—share the common goal of providing students with a quality education. When one of the participants is not acting in good faith, it can be fiercely difficult to detect and suppress the activity. Sometimes there is a dishonest degree provider. Sometimes an accreditor lacks the skill to detect misrepresentations.[3] Sometimes there are structural problems that prevent an agency from responding, even when it is aware that it appears to bestow legitimacy on an entirely fraudulent entity posing as a university.[4] Quality assurance is not a simple matter.

[2] This subject has been discussed extensively in the higher education literature. See, for example, "The Private Nature of Cross-Border Higher Education," Jason E. Lane and Kevin Kinser, *International Higher Education*, 53, Fall 2008.

[3] For example, "Accreditation of College in Former Soviet Republic Raises Questions of Oversight," Burton Bollag, *Chronicle of Higher Education*, September 8, 2006. See also "When Criminals Control the Ministry of Education," George D. Gollin, *International Higher Education*, 53, Fall 2008.

[4] "Wolves in Chancellors' Clothing," George D. Gollin, *International Higher Education*, 55, Spring 2009.

5

*Immediate disqualifications*

Central to any effort at suppression of bogus schools is the accumulation of clear, irrefutable evidence documenting the unsavory practices and willful misrepresentations of an illegitimate degree provider. Some of the attributes that are warning flags are discussed in the best practices document *Toward Effective Practice: Discouraging Degree Mills in Higher Education* released by the Council for Higher Education Accreditation (CHEA) and the United Nations Educational, Scientific and Cultural Organization (UNESCO).[5]

The list of findings that should immediately disqualify a degree provider from receiving an operating license is long. A single determination of any of the following is likely to provide adequate grounds for immediate rejection of a school's application for licensure:

- The school's catalog misrepresents its physical facilities, either through inaccurate descriptions in text, or deliberately misleading photographs of buildings and grounds that could reasonably be thought to represent a campus, but do not;

- A significant number of the school's instructors or administrators do not hold the academic credentials appropriate for successful discharge of their responsibilities, or claim bogus credentials from unrecognized degree providers;

- The school operates, or has a history of operating, without legal authority from the appropriate government agency in its home jurisdiction;

- In the case of the licensed professions, the school's graduates fail to obtain licenses, or fail to thrive as practitioners, with unusually large probability;

- A significant portion of the school's graduates use their credentials for commercially deceptive or criminally fraudulent activities, indicating that the school is complicit in their deceptions;

- The school awards academic credit without requiring demonstration of mastery of the subject matter for which the credits are awarded;

- The school's articulation agreements with other schools reveal that the school awards transfer credits regardless of the level of mastery of the subject matter associated with the transferred credits;

- The school masks its internet domain registration information behind a privacy service, hiding the identities of its administrative officers;

---

[5] *Toward Effective Practice: Discouraging Degree Mills in Higher Education.* Council for Higher Education Accreditation and the United Nations Educational, Scientific and Cultural Organization, 2009. http://www.chea.org/pdf/degree_mills_effective_practice.pdf.

6

- The school will not reveal the names of its instructors or the identities of its senior administrators;
- The school shares a significant number of instructors or administrators with other schools known to hold any of the attributes listed above.

## Past practices as predictors of future conduct

Recent history shows that the past practices of the principals of a degree provider can be good predictors of how they will operate a new school. The owners of the "St. Regis group" of diploma mills repeatedly claimed they were revamping their practices and policies. In spite of this, they continued to sell degrees to unqualified customers without providing meaningful instruction or portfolio evaluation. Over time the owners of St. Regis ran through 66 differently named "universities" of their own invention, only stopping when their computers and supplies used in fabricating diplomas were seized by U.S. federal authorities.[5] James Kirk, the owner of the Louisiana-based "LaSalle University" diploma mill was imprisoned for his LaSalle business. Within weeks of the start of his prison term, Kirk and his wife had launched a new diploma mill named "Edison University" whose promotional material was mailed to customers from the city in which Kirk was incarcerated.[7]

## The international stake in quality assurance and postsecondary oversight

It is becoming increasingly common for academic credentials earned in one country to be used in seeking employment in another country. In the European Union the Bologna Accords are intended to facilitate this by easing the transfer of academic credentials across national boundaries.[8] In the case of foreign medical credentials to be used inside the United States, one avenue for cross-border acceptance is provided by the Foundation for Advancement of International Medical Education and Research:

> The Foundation for Advancement of International Medical Education and Research maintains the barrier between the United States Medical Licensing Exam and students from non-US medical schools. Only graduates from schools in the foundation's International Medical Education Directory can take the exam. The directory is compiled from information provided by national ministries of health.[9]

But there is a fundamental structural problem in the FAIMER wall at the border of the United States, with examples of its breach discussed in the higher education literature:

---

[5] See the large volume of material associated with *United States of Americ.. vs. Dixie Ellen Randock et al.*, some of which is available online at http://www.lrep.uiuc.edu/homeig-gollin/pigeons/Esru_usag.

[7] *Degree Mills: the Billion Dollar Industry That Has Sold Over a Million Fake Diplomas*, Allen Ezell and John Bear. Prometheus Books, Amherst, New York, 2005, page 52.

[8] A great deal of material discussing the Bologna Accords can be found in articles carried by *International Higher Education*, available online at http://www.bc.edu/bc_org/avp/soe/cihe/newsletter/.

[9] Op. cit., "Wolves in Chancellors' Clothing."

Last saved 10/31/2009 9:31 AM

EXHIBIT B

"AGZ"

In case of reply the
number and date of this
letter should be quoted

My Ref. No. **NAB/A/02/PTE/114**
Tel. No.: 021 – 518630/518570/286013–4
Fax No.: 021 – 518629
E-mail: nabsec@nab.gov.gh
Website: www.nab.gov.gh



National Accreditation Board
Ministry of Education
P. O. Box CT 3256
Cantonments Accra

Republic of Ghana

December 11, 2009

THE HON. ATTORNEY-GENERAL &
MINISTER FOR JUSTICE
ATTORNEY-GENERAL'S DEPARTMENT
ACCRA

Dear Madam,

## RE: IN THE MATTER OF THE REPUBLIC VS. NATIONAL ACCREDITATION BOARD & ANOR EXPARTE: ST LUKE SCHOOL OF MEDICINE

We forward herewith, copies of letters we have received from the Dean of the University of Illinois College of Medicine, the Administrator of the Oregon Student Assistance Commission, Office of Degree Authorisation and a covering letter to the latter from the Ministry of Foreign Affairs and Regional Integration with regard to the pending case.

We would be grateful if you consider these letters in your further applications and submissions to the Court.

Yours faithfully,

RICHARD K. ADJEI
SENIOR ASSISTANT SECRETARY
FOR: EXECUTIVE SECRETARY