EXHIBIT C

In Case of reply the
number and date of this
letter should be quoted

TEL: 664951-3/664970/663750/
676765/664650/675027
FAX: 665363/667823

My Ref. No. **SCR. PO/USA**

Your Ref. No.



REPUBLIC OF GHANA

MINISTRY OF FOREIGN AFFAIRS.
AND REGIONAL INTEGRATION,
P. O. BOX M 53,
ACCRA. GHANA.

DATE **20TH NOVEMBER, 2009.**

## CAUTION AGAINST GRANTING OF APPROVAL/ACCREDITATION TO ST. LUKE SCHOOL OF MEDICINE TO ISSUE MEDICAL DEGRESS IN GHANA

I have been directed to forward, herewith, for your attention and urgent action, letter reference No. WA/INF/4 dated 17th November, 2009 and its attachment received from our Mission in Washington DC.

2. The Oregon Student Assistance Commission Office of Degree Authorization is by the letter cautioning the National Accreditation Board, (NAB) of Ghana against granting approval to St. Luke "School of Medicine", to enable the latter to issue medical degrees to Ghanaians due to the fact that the activities the school do not confirm with foreign degrees accreditation practices of the U.S.A.

3. It would be most appreciated if the National Accreditation Board (NAB) could take urgent action to avert possible sanction against Ghanaian educational institutions.

*For:*  MINISTER FOR FOREIGN AFFAIRS
& REGIONAL INTEGRATION
**GLORIA POKU (MRS)**
DEPUTY DIRECTOR/AMERICAS BUREAU

**MR. KWAME DATTEY,**
**NATIONAL ACCREDITATION BOARD (NAB),**
**NO. 6 BAMAKO STREET, EAST LEGON,**
**P. O. BOX CT 3256,**
**ACCRA.**

Encl.

EXHIBIT D



18-11-09 17:38    Pg: 2

Oregon Student Assistance Commission
Office of Degree Authorization
1500 Valley River Drive, Suite 100, Eugene, OR 97401
(541) 687-7452; Fax (541) 687-7419
www.osac.state.or.us/ODA

Theodore R. Kulongoski, Governor

October 30, 2009

Mr. Kwame Dattey
National Accreditation Board (NAB)
No. 6 Bamako Street, East Legon
P. O. Box CT 3256
Accra
GHANA



RECEIVED
NOV 1 6 2009
FILE No.
REG. No.
WASHINGTON D.C.

Dear Mr. Dattey:

It has come to our attention that your agency may be about to issue an approval or accreditation to the notorious entity that does business under the name St. Luke "School of Medicine" or the like. We are concerned that an entity with the unsavory history of the St. Luke business might be allowed to issue so-called "medical degrees" that could be used by unscrupulous people around the world to practice medicine on unsuspecting patients.

We are concerned about what such a decision would mean to the reputation of Ghanaian colleges around the world. Oregon banned the use of St. Luke degrees several years ago, and we would have to ban the use of all Ghanaian degrees if St. Luke is approved. The reason for this is that Oregon law requires us to base acceptance of foreign degrees on the accreditation practices of the nation in question.

If the government of Ghana authorizes St. Luke to issue "medical degrees" we will have no choice but to conclude that Ghana does not have a meaningful postsecondary approval process, in which case degrees issued by the 23 colleges now operating in Ghana would no longer be usable in Oregon.

Oregon is a small state far from Ghana and it may be that a ban on all degrees issued in Ghana would not affect your country very much. However, we urge you to consider the consequences of other states and nations making similar decisions if you issue an approval to grant medical degrees to the entity called St. Luke.

It is possible that decision-makers in Ghana simply did not have all of the information about St. Luke's past practices and its desperate search for a government willing to allow it to sell degrees from a site outside the United States, where it began operating illegally in California some years ago. St. Luke is not and has never been a legitimate provider of medical degrees.

Sincerely,

Alan Contreras
Administrator

cc: Mr. Adolphus K. Arthur, Deputy Chief of Mission, Embassy of Ghana, Washington, D.C.
Alumnus Cook, Desk Officer for Ghana, U.S. Department of State, Washington, D.C.
Dr. E. Stephen Hunt, USNEI, International Affairs, U.S. Department of Education, Washington D.C.
Mary Scott, Public Affairs Officer, Embassy of the United States, Accra, Ghana

EXHIBIT E



**Oregon**
Theodore R. Kulongoski, Governor

**Oregon Student Assistance Commission**
**Office of Degree Authorization**
1500 Valley River Drive, Suite 100, Eugene, OR 97401
(541) 687-7452; Fax: (541) 687-7419
www.osac.state.or.us/ODA

October 30, 2009

Mr. Kwame Dattey
National Accreditation Board (NAB)
No. 6 Bamako Street, East Legon
P. O. Box CT 3256
Accra
GHANA

Dear Mr. Dattey:

It has come to our attention that your agency may be about to issue an approval or accreditation to the notorious entity that does business under the name St. Luke "School of Medicine" or the like. We are concerned that an entity with the unsavory history of the St. Luke business might be allowed to issue so-called "medical degrees" that could be used by unscrupulous people around the world to practice medicine on unsuspecting patients.

We are concerned about what such a decision would mean to the reputation of Ghanaian colleges around the world. Oregon banned the use of St. Luke degrees several years ago, and we would have to ban the use of all Ghanaian degrees if St. Luke is approved. The reason for this is that Oregon law requires us to base acceptance of foreign degrees on the accreditation practices of the nation in question.

If the government of Ghana authorizes St. Luke to issue "medical degrees" we will have no choice but to conclude that Ghana does not have a meaningful postsecondary approval process, in which case degrees issued by the 23 colleges now operating in Ghana would no longer be usable in Oregon.

Oregon is a small state far from Ghana and it may be that a ban on all degrees issued in Ghana would not affect your country very much. However, we urge you to consider the consequences of other states and nations making similar decisions if you issue an approval to grant medical degrees to the entity called St. Luke.

It is possible that decision-makers in Ghana simply did not have all of the information about St. Luke's past practices and its desperate search for a government willing to allow it to sell degrees from a site outside the United States, where it began operating illegally in California some years ago. St. Luke is not and has never been a legitimate provider of medical degrees.

Sincerely,

Alan Contreras
Administrator

cc: Mr. Adolpina K. Arthur, Deputy Chief of Mission, Embassy of Ghana, Washington, D.C.
Akunna Cook, Desk Officer for Ghana, U.S. Department of State, Washington, D.C.
Dr. E. Stephen Hunt, USNEI, International Affairs, U.S. Department of Education, Washington D.C.
Mary Scholl, Public Affairs Officer, Embassy of the United States, Accra, Ghana

EXHIBIT F

# UNIVERSITY OF ILLINOIS COLLEGE OF MEDICINE

Office of the Regional Dean
at Urbana-Champaign

190 Medical Sciences Building, MC-714
506 South Mathews Avenue
Urbana, IL 61801-3618

November 16, 2009

Mr. Kwame Dattey
National Accreditation Board (NAB)
No. 6 Bamako Street, East Legon
P.O. Box CT 3256
Accra
GHANA

Dear Mr. Dattey:

As the Dean of a medical school that recruits from the most accomplished graduates of non-U.S. medical schools into its residency, I have concerns about the impending accreditation decision for what purports to be the St. Luke School of Medicine. I have had the opportunity to review data in the public domain about this alleged school, and about individuals who claimed to have earned a medical degree from it. There is no evidence whatsoever that this alleged school really exists, or that there are adequate facilities for the most rudimentary components of a medical curriculum. In fact, all evidence says that only a small empty unimproved room is at the location advertised for the St. Luke's School of Medicine.

Understanding that high quality is not absolutely dependent upon physical structures, I took the opportunity to review the publicly available records of individuals who claim to have graduated from this alleged school for evidence of a bona fide education. There are records of twelve individuals who claim to have degrees from St. Luke's. None of these people are licensed to practice medicine, and at least two have been incarcerated for practicing medicine without a license.

I bring this to your attention because accreditation or approval of the alleged St. Luke School of Medicine by officials in Ghana would make medical schools in the United States worry about the quality of any medical school in Ghana. As a result, such approval of St. Luke would put the graduates of legitimate medical schools in your country at a distinct disadvantage when attempting to gain advanced medical training.

Hence, by denying accreditation to St. Luke School of Medicine you will protect the reputations of legitimate medical school graduates from Ghana. Moreover, by denying St. Luke any hint of legitimacy you will protect innocent patients from abuse at the hands of potential pseudo-graduates.

Telephone: (217) 333-5465 / Fax: (217) 333-8868 / Email: comrc@mod.uiuc.edu / www.med.uiuc.edu
UIC • Chicago • Peoria • Rockford • Urbana-Champaign

The entity that passes itself off as the St. Luke School of Medicine has never been a legitimate educator of medical practitioners, and I urge you to make the owners of this entity own up to their dishonesty.

Sincerely,

Brad S. Schwartz, M.D.
Dean
Professor of Biochemistry and Medicine

1  Jerroll Dolphin _____ (Full Name)

2  P.O. Box 941009 _____ (Address Line 1)

3  Los Angeles CA 90064 (Address Line 2)

4  310-384-4483 _____ (Phone Number)

5  _____ (Fax Number)

6  jdolphin@stluke.edu (Email)

7  Plaintiff _____ in Pro Per
   (indicate Plaintiff or Defendant)

8

9

## United States District Court

10

## Central District of California

11

12

13  St. Luke School of Medicine, et al,  )  Case No.: 10-CV-1791 RGK (SHx)

14         Plaintiff,                    )

15      vs.                              )  **PROOF OF SERVICE BY MAIL**

16  Republic of Liberia, et al,          )

17  _____                              )

18  _____                              )

19  _____                              )

20  _____,                             )

21         Defendant(s).                 )

22

23  I, Jerroll Dolphin _____, declare as follows:
       (name of person serving documents)

24

25  My address is P.O. Box 941009 _____

26  Los Angeles CA 90064 _____, which is located in

27  the county where the mailing described below took place.

28

1

1    On _14 July 2010_, I served the foregoing document(s) described as:
     <sub>(date of mailing)</sub>

2

3    _Plaintiff's Opposition to Defendants State of Oregon and_
     <sub>(list the names of the documents you are mailing)</sub>

4    _Office of Degree Authorization)_

5    _Plaintiff's Opposition to Memorandum of Points & Authorities_

6

7    _in Support of Motion by Dr. George Gollin_

8

9

10

11

12   on all interested parties in this action by placing a true and correct copy thereof in a

13   sealed envelope, with first-class postage prepaid thereon, and deposited said

14   envelope in the United States mail at or in _Los Angeles CA_              ,
                                                    <sub>(place of mailing)</sub>

15

16   addressed to:    _please see service list_

17   _____        _____
                     (name)                                  (name)

18   _____        _____
                     (address)                               (address)

19   _____        _____
                     (address)                               (address)

20

21       I declare under penalty of perjury under the laws of the states of the United

22

23   States that the foregoing is true and correct.

24   Executed on _14 July 2010_   at _Los Angeles CA_              .
                  <sub>(date)</sub>          <sub>(place of signing)</sub>

25

26                          _____
                            (sign)

27

28                          _Terrell Dolphin_
                            (print name)


2

Service List

Nicole C. Rivas
Alston & Bird LLP
333 South Hope Street 16th Fl
Los Angeles, CA 90071

James Rogers
125 S. Highway 101 Suite 101
Solana Beach, CA 92075

Seth T. Karpinski
Oregon Dept of Justice
1162 Court Street NE
Salem, OR 97301

JERROLL DOLPHIN, M.D.
1 | P.O. BOX 941009
Los Angeles, CA 90064
2 | 310-384-4483
3 | IN PRO PER

4

5         UNITED STATES DISTRICT COURT

6        CENTRAL DISTRICT OF CALIFORNIA

7

8 | ST. LUKE SCHOOL OF     Case No.: 10-CV-1791 RGK (SHx)

9 | MEDICINE, et al,     PLAINTIFF'S OPPOSITION TO
DEFENDANTS STATE OF OREGON AND
OREGON OFFICE OF DEGREE
10 |     Plaintiff,    AUTHORIZATION PURSUANT TO F.R.C.P.
12(B)(2)&(6)
11 |   vs.

12 | REPUBLIC OF LIBERIA,

13 | et al,        DATE: JULY 26, 2010
TIME: 9:00 AM
CRT:  850
14 |     Defendant   JUDGE: Honorable R. Gary Klausner

15

16 | Plaintiff'S OPPOSITION

17

18

19  

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

Louisiana State Board of Education of Baker (denial of education)
(1964, CA5 La) 339 F2d 911

Gagne v Maher
(1979, CA2 Conn) 594 F2d 336, affd (1980) 448 US 122, 65 L Ed 2d 653, 100 S Ct 2570

Wilson v Beebe
(1985, CA6 Mich) 770 F2d 578

Will v. Michigan Dept. Of State Police
491 U. S. 58 (1989)

Griffin v. Breckenridge
403 U.S. 88 (1971)

Means v. Wilson
522 F. 2d 833

Collins v. Hardyman
341 U.S. 651 (1951)

Tenney v. Brandhove
341 U.S. 367 (1951)

United Bhd. of Carpenters & Joiners, Local 610 v. Scott
463 U.S. 825; 103 S. Ct. 3352; 77 L. Ed. 2D 1049

Wisconsin v. Constantineau
400 U.S. 433; 91 S. Ct. 507

Collins v. Purdue Univ., 38 Media L. Rep. 1481  (Internet Defamation)
(1964, CA5 La) 339 F2d 911

Melinda Benton v Oregon Student Assistance Commission, Oregon Office of
    Degree Authorization, and Alan Contreras
421 F.3d 901, 2005 U. S. App. Lexis 18301

# RULES

Federal Rules of Civil Procedure     Rule 8(a)(2)
Federal Rules of Civil Procedure     Rule 8(d)(1)
Federal Rules of Civil Procedure     Rule 8(e)(2)
Federal Rules of Civil Procedure     Rule 11
Federal Rules of Civil Procedure     Rule 12(b)(6)

# LOCAL RULES

Local Rule 23-2

# CONSTITUTIONAL PROVISIONS

U.S. Constitution Articles     1, 2, 3, and 6
U.S. Constitution Amendments     1, 3,  4, 5,  6, 7, 8, 9, 10, 11 and 14

# UNITED STATES CODES

42 U.S.C.S. § 1983
Title 18, Part I, Chapter 13
Title 18, Part I, Chapter 41

**PLAINTIFF'S EXHIBITS**

Exhibit A    Pages 1-6 of the 91-page Document Sent By Dr. George Gollin,

Professor of Physics, University of Illinois, to the National

Accreditation Board of the Republic of Ghana

Exhibit B    Letter from National Accreditation Board of the Republic of Ghana to

the Attorney-General of the Republic of Ghana

Exhibit C    Letter from Ghanaian Ministry of Foreign Affairs to Kwame Dattey,

Ghana National Accreditation Board

Exhibit D    Letter from Alan Contreras, Oregon Office of Degree Authorization,

to Kwame Dattey of the National Accreditation Board of Republic of

Ghana (Fax Version)

Exhibit E    Letter from Alan Contreras, Oregon Office of Degree Authorization,

to Kwame Dattey of the National Accreditation Board of Republic of

Ghana (Regular Mail)

Exhibit F    Letter from Dr. Brad Schwartz, Dean of the University of Illinois

College of Medicine, to Kwame Dattey of the  National Accreditation

Board of the Republic of Ghana

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiffs' Complaint (hereinafter "complaint") states more than ten causes of action against a dozen different defendants, ranging from the government of Liberia and its current or former officials, to the State of Oregon Office of Degree Authorization.

The defendant is responsible for the tortious acts of its employees. Defendant's motion in its entirety, including its request for sanctions, should be denied.

### Defendant's Motion to Dismiss Standard Should be Denied

A.    Plaintiff can prove facts in accordance to Federal Rules of Civil Procedure Rule 12(b)(6) that supports their claims of conspiracy to commit civil rights violations and other claims:

    1.    Information on the defendant's websites that demonstrate the collaboration of defendants Professor George Gollin, "Professor of Physics, University of Illinois at Champaign-Urbana" and the Oregon Office of Degree Authorization against St. Luke School of Medicine (SLSOM) since 2003.

    2.    Documents and letters and letters sent to the Ghanaian officials in the United States and Ghana, that were submitted to Ghanaian Court of Appeals in December 2009, in an effort to block the accreditation of St. Luke School of Medicine's campus in Ghana that SLSOM gained through adjudication.  Those documents and letters sent to the Ghanaian officials by the defendants in 2009 clearly demonstrate Internet Stalking. Trade Libel, Interference with Prospective Economic Advantage, Loss of Consortium, Denial of Due Process,

1    Denial of Equal Opportunity Under the Color of Law, Malfeasance,
2    Threatening Foreign Officials, Harassment by Government Officials,
3    and other violations of the Plaintiffs' civil rights protected by the
4    United States Constitution, and further defined by Congress in 42
5    U.S.C.S. § 1983 and Title 18, Part I, Chapter 13 and other statutes.

6   4.    Alan Contreras of the Oregon Office of Degree Authorization and
7         Professor George Gollin, "Professor of Physics, University of Illinois
8         at Champaign-Urbana" despite knowing that SLSOM had orders from
9         the Liberian Supreme Court to restore its accreditation conspired and
10        continued to defame SLSOM since 2006 on the Oregon Office of
11        Degree Authorization's website and elsewhere.

12  B.  Plaintiffs' claims against the State Defendants are not barred by the Eleventh
13  Amendment.  Violations of Plaintiff's civil rights are protected through the 14th
14  amendment and further defined by Congress in 42 U.S.C.S. § 1983 and Title 18,
15  Part I, Chapter 13 and other statutes.

16  C.  This court has personal jurisdiction over the State Defendants.

17  1.   Purposeful Availment.  The Defendant's actions satisfy the three
18        elements of the "effects test".  If the defendant
19        (1)   "committed an intentional act".  The Defendant deliberately
20              posted libelous information on its ODA website since 2003
21              against SLSOM that caused harm to the reputation, career, and
22              business opportunity of Dr. Jerroll Dolphin, the principle owner
23              of St. Luke School of Medicine.  Again in 2009 the Defendant's
24              representative, Alan Contreras, and co-conspirators Dr. George
25              Gollin and Dr. Brad Schwartz (both of the University of Illinois)
26              send libelous, malicious and threatening documentations and
27              letters to officials of the Republic of Ghana, that also to damaged

28

the reputation, career, and business opportunity of Dr. Jerroll
Dolphin, the principle owner of St. Luke School of Medicine.

(2)   "that was expressly aimed at the forum state".  The Defendant
did target the Plaintiff SLSOM and Dr. Jerroll Dolphin in the
State of California in their libel and conspiracy.  The
Defendant's website at the time of the writing of this opposition
states: " Saint Luke School of Medicine, **California**, Ghana,
Liberia, Disowned by Liberian government in 2005."

(3)   "and, caused harm, the brunt of which is suffered and which the
defendant knows is likely to have been suffered in the forum
state."  The Defendant knew at all times that the principle owner
of SLSOM resided the State of California and that Dr. Dolphin
would suffer in his home state.

2.   <u>There Must be Forum-Related Activity by the Defendant.</u>

The defendant Office of Degree Authorization's website is more than
a passive website that makes information available to those
interested.  It is used a the source for criminal prosecutions in
Oregon, Texas and other states against those students or graduates of
the "unaccredited" colleges or universities on the "diploma mill" list.
Without due process or legislative approval those schools on the list
are referred to as "fraudulent", "fake", and other derogatory
statements and phrases on this and numerous other websites on the
Internet.  Students and graduates of those institutions on the list are
subject to persecution and derogations with less evidence than what is
required to give a traffic ticket.  The Plaintiff will also demonstrate to
this court that the defendant does not apply standards equally and
fairly, and that the defendant demonstrates personal racial, cultural
and regional bias in its "diploma mill" list.

D.      The Defendant has previous judgments and orders in Federal Court for civil rights violations and the Defendant continues to violate the civil rights of citizens of the United States, alien residents, and others.

E.      The use of Oregon Office of Degree Authorization's "diploma mill" list is unconstitutional as it violates the civil rights of citizens  and residents of the United States, and it attempts to exercise authority of the State of Oregon over the foreign policy of the United States and over the sovereignty and authority of foreign nations worldwide.

## II. FACTUAL BACKGROUND

SLSOM was an accredited medical school in the Republic of Liberia since 2001  Furthermore, it obtained its "charter" in the Republic of Liberia, FAC Exhibit 31, Legislative Enactment, signed by President Charles Taylor in August 2003, FAC Exhibit 4, President Signed SLSOM Charter Act in August 2003. A "charter" is a national law in Liberia that is passed in the House and Senate of the Republic of Liberia, and signed by its President.

The St. Luke's Medical Program (SLMP), the registered owners of St. Luke School of Medicine, was a documented foreign corporation in the State of California, doing business in California as "St. Luke School of Medicine".  Dr. Jerroll Dolphin is the majority owner of SLMP.

SLSOM operated without government disruption until September 2004. Until that time, SLSOM was also listed as an accredited medical school on the website of the Embassy of Liberia, Washington D.C.  In September 2004, SLSOM was attacked by officials of the National Transitional Legislative Assembly (NTLA) who were members of a rebel group LURD, an opposition group that fought against the government of Charles Taylor.  The NTLA was a temporary legislature that existed from 2004-2006 in Liberia.  The NTLA was not allowed to pass laws, and the assemblymen of the NTLA were also temporary.  The Liberian

Embassy in Washington DC, posted the 'Disclaimer', FAC Exhibit 6 on its website in September 2004 (it has since been removed in 2008).

The Educational Commission for Foreign Medical Graduates (ECFMG), through controversy on the Internet, removed SLSOM from the International Medical Education Directory (IMED) in January 2005.  The National Commission on Higher Education (NCHE) of the Republic of Liberia requested  ECFMG to include SLSOM in the IMED in March 2005.

Then, the NCHE though pressure by LURD representatives in the NTLA, sent a fraudulent letter to the ECFMG in April 2005 claiming that SLSOM was a "computer school" and the ECFMG removed SLSOM from the IMED.

In July 2005, SLSOM filed a Writ of Prohibition in the Supreme Court of Liberia against the Government of Liberia requesting an end to the harassment of SLSOM and the restoration of its status.  The Government of Liberia failed to respond to the summons and complaint on four occasions.

In August 2005, the Liberian Supreme Court ordered a "return to status quo ante" and issued a stay order to the Republic of Liberia that "no further action" is taken against SLSOM.  SLSOM was also awarded a "Clerk's Certificate" (default certificate) because the government failed to appear or make an argument against SLSOM's complaint even though it was summonsed to four different hearings.

Despite receiving two requests from the NCHE and despite receiving the Liberian Supreme Court Order from September through December 2005, the ECFMG refused to restore SLSOM listing on the IMED, even until now.

In September 2006, SLSOM initiated a "Damages for Wrong" lawsuit against the Republic of Liberia in the Civil Court of the Republic of Liberia for $120,000,000 USD.  The Republic of Liberia defaulted and SLSOM was awarded another "Clerk's Certificate" in October 2006.

1    However, neither the Liberian Supreme Court nor the Civil Court has met
2  for a judgment due to maneuvering of those same Liberian officials who were sued
3  in original two lawsuits.

4    In summary of the events in Liberia, the Liberian government has not
5  complied with its own Supreme Court's order to restore SLSOM's status to "status
6  quo ante".

7    SLSOM's complaint asserts that Professors Gollin, "Professor of Physics,
8  University of Illinois, Champaign-Urbana", and Alan Contreras, Director of the
9  Oregon ODA, have conspired against SLSOM by placing SLSOM on the ODA's
10  "diploma mill" list without due cause and without due process of law since 2003.
11  The Plaintiff's complaint asserts that Gollin relied on false information from
12  Internet articles about SLSOM to compile the false information he posted about
13  SLSOM on the ODA's website.

14    The Plaintiff, in its complaint, has presented official legal, judicial and
15  governmental information authorizing SLSOM's existence and accreditation in
16  Liberia as exhibits.  On the other hand, the Defendant Oregon Office of Degree
17  Authorization and the author of the "diploma mill" list, Dr. George Gollin, used
18  Internet news articles to libel and discredit SLSOM and the Plaintiff.

19    The Plaintiff asserts that Gollin and Alan Contreras of the Oregon Office of
20  Degree Authorization knew that SLSOM had obtained a default certificate and an
21  order to restore its accreditation and status from the Liberia Supreme Court in
22  2005, against the Republic of Liberia.  Further, Gollin and Alan Contreras of the
23  Office of Degree Authorization knew that SLSOM had also obtained a default
24  certificate in its civil court "Damages for Wrong" lawsuit against the Republic of
25  Liberia in 2006.  Dr. Gollin claims to be a consultant to the Republic of Liberia,
26  and so, had access to official documentation from the Republic of Liberia.

27    Despite the availability of the official documentation that substantiates
28  SLSOM's claim to legitimacy, Alan Contreras of the ODA and Professor George

Gollin present the following information from the ODA's website to defame
SLSOM and ostensibly brand its owners as disreputable and dishonest,
http://www.osac.state.or.us/oda/unaccredited.aspx

> " Saint Luke School of Medicine, California, Ghana, Liberia, Disowned by
> Liberian government in 2005."

On or about November and December 2009, the defendants Dr. George
Gollin, and the Oregon Office of Degree Authorization's representative Alan
Contreras, and others sent through the Internet and United States mail libelous and
threatening documents and letters to officials of the Republic of Ghana, in Ghana
and the United States, in an effort to further defame SLSOM, Dr. Jerroll Dolphin,
his wife, and others.

Furthermore, the Plaintiff asserts that Dr. George Gollin and Alan Contreras
of the Oregon Office of Degree Authorization intentional and willfully violated
the civil rights of SLSOM, Dr. Jerroll Dolphin, and SLSOM students and
graduates. The Oregon Office of Degree Authorization is responsible to the
tortious acts of its employees and consultants.

This Plaintiff asks this honorable court if quotations from online Liberian
newspapers and Internet articles posted by Dr. Gollin and presented under the
color of Oregon law on the ODA's website have precedent over official Liberian
laws, government documents, court documents and court orders from the Liberian
Supreme Court presented by the Plaintiff to this honorable court of law?

This Plaintiff also asks this honorable court if Employees or Officials of a
State Agency can use their positions and authority to launch personal, malicious
and libelous attacks on persons, institutions and corporations and then hide
themselves behind barrier of 11th Amendment Sovereign Immunity?

## III.   LEGAL STANDARDS

## Opposition to Defendant's Citations

Seminole Tribe of Florida v. Florida, 517 14 U.S. 44, 54, 116 S. Ct. 1114 (1996), citing Hans v. Louisiana, 134 U.S. 1, 13, 10 S. Ct. 504 (1890); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900 (1984) – are not applicable to civil rights violations. The 14th Amendment of the United States Constitution and other laws of the United States mandates that violations of civil rights are adjudicated in the Federal Courts. See below.

Blair v. Toran, CV-99-956 ST, 1999 U.S. Dist. LEXIS 20033, at *69 (D. Or. Dec. 2, 1999) – The Plaintiff is not merely suing for damages on a tort. The State of Oregon is responsible for acts of its employees under the color of law that violate the civil rights of citizens and residents of the United States, and aliens. See below.

Stone v. State of Texas, 76 Cal.App.4th 1043, 1047, 90 Cal.Rptr.22d 657 (1999) - "When a defendant moves to quash service of process on jurisdictional grounds, the Plaintiff has the initial burden of demonstrating facts justifying the exercise of jurisdiction," and "California permits the exercise of personal jurisdiction to the full extent permitted by due process." The 14th Amendment of the United States Constitution and other laws of the Congress of the United States authorize jurisdiction of civil rights violations to be in Federal Court. The Oregon Office of Degree Authorization is responsible to the tortious acts of its employees and may be sued in Federal Court for civil rights violations. Also, the actions of Oregon Office of Degree Authorization representative Alan Contreras of sending threatening letters to officials of the Republic of Ghana that defame the Plaintiff and St. Luke School of Medicine are outside of the scope of his employment. Dr. Jerroll Dolphin and SLMP, the majority owners of SLSOM, are resident in the State of California, and did business in California. See below.

1    <u>Bancroft & Masters, Inc., v. Augusta Nat., Inc., 223 F.3rd 1082, 1086 (9th</u>
2    <u>Cir. 2000)</u> - "Whether a California court would have personal jurisdiction over the
3    State Defendants is dependent upon whether the Plaintiff has alleged "minimum
4    contacts" between the State Defendants and the State of California for purposes of
5    general or specific jurisdiction" and "General jurisdiction requires that the
6    contacts be of the sort that approximate physical presence." - The Oregon Office
7    of Degree Authorization claims to exercise jurisdiction over the accreditation of
8    colleges and universities outside of the State of Oregon (including California) and
9    outside of the sovereignty of the United States of America.  The listing of
10   "unaccredited universities" on the "diploma mill" list, published by the Oregon
11   Office of Degree Authorization of colleges and universities outside of Oregon, and
12   outside of the United States, satisfies the requirement for "minimum contact".
13   Defendant's representatives Alan Contreras and George Gollin further sent
14   documents and letters to officials of the Republic of Ghana to demonstrate the
15   authority of the State of Oregon over the sovereignty of the Republic of Ghana.
16   The United States Constitution Article **XX** delegates the "Treaties and Foreign
17   Commerce to be the under the Authority of the United States" and not the State of
18   Oregon.

19        Dr. Jerroll Dolphin and SLMP, the majority owners of St. Luke School of
20   Medicine, are resident in the State of California, and did business in California.
21   See below.

22        <u>Vons Companies, Inc. v. Seabest Foods, Inc., 14 Cal.4th 434, 446,58</u>
23   <u>Cal.Rptr.2d 899, 926 P.2d 1085 (1996)</u> – "the defendant has purposefully availed
24   himself or herself of forum benefits, and the 'controversy is related to or "arises
25   out of' a defendant' contacts with the forum."  Alan Contreras of the Oregon Office
26   of Degree Authorization and co-conspirators Dr. George Gollin, and Dr. Brad
27   Schwartz (both of the University of Illinois), conspired and acted to violate the
28   civil rights of the Plaintiff and SLSOM by sending libelous and malicious

documents and letters to Officials of the Republic of Ghana.  Defendant's
representative, Alan Contreras, threatened to place all Ghanaian colleges and
universities on the Office of Degree Authorization's "diploma mill" list if the
Ghana National Accreditation Board (NAB) or the Courts of Ghana accredit St.
Luke School of Medicine (owned by the Plaintiff Jerroll Dolphin and SLMP).  The
Plaintiff's medical school had gone through an extensive and arduous accreditation
process in Ghana including three physical inspections of its facilities in Ghana
from 2007 through 2008.  Accreditation was awarded to St. Luke School of
Medicine in a judgment of the High Court of Ghana in October 2009.

The Office of Degree Authorization's "diploma mill" list is used by Oregon,
Texas, Maine, Michigan, North Dakota, and other states and countries (the forum)
to deny or discredit the education of students or graduates of the institutions
placed in the list.

Consequently, without due process of law, equality of process or inspection,
the Oregon Office of Degree Authorization would jeopardize the reputation of all
Ghanaian colleges and universities because of Alan Contreras' personal bias
against St. Luke School of Medicine and the Plaintiff.  Again, all without due
process of law.  See below, and Exhibits A-F that are attached.

Ziegler v. Indian River County, 64 F.3d 470,474 (9th Cir. 1995) -

(1)    "the defendant must have performed some act or consummated some
transaction within the forum or otherwise purposely availed itself of the privileges
of conducting activities in the forum".  The defendant's actions  by sending
threatening letters to officials of the Republic of Ghana,  have intentionally
damaged the Plaintiff's Prospective Business Advantage and has further defamed
the owners of SLSOM (Dr. Jerroll Dolphin and others) of their civil rights.  The
Oregon Office of Degree Authorization's "diploma mill" list is used to deny the
rights of students, graduates, owners and staff of those institutions of education,
employment, pursuit of happiness,  and the right to assemble by the states of

1 Oregon, Texas, Maine, Michigan, North Dakota, and other states and countries.

2 See below for details.

3 (2) "the claim must arise out of or result from the defendant's forum related

4 activities;" Alan Contreras of the Oregon Office of Degree Authorization and Dr.

5 George Gollin, and Dr. Brad Schwartz (both of the University of Illinois),

6 conspired and acted to violate the civil rights of the Plaintiff and SLSOM by

7 sending libelous and malicious documents and letters to Officials of the Republic

8 of Ghana. Furthermore, the defendant's "diploma mill" list denies students,

9 graduates, owners and staff of their civil rights in Oregon, Texas, Maine,

10 Michigan, North Dakota and other states and foreign countries by defaming their

11 universities under the color of law.  See below.

12 (3)  "the exercise of jurisdiction must be reasonable."  Amendment 14 of United

13 States Constitution and other laws of the United States provides that violations of

14 civil rights be tried in Federal Courts.  See below.

15 _Doe v. American National Red Cross, 112 F.3d 1048, 1051 (9th Cir. 1997)_

16 – The Defendant's actions  by sending threatening documents and letters to

17 officials of the Republic of Ghana,  and the Oregon Office of Degree

18 Authorization's  "diploma mill" list is used to deny rights of education,

19 employment, pursuit of happiness, and the right to assemble in Oregon, Texas,

20 Maine, Michigan, North Dakota, and other states and countries.  Contrary to the

21 Defendant's claim in its Motion to Dismiss, the "casual connection" to deny the

22 civil rights of the students and graduates of those institutions on that list is highly

23 amplified by the combination of those actions of the Defendants.  See below.

24 _California Rules of Civil Procedure §410.10_ – The defendant's actions  by

25 sending threats to officials of the Republic of Ghana, and the "diploma mill" list

26 on the website of the Oregon Office of Degree Authorization have violated the

27 Plaintiff's civil rights and the rights of SLSOM guaranteed in the United States

28 Constitution.

Additionally, the "diploma mill" list itself is unconstitutional because it asserts the authority of the State of Oregon over the Foreign Policy, Treaties, and other rights of the United States government and over the sovereignty and authority of foreign nations worldwide. See below.

Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1121 (W.D. Penn. 1997) and also Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (C.A.9 Ariz. 1997) – The Oregon Office of Degree Authorization's "diploma mill" list website is not merely "A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." The "diploma mill" list is used a a legal standard in Oregon, Texas, Maine, Michigan, North Dakota, and other states and countries to deny or discredit the education of students or graduates of the institutions on the list. Those students or graduates of the institutions on the list may be subject to criminal prosecution, censure, and other restrictions without due process of law. the "diploma mill" list itself is unconstitutional because it asserts the authority of the State of Oregon over the Foreign Policy, Treaties, and other rights of the United States government and over the sovereignty and authority of foreign nations worldwide. See below.

## Plaintiff's Opposition to Motion to Dismiss

The Plaintiff's complaint sets out in specific detail all the events that showed the violations of the law and theirs rights by the country of Liberia and all the other defendants that violated their rights, including Alan Contreras of the Office of Degree Authorization. The cause of action against the Oregon Office of Degree Authorization is focused. United States Constitution Amendment XI does not bar an action against a state official or employee individually for his tortious conduct. Alan Contreras and the Oregon ODA conspired with Professor George Gollin in tortious acts of:

1.     Trade libel against St. Luke School of Medicine (SLSOM) and against Dr. Jerroll Dolphin. When a person acting under color of state law violates rights embodied in a substantive guarantee of the Constitution, such as the Amendments 1, 3, 4, 5, 6, 7, 8, and 9, it makes no difference that the state affords a remedy; the victim may choose to pursue his federal remedy under 42 U.S.C.S. § 1983 without resorting to the courts of the state. Will v. Michigan Dept. Of State Police 491 U. S. 58 (1989), Wilson v Beebe (1985, CA6 Mich) 770 F2d 578 and Wisconsin v. Constantineau 400 U.S. 433; 91 S. Ct. 507.

2.     Intentional Interference with Prospective Business and Economic Advantage. The court recognizes a cause of action under 42 U.S.C.S. § 1983 for the intentional deprivation of a liberty interest by one acting under color of state law. Will v. Michigan Dept. Of State Police 491 U. S. 58 (1989), Wilson v Beebe (1985, CA6 Mich) 770 F2d 578 and Wisconsin v. Constantineau 400 U.S. 433; 91 S. Ct. 507.

3.     Negligence. Professor Gollin's misrepresentations against SLSOM (owned primarily by Dr. Dolphin) were published under the color of law through the acts of Alan Contreras and the Oregon Office of Degree Authorization. The State of Oregon and the ODA have the responsibility to assure the public that the rights of all citizens and residents of the United States are not violated by its agencies, officers, and employees under the provisions of Amendments 1, 3, 4, 5, 6, 7, 8, and 9, and the jurisdiction of federal court is provided by Amendment 14. Collins v. Purdue Univ., 38 Media L. Rep. 1481, (1964, CA5 La) 339 F2d 911.

4.     Loss of Consortium. 42 U.S.C.S. § 1983 is implicated only when the acts of a defendant under color of state law violate rights protected by the constitution or laws of the United States, specifically the pursuit of happiness. Dr. Dolphin's wife stated to him that the sole reason for her

divorce from Dr. Dolphin was the publication in Ghana of the 91-page
document sent by Professor Gollin to the National Accreditation Board of
Ghana in October or November 2009, and the letters sent to Ghanaian
official Dr. Brad Schwartz of the University of Illinois College of Medicine,
and by the two letters sent to Ghanaian officials by Alan Contreras of the
Oregon Office of Degree Authorization.  Gagne v Maher (1979, CA2 Conn)
594 F2d 336, affd (1980) 448 US 122, 65 L Ed 2d 653, 100 S Ct 2570.

5.  Deprivation of Due Process (see III. LEGAL STANDARD, A. Deprivation
of Due Process, below).

6.  Denial of Equal Protection (see IV. Plaintiff Can Pursue a Federal Court
Action Against the State of Oregon and its Office of Degree Authorization
as a Matter of Law, below)

7.  Conspiracy to Commit Civil Rights Violations.

    A.  Since 2003, Professor George Gollin, "Professor of Physics,
University of Illinois, Champaign-Urbana" and Alan Contreras,
Director of the Oregon ODA, conspired against SLSOM by placing
SLSOM on the ODA's "diploma mill" list without due cause and
without due process of law. Collins v. Purdue Univ., 38 Media L.
Rep. 1481, (1964, CA5 La) 339 F2d 911, and Griffin v. Breckenridge
403 U.S. 88 (1971), Wisconsin v. Constantineau.

    B.  On or about October and November of 2009, Professor George Gollin
and Dr. Brad Schwartz (both of the University of Illinois), and Alan
Contreras (State of Oregon, Office of Degree Authorization)
conspired to violate the civil rights of Dr. Jerroll Dolphin and the
owners of SLSOM, by sending defaming documents and letters to the
Republic of Ghana in an effort to deprive the Plaintiffs of their civil
rights.  United Bhd. of Carpenters & Joiners, Local 610 v. Scott 463
U.S. 825; 103 S. Ct. 3352; 77 L. Ed. 2d 1049.  Please see Exhibits A,

B, C, D, E, and F attached to this Reply.  These actions by the
defendants also violated United States criminal codes

1.      Title 18, Part I, Chapter 13 § 241 Conspiracy to Commit
Human Rights Violations. "If two or more persons conspire to injure,
oppress, threaten, or intimidate any person in any State, Territory,
Commonwealth, Possession, or District in the free exercise or
enjoyment of any right or privilege secured to him by the Constitution
or laws of the United States, or because of his having so exercised the
same; or If two or more persons go in disguise on the highway, or on
the premises of another, with intent to prevent or hinder his free
exercise or enjoyment of any right or privilege so secured".

2.      Title 18, Part I, Chapter 41 § 876. Mailing threatening
communications "(d) Whoever, with intent to extort from any person
any money or other thing of value, knowingly so deposits or causes to
be delivered, as aforesaid, any communication, with or without a
name or designating mark subscribed thereto, addressed to any other
person and containing any threat to injure the property or reputation
of the addressee or of another, or the reputation of a deceased person,
or any threat to accuse the addressee or any other person of a crime,
shall be fined under this title or imprisoned not more than two years,
or both."

3.      Title 18, Part I, Chapter 41 § 878. Threats and extortion against
foreign officials, official guests, or internationally protected persons.

        (a) "Whoever knowingly and willfully threatens to violate
        section 112, 1116, or 1201 shall be fined under this title or
        imprisoned not more than five years, or both, except that
        imprisonment for a threatened assault shall not exceed three
        years."

(b) "Whoever in connection with any violation of subsection (a) or actual violation of section 112, 1116, or 1201 makes any extortionate demand shall be fined under this title or imprisoned not more than twenty years, or both."

8.     Intentional Infliction of Emotional Distress & Negligent Infliction of Emotional Distress. United States Constitution, Amendments and 14. Collins v. Purdue Univ., 38 Media L. Rep. 1481, (1964, CA5 La) 339 F2d 911.

9.     Internet Stalking.  Professor Gollin in the 91-page document that he sent to the Ghana National Accreditation Board, the two letters sent by Alan Contreras of the ODA, and the letter sent by Dr. Brad Schwartz clearly demonstrate the offense of Internet Stalking.  No official documentation was presented by any of the conspirators.  Only information obtained through the Internet was presented, mostly false and libelous.

10.     The Federal Courts have already ruled that the Oregon Student Assistance Commission, Office of Degree Authorization has committed Civil Rights violations on previous occasions. Melinda Benton v Oregon Student Assistance Commission, Oregon Office of Degree Authorization, and Alan Contreras, 421 F.3d 901, 2005 U. S. App. Lexis 18301.  Similarly in a settled case, Kennedy Western University vs. Oregon (citation not available), the District Court ruled that Alan Contreras was a civil rights violator and that training should be undertaken.

## A.   *Deprivation of Due Process*

        In 2003 the University of Illinois told Dr. Gollin to stop posting his list of "Diploma Mills" to avoid potential lawsuits (FAC ¶¶  179(p), 195(p)). The "diploma mill" list that the University of Illinois ordered Dr. Gollin to remove from the University's website in 2003 was moved to the Oregon's Office of Degree Authorization (ODA) website. The ODA's website states that the authority and

definitions of "diploma mills" and "fraudulent schools" in contained on the University of Illinois website.  The ODA's "diploma mill" list, authored by Dr. Gollin, is referenced as the source of unapproved colleges and universities by the states of Texas, Maine, Michigan, Indiana, North Dakota, and other states and foreign countries.  Dr. Gollin even references his own "research" on other websites to make it seem as though there are numerous different authorities on the subject "unaccredited" institutions when often Gollin himself is the sole source of derogatory information on an institution.  The Plaintiff will show this honorable court how Dr. George Gollin and Alan Contreras perpetuate their misinformation campaign through complex manipulations of information they present on the Internet.

The ODA has no immunity by claiming that it is just "hosting" Professor George Gollin's research.  The Defendant's claim is not true especially since the ODA is operating under the authority of law of the State of Oregon.  There are criminal penalties in the State of Oregon and other states that refer to Gollin's research, the "diploma mill" list, as if were "legislated law".  It is used by those states for criminal prosecution, and the denial of educational credits or credentials. Collins v. Purdue Univ.,  Will v. Michigan Dept. Of State Police, Wilson v Beebe, Wisconsin v. Constantineau, and Louisiana State Board of Education of Baker (19 64, CA5 La) 339 F2d  911.

In some states such as Oregon and Texas, it is a crime to use diplomas from the schools on the ODA's "diploma mill" list and the graduate or student may face criminal prosecution.  The use of this list, produced by Dr. Gollin and supported by the hosted and promoted by the Oregon Office of Degree Authorization, improperly sanctions the schools, their students and graduates without due process of the law. Tenney v. Brandhove , 341 U.S. 367 (1951), Collins v. Hardyman 341 U.S. 651 (1951) and Collins v. Purdue Univ., 38 Media L. Rep. 1481. Louisiana St

ate Board of Education of Baker (1964, CA5 La) 339 F2d 911.  Consequently, the
schools, their students and graduates are denied

- rights to education, Louisiana State Board of Education of Baker
- right to employment and opportunity, United States Constitution
  Amendments 1, 3, 4, 5, 6, 7, 8, and 9.
- pursuit of happiness, United States Constitution Preamble.
- due process, Tenney v Brandhove, Collins v Hardyman, Collins v. Purdue U
  niv.equal protection, Griffin v. Breckenridge
- and rights to assemble, United States Constitution  Amendment 1

The schools on the Oregon Office of Degree Authorization's "diploma mill"
list, their students and graduates are subjected to

- Harassment
- Prosecution to felony or misdemeanor charges
- Fines or imprisonment

The "diploma mill" list itself is the product of the personal biases of Dr.
Gollin and Alan Contreras.  Without notification, due process of law, the equality
of process, verifiable documented evidence, hearings, or investigation, institutions
are listed as "unaccredited".  The staff, owners, students and graduates are
subjected to violations of their human rights and dignities with less evidence or
witnesses than it takes to issue a traffic ticket.  Collins v. Purdue Univ.

All the above violations of rights and privileges are done without due
process of law or substantiated research by the author, Dr. Gollin, or by the
Oregon Office of Degree Authorization.  Without a notification and a hearing, and
without a request for information from the institution, a college or university is
inserted on the "diploma mill" list by Dr. Gollin, and the list is published on the
Internet by the Oregon Office of Degree Authorization.  Then, usually after a
complaint from the institution's students, the institution learns that it is on the
Oregon Office of Degree Authorization's "diploma mill" list.

Then officials of the institution have the option to challenge the ODA "diploma mill" list after paying a substantial fee to the ODA and presenting substantial new documentation the ODA from various agencies, registries or ministries in the country of the institution. This process may be at a tremendous cost and expense to the institution, as it would have been to St. Luke School of Medicine and its owners and its operation is similar to an extortion attempt by criminals: "pay me (or, do what I say) or I put you on the 'blacklist'". The use of this list amounts to nothing more than governmental sponsored extortion.

The Oregon Office of Degree Authorization is responsible to the tortious acts of its employees and consultants. The use of the "diploma mill" list, authored by Professor Gollin, published under the authority of law by the Oregon Office of Degree Authorization, and used as law in the state of Oregon, Texas, Maine, Michigan, Indiana, North Dakota and other states and countries violates the rights protected by the Bill of Rights, Bill of Rights, of Amendments 1, 3, 4, 5, 6, 7, 8, and 9 of the United States Constitution. Laws passed by the United States Congress in 42 U.S.C.S. § 1983 and Title 18, Part I, Chapter 13, and other statutes, authorizes the jurisdiction of violations of these protected civil rights to be in the federal courts.

Again, contrary to the defendant's statements, although normally the State of Oregon may be entitled to immunity from lawsuits in federal court under the 11th Amendment of the United States Constitution, all violations of civil rights are entitled to be heard in United States Federal Court in accordance to the 14th Amendment of the United States Constitution and various sections of 42 U.S.C.S. § 1983; Title 18, Part I, Chapter 13; Title 18, Part I, Chapter 41; and other United States laws.

The use of Oregon Office of Degree Authorization's "diploma mill" list is also unconstitutional as it violates the civil rights of citizens and residents of the United States, and it attempts to exercise authority of the State of Oregon over the

foreign policy of the United States and over the sovereignty and authority of foreign nations worldwide.

## IV.   Plaintiff Can Pursue a Federal Court Action Against the State of Oregon and its Office of Degree Authorization as a Matter of Law

The defendant is wrong.  The conditions and tests of Seminole Tribe of Florida v. Florida, citing Hans v. Louisiana; Pennhurst State School & Hosp. v. Halderman;  Blair v. Toran; Stone v. State of Texas;  and other cases cited by the defendant for trial are not dispositive of this issue. Although these cases stand for the proposition that in certain circumstances sovereigns are entitled to immunity, they do not stand for the proposition that in all circumstances a sovereign cannot be sued in a federal forum.

The law is clear that a sovereign that has condoned civil rights violations and other tortious conduct of one of its employees (professors and officers of the state) can be sued in the federal court. Title 18, Part I, Chapter 13 § 242, Deprivation of Rights Under Color of Law. "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both .......".  Consequently, this honorable Federal Court has jurisdiction over the subject matter and person of the State of Oregon, Alan Contreras and the Office of Degree Authorization, so, accordingly, the Plaintiff's case should not be dismissed.

Although, the complaint is long and complex it was necessary to present the case in that manner. Each and every defendant is put on notice of what the claims

are, and how they are implicated in the claims and the damages being sought. All Plaintiffs, Dr. Dolphin, SLSOM, its students and graduates are clearly included in the tortious wrong doings of the defendants in this complaint.  The torts committed by the Liberian defendants violated the Plaintiff's rights:

- rights to education, Louisiana State Board of Education of Baker (1964, CA 5 La) 339 F2d  911
- right to employment and opportunity,
- pursuit of happiness,
- denial of Due Process, Tenney v. Brandhove, Collins v. Hardyman, and Collins v. Purdue Univ.
- Denial of Equal Protection, Griffin v. Breckenridge
- Conspiracy to Commit Civil Rights Violations, United Bhd. of Carpenters & Joiners, Local 610 v. Scott
- Intentional Infliction of Emotional Distress, Collins v. Purdue Univ
- Negligent Infliction of Emotional Distress, Collins v. Purdue Univ
- and rights to assemble, United States Constitution Amendment 1

The State of Oregon, Alan Contreras, and the Office of Degree Authorization, in its actual support of George Gollin furthered the Liberians extortion and bribery attempt of Dr. Jerroll Dolphin and SLSOM, and therefore violated the very same Plaintiffs civil rights.  Therefore, the proper jurisdiction is in the federal court, according to the 14th amendment and the above-cited United States Statutes.

## V. PLAINTIFFS' COMPLAINT SATISFIES BASIC PLEADING REQUIREMENTS

The defendant is wrong.  The Plaintiff has followed the rules. The Plaintiff's lack of experience or lack of knowledge of law has compelled the Plaintiff to write more detail into his complaint.

The Federal Rules do not require the claimant to detail the facts upon which he bases his claim. They only require a "short and plain statement of the claim" that will give fair notice to the Defendants of the claim and the grounds on which it rests. The Forms in the rules are an example. Any further facts needed to more narrowly define the scope of the claim and the possible defenses can be obtained through pretrial discovery. Rule 8(f) states that all pleadings shall be "construed as to do substantial justice." Thus, their purpose is to facilitate a proper decision on the merits, not to become a deceptive trap for the less skilled litigant.

I. Multiple Claims

    A. Rule 8(e)(2) allows a party to set forth two or more statements of a claim in the alternative, either in one or more separate counts or defenses.

        1.   assists a Plaintiff who may be genuinely uncertain about what substantive law will apply, and what he will have to prove.

        2.   the pleader can take any version of the claim.

    B. Definition of a Claim

        1.   analogous to "cause of action"

        2.   can be defined either by a single legal theory or a single natural grouping of events.

            a.   Rule 18(a) minimizes the distinction by permitting a Plaintiff to join all of his claims either independently or in the alternative.

    C. Consistency

        1.   Rule 8(e)(2) allows a party to claim as many separate claims as he has regardless of consistency.

        2.   Rule 11 requires that the signature constitute a certification that there is good ground to support it and that it is not interposed for improper purpose.

## VI. CONCLUSION

The defendant is wrong.  The State of Oregon Office of Degree Authorization is subject to this court's jurisdiction under the mandate of the Fourteenth Amendment of the United States Constitution and further defined by Congress in 42 U.S.C.S. § 1983 and Title 18, Part I, Chapter 13 and other statutes.

For the reasons stated above, this Court should deny the motion to dismiss. In the alternative, if the Court does dismiss Plaintiff's complaint, Plaintiff requests that the Court grant him leave to amend the complaint.

**Respectfully Submitted**

**DATED: July 9, 2010**

**Sign:** _____

**JERROLL DOLPHIN**

**Plaintiff in pro per**

# EXHIBIT A

"A G6"

# An Analysis of the Practices and Policies of The St. Luke School of Medicine in Recent Years

George Gollin
Professor of Physics
University of Illinois at Urbana-Champaign

November 5, 2009

Filed on 15-12-2009
2:55
Registrar Court Taped

Introduction .................................................................................... 4

Immediate disqualifications ............................................................ 5

Past practices as predictors of future conduct ................................ 6

The international stake in quality assurance and postsecondary oversight ............... 6

The St. Luke School of Medicine's approach to Ghana gives cause for concern ......... 7

The current presentation of the St. Luke School of Medicine ............... 8

An overview of the current St. Luke School of Medicine ....................... 8

Jerroll Dolphin and Susana Dolphin are SLSOM's California-based principals ......... 9

The Dolphins' request for Ghannian accreditation of SLSOM and their history of claiming SLSOM is accredited .................................................. 11

Jerroll Dolphin, MD is unlicensed .............................................. 12

Jerroll Dolphin is the primary provider of curriculum and training ............... 12

The ongoing award of MD degrees to previously matriculated SLSOM students? ..... 15

SLSOM is a California entity, operating in the jurisdiction of the State of California  15

SLSOM is not registered as a California corporation ........................... 16

The St. Luke Medical Foundation is associated with SLSOM and the Dolphins.... ... 17

The internet domain registration for SLSOM specifies a Ghanaian postal address .... 19

The physical location of SLSOM in Ghana ..................................... 20

G-gollin@illinois.edu

1

Last saved 10/3/2009 9:41 AM

2

Summary: SLSOM now..................................................................................... 21

Vital International Foundation and its connection to SLSOM ........................................... 22

An overview of the Vital International Foundation ...................................................... 22

Susana Mitchell Dolphin heads VIF and Jerroll Dolphin runs its training programs... 23

Medical/clinical/instructional tourism run by VIF ...................................................... 24

Corporate and nonprofit registrations of VIF in California.......................................... 25

The Vital International Foundation shares infrastructure and personnel with SLSOM 26

VIF's California and Ghana addresses ..................................................................... 27

Is there a VIF – SLSOM - Eartheare International connection?..................................... 29

Other VIF personnel ........................................................................................... 31

Summary: the Vital International Foundation ............................................................ 31

The St. Luke School of Medicine, from 2000 to the present ........................................ 32

The St. Luke School of Medicine appears to have been created in 1999 or 2000........ 32

The troubling rosters of SLSOM faculty and administration ........................................ 33

June 2001 SLSOM faculty................................................................................... 33

More about Professor Taliaferro Harris, MD: connection to Jerroll Dolphin ........ 34

More about Professor Taliaferro Harris. MD: practicing medicine without a license
in Ghana in collaboration with Jerroll Dolphin ................................................... 36

More about Professor Taliaferro Harris, MD: conviction for felony medical fraud in
2009 for his activities in 2005 and earlier............................................................. 39

June 2002 SLSOM faculty.................................................................................. 40

Professor Egbert Phipps runs unsavory degree providers widely described as
diploma mills ................................................................................................... 40

Steve Amen is unlicensed and has significant involvement with other medical
diploma mills ................................................................................................... 40

Early registrations of the SLSOM internet domain used a California postal address ..41

Internet domain registration history....................................................................... 42

3

The changing SLSOM faculty and administration .............................................................. 42

Glory Dolphin was SLSOM "CEO" and "Chief Business Development Officer" in 2001 .............................................................................................................................. 42

Self-presentation: brochure with Daglionl school photo (mention author property); course catalog ...................................................................................................................... 44

Glory Dolphin is named in a 2001 SLSOM brochure's "properties" as the document's author ......................................................................................................................... 44

Physical locations associated with SLSOM infrastructure ............................................... 46

Inglewood, California ........................................................................................................ 46

SLSOM identifies a Ghanaian address for its finance and admissions officers ....... 46

David Karam's El Paso, Texas address received surface mail for SLSOM in 2006 47

Outcomes in medical education: the SLSOM classes of 2002 ........................................... 48

The standard for comparison: U.S. medical education ....................................................... 48

The classes ........................................................................................................................... 49

David W. Karam ................................................................................................................... 49

Karam operates the "Institute for Adaptogenic Science" ............................................... 49

David Karam claims an SLSOM MD and also a LaSalle University diploma mill degree ....................................................................................................................................... 50

Personnel of the St. Luke School of Medicine faculty and administration ....................... 51

"Students" who immediately assumed leadership roles in SLSOM ................................. 51

Dolphin and Harris appear to arrange medical tours of western Africa ......................... 51

Disturbing connections to other organizations ................................................................... 53

Southern Graduate Institute ............................................................................................... 53

University of Science Arts and Technology Medical College of London ................... 53

Lady Malina Memorial Medical College ........................................................................... 55

The St. Luke School of Medicine in November 2009, and before ................................... 55

St. Luke School of Medicine students ................................................................................ 59

4

Larry Lammers..................................................................................................... 59

Connected organizations........................................................................................ 59

St. Luke Medical Foundation.............................................................................. 59

Project Africa 2000............................................................................................. 61

The Economic Development Fund Foundation ................................................... 62

Edwin Muniz........................................................................................................ 63

Herbert W. Winstead .......................................................................................... 65

Early version of SLSOM on pacbell.net ............................................................. 68

Medical tourism ..................................................................................................... 68

### Introduction

The insufficient capacity of postsecondary institutions in the developing world to place students in local facilities, in combination with the economic advantage afforded to those who obtain university degrees, generates an attractive market for foreign degree providers.[2] Most of these foreign schools create legitimate programs featuring instruction by qualified faculty who teach college-level material to engaged students. But government oversight of universities that are international in extent is a challenging task, even when all the stakeholders—students, the university faculty and administration, and the governmental oversight agency—share the common goal of providing students with a quality education. When one of the participants is not acting in good faith, it can be fiercely difficult to detect and suppress the activity. Sometimes there is a dishonest degree provider. Sometimes an accreditor lacks the skill to detect misrepresentations.[3] Sometimes there are structural problems that prevent an agency from responding, even when it is aware that it appears to bestow legitimacy on an entirely fraudulent entity posing as a university.[4] Quality assurance is not a simple matter.

---

[2] This subject has been discussed extensively in the higher education literature. See, for example, "The Private Nature of Cross-Border Higher Education," Jason E. Lane and Kevin Kinser, *International Higher Education*, 53, Fall 2008.

[3] For example, "Accreditation of College in Former Soviet Republic Raises Questions of Oversight," Burton Bollag, *Chronicle of Higher Education*, September 8, 2006. See also "When Criminals Control the Ministry of Education," George D. Gollin, *International Higher Education*, 53, Fall 2008.

[4] "Wolves in Chancellors' Clothing," George D. Gollin, *International Higher Education*, 55, Spring 2009.

Last saved 10/19/2009 9:31 AM

5

*Immediate disqualifications*

Central to any effort at suppression of bogus schools is the accumulation of clear, irrefutable evidence documenting the unsavory practices and willful misrepresentations of an illegitimate degree provider. Some of the attributes that are warning flags are discussed in the best practices document *Toward Effective Practice: Discouraging Degree Mills in Higher Education* released by the Council for Higher Education Accreditation (CHEA) and the United Nations Educational, Scientific and Cultural Organization (UNESCO).[5]

The list of findings that should immediately disqualify a degree provider from receiving an operating license is long. A single determination of any of the following is likely to provide adequate grounds for immediate rejection of a school's application for licensure:

- The school's catalog misrepresents its physical facilities, either through inaccurate descriptions in text, or deliberately misleading photographs of buildings and grounds that could reasonably be thought to represent a campus, but do not;

- A significant number of the school's instructors or administrators do not hold the academic credentials appropriate for successful discharge of their responsibilities, or claim bogus credentials from unrecognized degree providers;

- The school operates, or has a history of operating, without legal authority from the appropriate government agency in its home jurisdiction;

- In the case of the licensed professions, the school's graduates fail to obtain licenses, or fail to thrive as practitioners, with unusually large probability;

- A significant portion of the school's graduates use their credentials for commercially deceptive or criminally fraudulent activities, indicating that the school is complicit in their deceptions;

- The school awards academic credit without requiring demonstration of mastery of the subject matter for which the credits are awarded;

- The school's articulation agreements with other schools reveal that the school awards transfer credits regardless of the level of mastery of the subject matter associated with the transferred credits;

- The school masks its internet domain registration information behind a privacy service, hiding the identities of its administrative officers;

[5] *Toward Effective Practice: Discouraging Degree Mills in Higher Education*, Council for Higher Education Accreditation and the United Nations Educational, Scientific and Cultural Organization, 2009, http://www.chea.org/pdf/degree_mills_effective_practice.pdf.

Last saved 10/31/2009 9:31 AM

6

- The school will not reveal the names of its instructors or the identities of its senior administrators;
- The school shares a significant number of instructors or administrators with other schools known to hold any of the attributes listed above.

*Past practices as predictors of future conduct*

Recent history shows that the past practices of the principals of a degree provider can be good predictors of how they will operate a new school. The owners of the "St. Regis group" of diploma mills repeatedly claimed they were revamping their practices and policies. In spite of this, they continued to sell degrees to unqualified customers without providing meaningful instruction or portfolio evaluation. Over time the owners of St. Regis ran through 66 differently named "universities" of their own invention, only stopping when their computers and supplies used in fabricating diplomas were seized by U.S. federal authorities.[6] James Kirk, the owner of the Louisiana-based "LaSalle University" diploma mill was imprisoned for his LaSalle business. Within weeks of the start of his prison term, Kirk and his wife had launched a new diploma mill named "Edison University" whose promotional material was mailed to customers from the city in which Kirk was incarcerated.[7]

*The international stake in quality assurance and postsecondary oversight*

It is becoming increasingly common for academic credentials earned in one country to be used in seeking employment in another country. In the European Union the Bologna Accords are intended to facilitate this by easing the transfer of academic credentials across national boundaries.[8] In the case of foreign medical credentials to be used inside the United States, one avenue for cross-border acceptance is provided by the Foundation for Advancement of International Medical Education and Research:

> The Foundation for Advancement of International Medical Education and Research maintains the barrier between the United States Medical Licensing Exam and students from non-US medical schools. Only graduates from schools in the foundation's International Medical Education Directory can take the exam. The directory is compiled from information provided by national ministries of health.[9]

But there is a fundamental structural problem in the FAIMER wall at the border of the United States, with examples of its breach discussed in the higher education literature:

---

[6] See the large volume of material associated with *United States of America. vs. Dixie Ellen Randock et al.*, some of which is available online at http://www.heg-nisc.edu/spme/scroll/in/pigeons/baru_usg.

[7] *Degree Mills: the Billion Dollar Industry That Has Sold Over a Million Fake Diplomas*, Allen Ezell and John Bear. Prometheus Books, Amherst, New York, 2005, page 82.

[8] A great deal of material discussing the Bologna Accords can be found in articles carried by *International Higher Education*, available online at http://www.bc.edu/bc_org/avp/soe/cihe/newsletter/.

[9] Op. cit., "Wolves in Chancellors' Clothing."

# EXHIBIT B

In Cese of repty the
number and date of this
letter should be quoted

TEL: 664951-3/664970/6637501
676765/664650/675027
FAX: 665363/667823

My Ref No. **SCR, PO/USA**

Your Ref. No. .....................



REPUBLIC OF GHANA

MINISTRY OF FOREIGN AFFAIRS.
AND REGIONAL INTEGRATION,
P. O. BOX M 53,
ACCRA, GHANA.

DATE **20TH NOVEMBER, 2009.**

## CAUTION AGAINST GRANTING OF APPROVAL/ACCREDITATION TO ST. LUKE SCHOOL OF MEDICINE TO ISSUE MEDICAL DEGRESS IN GHANA

I have been directed to forward, herewith, for your attention and urgent action, letter reference No. WA/INF/4 dated 17th November, 2009 and its attachment received from our Mission in Washington DC.

2. The Oregon Student Assistance Commission Office of Degree Authorization is by the letter cautioning the National Accreditation Board, (NAB) of Ghana against granting approval to St. Luke "School of Medicine", to enable the latter to issue medical degrees to Ghanaians due to the fact that the activities the school do not confirm with foreign degrees accreditation practices of the U.S.A.

3. It would be most appreciated if the National Accreditation Board (NAB) could take urgent action to avert possible sanction against Ghanaian educational institutions.

*For:*  MINISTER FOR FOREIGN AFFAIRS
& REGIONAL INTEGRATION
**GLORIA POKU (MRS)**
DEPUTY DIRECTOR/AMERICAS BUREAU

**MR. KWAME DATTEY,**
**NATIONAL ACCREDITATION BOARD (NAB),**
**NO. 6 BAMAKO STREET, EAST LEGON,**
**P. O. BOX CT 3256,**
**ACCRA.**

**Encl.**

# EXHIBIT C

In Case of reply the
number and date of this
letter should be quoted

TEL: 664951-3/664970/663750/
676765/664650/675027
FAX: 663363/667823

My Ref. No. SCR. PO/USA

Your Ref. No.

REPUBLIC OF GHANA

MINISTRY OF FOREIGN AFFAIRS,
AND REGIONAL INTEGRATION,
P. O. BOX M 53,
ACCRA, GHANA.

DATE: 20TH NOVEMBER, 2009.

## CAUTION AGAINST GRANTING OF APPROVAL/ACCREDITATION TO ST. LUKE SCHOOL OF MEDICINE TO ISSUE MEDICAL DEGRESS IN GHANA

I have been directed to forward, herewith, for your attention and urgent action, letter reference No. WA/INF/4 dated 17th November, 2009 and its attachment received from our Mission in Washington DC.

2. The Oregon Student Assistance Commission Office of Degree Authorization is by the letter cautioning the National Accreditation Board, (NAB) of Ghana against granting approval to St. Luke "School of Medicine", to enable the latter to issue medical degrees to Ghanaians due to the fact that the activities the school do not confirm with foreign degrees accreditation practices of the U.S.A.

3. It would be most appreciated if the National Accreditation Board (NAB) could take urgent action to avert possible sanction against Ghanaian educational institutions.

For: MINISTER FOR FOREIGN AFFAIRS
& REGIONAL INTEGRATION
**GLORIA POKU (MRS)**
DEPUTY DIRECTOR/AMERICAS BUREAU

**MR. KWAME DATTEY,**
**NATIONAL ACCREDITATION BOARD (NAB),**
**NO. 6 BAMAKO STREET, EAST LEGON,**
**P. O. BOX CT 3256,**
**ACCRA.**

Encl.