MICHAEL D. YOUNG (SBN 120787)
NICOLE C. RIVAS (SBN 179337)
**ALSTON & BIRD LLP**
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: mike.young@alston.com
        nicole.rivas@alston.com

Attorneys for Defendant THE BOARD OF TRUSTEES
OF THE UNIVERSITY OF ILLINOIS, erroneously sued as
THE UNIVERSITY OF ILLINOIS-URBANA CHAMPAIGN

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ST. LUKE SCHOOL OF MEDICINE; DR. JERROLL B.R. DOLPHIN and DR. ROBERT FARMER on behalf of himself and all others similarly situated, as applicable,<br><br>Plaintiffs,<br><br>v.<br><br>REPUBLIC OF LIBERIA; MINISTRY OF HEALTH, a Liberian Governmental Agency; MINISTRY OF EDUCATION, a Liberian Governmental Agency; LIBERIAN MEDICAL BOARD, a Liberian Governmental Agency; NATIONAL COMMISSION ON HIGHER EDUCATION, a Liberian Governmental Agency; NATIONAL TRANSITIONAL LEGISLATIVE ASSEMBLY, a Liberian Governmental Agency; DR. ISAAC ROLAND; MOHAMMED SHERIFF; DR. BENSON BARH; DR. GEORGE GOLLIN; EDUCATION COMMISSION FOR FOREIGN MEDICAL GRADUATES; a Pennsylvania Non-Profit organization; FOUNDATION FOR ADVANCEMENT OF INTERNATIONAL EDUCATION AND RESEARCH; a Pennsylvania Non-Profit organization, UNIVERSITY OF ILLINOIS-URBANA CHAMPAIGN, an Illinois Institution of Higher Learning; STATE OF OREGON, Office of Degree Authorization,<br><br>Defendants. | Case No.: 10-CV-01791 RGK (SHx)<br><br>[Honorable R. Gary Klausner]<br><br>**DECLARATION OF MICHAEL D. YOUNG IN SUPPORT OF DEFENDANTS DR. GEORGE GOLLIN'S AND THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS' MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND THIS COURT'S INHERENT POWERS**<br><br>**[FILED CONCURRENTLY WITH DEFENDANTS DR. GEORGE GOLLIN'S AND THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS' NOTICE OF MOTION AND MOTION FOR SANCTIONS AGAINST THADDEUS J. CULPEPPER AND JERROLL B.R. DOLPHIN PURSUANT TO 28 U.S.C. § 1927 AND THIS COURT'S INHERENT POWERS; MEMORANDUM OF POINTS AND AUTHORITIES; AND [PROPOSED] ORDER]**<br><br>DATE:            September 13, 2010<br>TIME:            9:00 a.m.<br>COURTROOM:   850 |

## DECLARATION OF MICHAEL D. YOUNG

I, Michael D. Young, declare and state as follows:

1.     I am an attorney duly licensed to practice law before all courts of the State of California and am a partner with the law firm of Alston & Bird LLP, attorneys of record for defendants The Board of Trustees of the University of Illinois and Dr. George Gollin, herein.  I have personal knowledge of the files and records in this action, and of the facts set forth in this declaration.  I could and would competently testify to the matters set forth herein.

2.     Upon my review of the Complaint and Amended Complaint in this action, it appeared to me that among the many infirmities with the complaint, both procedurally and legally, there were significant jurisdictional hurdles that I did not think the plaintiffs could overcome.  Among them were Eleventh Amendment sovereign immunity issues that appeared to bar the claims against our clients in this action as a matter of law.

3.     Because it seemed so inefficient and expensive to have to utilize the court and its resources to address these issues, and in the hopes that we could convince the plaintiff to dismiss the action as to our clients, I telephoned plaintiff's counsel, Thaddeus Culpepper, on or about May 10, 2010, to discuss the case and our concerns with him.  In that conversation (which turned out to be the only telephone conversation I was ever able to have with Mr. Culpepper), I notified Mr. Culpepper that his claims were improper in light of the sovereign immunity protection of the Eleventh Amendment to the U.S. Constitution.  Telling Mr. Culpepper I would follow up our call with a letter, I asked him in particular to voluntarily dismiss my clients from the action.  Attached hereto as **Exhibit A** is a true and correct copy of my confirming email to Mr. Culpepper.

4.     On or about May 13, 2010, I sent Mr. Culpepper the promised letter detailing the case law that confirms that this action is inappropriate as against the University of Illinois (at the time, defendant Gollin had not yet been served) in

light of its Eleventh Amendment protection.  In that letter, I urged Mr. Culpepper to dismiss the University so that we would not need to file a motion to dismiss.  *I also notified him that I thought Rule 11 and other sanctions would be appropriate if he failed to dismiss in light of the uncontroverted authority prohibiting this action against the University.*  Attached hereto as **Exhibit B** is a true and correct copy of our May 13, 2010, letter to Mr. Culpepper, which was delivered both by email and U.S. Mail.

5.    I never received a response from Mr. Culpepper.  Accordingly, on May 20, 2010, I telephoned Mr. Culpepper to discuss my letter and our request for a voluntary dismissal.  Mr. Culpepper did not have anyone answering his phone, so I left him a voicemail message asking him to call me.  I followed this up with an email also requesting that he give me a call or at least indicate whether he would dismiss the University.  Attached hereto as **Exhibit C** is a true and correct copy of my May 20, 2010, email to Mr. Culpepper.

6.    Because Mr. Culpepper again never returned my phone call or email, I tried one more time to contact Mr. Culpepper.  At my direction, my colleague Nicole Rivas telephoned Mr. Culpepper on May 26, 2010, but was unable to reach him.  She followed up that call with an email to Mr. Culpepper in which she again sought a dismissal on sovereign immunity grounds, or alternatively asked for any authority plaintiff might have to support a claim against an Illinois public University in federal court here in California.  *She also again put Mr. Culpepper on notice that if forced to bring a motion to dismiss, we would seek sanctions against him and his client as provided by law.*  Attached hereto as **Exhibit D** is a true and correct copy of Ms. Rivas' May 26, 2010 email to Mr. Culpepper.

7.    Mr. Culpepper ignored this communication as well.  Indeed, except for the first call I had with him on May 10, 2010, Mr. Culpepper has completely ignored all of my efforts to contact him regarding this case.  In light of Mr. Culpepper's silence, we had no choice but to file our motion to dismiss.

LEGAL02/32109635v1

3

8.     Surprisingly, on or about June 1, 2010, the day we filed our motion to dismiss on behalf of the University, at nearly 4:00 p.m., I received an email from Mr. Culpepper replying to my email of May 20, 2010. His email stated merely: "We will be voluntarily dismissing." A true and correct copy of this email is attached hereto as **Exhibit E**. Mr. Culpepper has never since responded to any of our communications requesting that he provide the promised dismissal, nor have plaintiffs ever made any attempt to voluntarily dismiss their claims against our clients.

9.     After filing the motion to dismiss on behalf of the University, I learned that plaintiffs had sought to serve process on our other client, University of Illinois professor Dr. George Gollin, a named defendant in this action. On or about June 10, 2010, I again tried to reach Mr. Culpepper by telephone, and because he has no one answering his phones, I was forced to leave another message in his voicemail. I asked that he dismiss Professor Gollin under the Eleventh Amendment, and offered to send him authorities to support the dismissal. I followed up my phone call with an email to Mr. Culpepper summarizing my voicemail message and asking that he call me back. Attached hereto as **Exhibit F** is a true and correct copy of my June 10, 2010 email to Mr. Culpepper.

10.     Consistent with prior experience, Mr. Culpepper never replied to any of my calls or emails. Indeed, other than the five word message in Exhibit E (and the initial phone call on May 10), I received no communication from Mr. Culpepper and was never able to hold a discussion with him regarding any aspect of this case. Accordingly, we were forced to prepare and file a motion to dismiss as to Professor Gollin (which we did on June 22, 2010).

11.     In the meantime, as this Court is surely aware from a glance at the docket sheet, we received numerous subsequent pleadings and filings from plaintiff Dolphin directly, as well as from Mr. Culpepper, which required our attention; and while this Court eventually, and properly, rejected most of these filings, we were still required to review and monitor them, and consider with our clients whether responses

4

1   were necessary.

2           12.     Had Mr. Culpepper responded to our initial efforts to discuss this

3   case with him, our clients would have been spared considerable attorney's fees and

4   costs.    Clearly, judging by Mr. Culpepper's written agreement to dismiss the

5   University from this action, plaintiffs recognized the lawsuit was not well taken as to

6   our clients.   Our clients never should have been named in the first place; but at a

7   minimum, after we had provided plaintiffs with the legal authority confirming the

8   impropriety of the action as against our clients, they should have been dismissed

9   immediately. *Plaintiffs were on notice that by refusing to dismiss our clients from this*

10  *action, we would seek appropriate sanctions.*

11          13.     Because the case had not been dismissed, the defendants were

12  obligated to prepare for the case management conference, which required meeting and

13  conferring for the preparation of the Rule 26 report.   On or about July 28, 2010,

14  defense counsel met telephonically for the conference and sought to conference in

15  Mr. Culpepper to participate on behalf of the plaintiffs.   Mr. Culpepper initially

16  answered his telephone, but right after defense counsel introduced themselves and

17  stated the reason for the call, the phone line mysteriously went dead.   A subsequent

18  effort to reconnect with Mr. Culpepper was unsuccessful (the call went directly to

19  voicemail).   Defense counsel were thus left conducting the conference by themselves

20  and beginning the process of preparing the Rule 26 report.

21          14.     The next day, on July 29, 2010, we received this Court's order

22  dismissing this action in its entirety on jurisdictional grounds.   For the Court's

23  convenience, a true and correct copy of this order is attached hereto as **Exhibit G**.

24          15.     I have reviewed our invoices and other billing records for this

25  action.   In my declaration supporting our motion for costs, I have set out the costs

26  incurred by our clients. *In this declaration, I review the attorneys fees* incurred as a

27  result of plaintiffs' lawsuit, which we contend was clearly frivolous, and their refusal

28  (through counsel) to communicate with us or otherwise discuss this matter without

court intervention, despite acknowledging that our client should have been dismissed at the outset.

16.     From May, 2010, when we were first retained to represent the University and Dr. Gollin, through the present, our clients have incurred **$57,038.00** in attorney's fees defending themselves in this action.   Nearly all of these fees were incurred after plaintiffs rejected and ignored our effort to discuss the case and explain why the action was legally deficient as applied to our public entity (and employee) clients.  More specifically:

a.     From early May, 2010, through May 10, 2010, when I had my one and only conversation with Mr. Culpepper, our clients incurred **$7,979** in attorney's fees.  These reflected our work with our clients understanding the nature and basis for the dispute, reviewing the lengthy complaint, amended complaint, and voluminous exhibits thereto, and conducting legal research into some of the issues raised by the claims in the complaint, including 11th Amendment / sovereign immunity issues.

b.     From May 11 to May 13, 2010, our clients incurred **$5,885.50** in fees.  This covered the work of completing our initial research into the 11th Amendment defense and other defenses, research into sanctions issues, drafting our letter to plaintiffs requesting dismissal, and additional communications with our clients understanding the background issues.

c.     From May 14, 2010, to June 1, 2010 (the date we filed our motion to dismiss on behalf of the University, and received plaintiff's counsel's terse email that plaintiff's would dismiss our client), our clients incurred **$12,640** in attorney's fees.  These fees covered our continued efforts to reach plaintiff's counsel to see if we could negotiate a dismissal and avoid further costs, and when that proved unsuccessful, our work researching, drafting, and finalizing the motion to dismiss, and associated documents, filed on behalf of the University.

1        d.      From June 2, 2010, to June 22, 2010 (the date we filed our

2   motion to dismiss on behalf of our client, Dr. George Gollin), our clients incurred

3   **$13,785.50** in attorney's fees.   These fees covered our efforts to again contact

4   plaintiff's counsel to discuss a voluntary dismissal of Dr. Gollin, and when that failed,

5   the additional research (an individual employee of a public entity raises different

6   jurisdictional issues than the entity itself, and hence required additional and different

7   research) and writing necessary to prepare Dr. Gollin's motion to dismiss.   (Also

8   included is the work required to prepare and file the Reply memorandum to the

9   University's motion to dismiss.)

10        e.      From June 23, 2010, to July 29, 2010, the date of this

11   Court's order dismissing the action, our clients incurred **$2,409.50** in attorney's fees.

12   These fees covered the work necessary to review, monitor, and where necessary

13   address the plethora of new filings by plaintiffs and their counsel during this time

14   period.  This time period also included drafting and filing the reply memorandum to the

15   Gollin motion to dismiss, and our work on the mandatory scheduling conference,

16   including the conference of counsel (defense counsel only participated) and

17   commencement of the joint statement.

18        f.      Finally, from July 30, 2010, to the present, our clients

19   incurred over **$14,338.50** in attorneys fees.   This work was focused primarily on the

20   research of the appropriate vehicle for bringing a sanctions motion (which we notified

21   plaintiff's counsel repeatedly would be coming if we were unable to discuss a

22   voluntary dismissal), and the drafting of the papers necessary to support such a motion.

23        17.      Our fees are based on the number of hours spent on a matter,

24   multiplied by a billing rate.  For the University and Dr. Gollin, we agreed to represent

25   them on a discounted blended billing arrangement of $395/hour for all attorneys,

26   regardless of experience level.  My colleague Nicole Rivas and I were the two primary

27   attorneys working on this matter.   I have 25 years of legal experience (USC Law

28   School graduate of 1985); Ms. Rivas has 15 years of legal experience (USC Law

1   School graduate of 1995).  By comparison, my standard billing rate is $595 per hour,

2   and Ms. Rivas' standard billing rate is $460 per hour.

3           18.    Regarding  the  reasonableness  of  these  fees,  part  of  my

4   responsibilities as a partner is to review the billing statements.  Over the last twenty

5   years, I have reviewed thousands of bills and am very familiar with the costs normally

6   associated with litigation of this complexity.

7           19.    In  addition,  I am  familiar  with  the  customary  fees  charged  by

8   lawyers in complex litigation matters in Southern California.  This knowledge is based

9   upon my own experience in handling both hourly rate and contingent fee matters, but

10  also my conversations and discussions with other attorneys over the years.  In my

11  opinion, based upon my knowledge of fees charged in Southern California, and in

12  particular, the Los Angeles area, the blended rate we charged in this matter is

13  reasonable and below those rates charged by lawyers with similar experience, skills

14  and reputation at similar firms in the downtown Los Angeles legal community.

15          20.    Attached hereto as **Exhibit H** are true and correct copies of the

16  relevant pages of the 2009 "RBZ Law Firm Survey Results; Southern California; Law

17  Firm Compensation, Billing Rate and Benefits Survey."  According to Section II,

18  Page 1, of the Survey, Alston & Bird is a Size H firm ("151 or more attorneys").

19  According to Section III, Page 4, equity partners like myself at Size H firms in

20  Southern California generally charge between $527 and $695 per hour, with the

21  average being $610.  For Ms. Rivas, the closest comparison in the Survey is for

22  "Career Associates," which show average rates substantially higher than the $395

23  being charged here.  In all, the survey confirms that our billing rates are below those

24  generally charged by similar firms in the community.

25          21.    Pursuant to Local Rule 7-3, my colleague Nicole Rivas called

26  Mr. Culpepper on Friday, August 6, 2010, to discuss the substance of this motion, and

27  the concurrently filed motion for costs.  Ms. Rivas informed me that she left a

28  message on Mr. Culpepper's voicemail setting forth the nature of the call, describing

1   our intent to file these motions, and requesting a call back.  Having heard nothing

2   from him, Ms. Rivas called Mr. Culpepper again on Wednesday, August 11, 2010,

3   and left a similar message.  She followed that up with an email, on which I was

4   copied.  A true and correct copy of that email is attached hereto as **Exhibit I.**

5           I declare under penalty of perjury under the laws of the United States and

6   the State of California that the foregoing is true and correct of my personal

7   knowledge.

8           Executed on this 12th day of August        , at Los Angeles, California.

9

10

11                                              Michael D. Young

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

10

**Olagues, Laura**

| | |
|---|---|
| **From:** | Young, Mike |
| **Sent:** | Monday, May 10, 2010 1:16 PM |
| **To:** | 'thaddeusfsc@gmail.com'; 'culpepper@alumni.pitt.edu' |
| **Subject:** | St. Luke School of Medicine v. Republic of Liberia |

Thaddeus, thank you for speaking with me today.  As I mentioned, we represent the University of Illinois in the captioned matter.  This will confirm our agreement today that rather than dispute the effectiveness of service of process over the University of Illinois, the University has agreed to accept service with the understanding that the University's last day to respond to the complaint is 21 days from today, or June 1, 2010 (21 days from today is May 31, but that's a Memorial Day holiday, so we moved the deadline one day further).

As we discussed, I will send you a letter shortly formally requesting your clients to dismiss the University of Illinois on sovereign immunity grounds, among others.

Please feel free to call if you would like to discuss this.

Regards,

*-mike-*
**Michael D. Young**
Alston + Bird
333 S. Hope Street, 16th Floor
Los Angeles, CA  90071
Direct:  (213) 576-1135
Office:  (213) 576-1000
mike.young@alston.com
www.alston.com

*Please visit our California Labor and Employment Blog*
*Who's The Boss?*
*http://www.alston.com/laborandemploymentblog*

1

# EXHIBIT B

12

**Olagues, Laura**

| | |
|---|---|
| **From:** | Olagues, Laura |
| **Sent:** | Thursday, May 13, 2010 5:36 PM |
| **To:** | thaddeusfsc@gmail.com; culpepper@alumni.pitt.edu |
| **Cc:** | Young, Mike |
| **Subject:** | St. Luke School of Medicine v. Republic of Liberia, et al. |
| | |
| **Attachments:** | 5-13-10 Ltr to Atty. Culpepper.pdf |

Dear Mr. Culpepper,

Attached please find a PDF copy of Mr. Young's letter of this date regarding the above referenced matter.

Please feel free to email or call me if I may be of further assistance.

Very truly yours,

Laura Olagues, Assistant to
Michael D. Young
Alston & Bird LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
Direct:     (213) 576-1151
Facsimile: (213) 576-1100
Email: laura.olagues@alston.com

5-13-10 Ltr to Atty.
Culpepper...

13

# ALSTON&BIRD LLP

333 South Hope Street
16th Floor
Los Angeles, CA 90071-1410

213-576-1000
Fax:213-576-1100
www.alston.com

Michael D. Young
Email: mike.young@alston.com

**VIA UPS AND EMAIL**
**thaddeusfsc@gmail.com**
**culpepper@alumni.pitt.edu**

May 13, 2010

Thaddeus J. Culpepper
Culpepper Law Groupe
556 South Fair Oaks Avenue
Suite 101 - No. 302
Pasadena, California 91105

  Re: St. Luke School of Medicine, et al., v. Republic of Liberia, et al.
    United States District Court Case No. CV-10-1791 RGK (SHx)

Dear Mr. Culpepper:

   Please accept this as our formal request that you immediately dismiss the University of Illinois from the referenced action.

   As I mentioned in our phone call this week, it is without exception that the principle of sovereign immunity unconditionally bars this action as against the University of Illinois. I would urge you to take a look at *Regents of the University of California v. John Doe,* 519 U.S. 425, 429 (1996), and *Eaglesmith v. Ward,* 73 F.3d 857, 859-860 (9th Cir. 1995), where the U.S. Supreme Court and the Ninth Circuit both confirmed that states are immune from private damages actions in federal court under the Eleventh Amendment to the U.S. Constitution.

   As those courts remind us, the Eleventh Amendment provides in pertinent part that the "judicial power of the United States shall *not* be construed to extend to any suit in law or equity . . . *against one of the United States by Citizens*

Atlanta • Charlotte • Dallas • Los Angeles • New York • Research Triangle • Silicon Valley • Ventura County • Washington, D.C.

14

Thaddeus J. Culpepper
May 13, 2010
Page 2

*of another State, or by Citizens . . . of any Foreign State*." (U.S. Const. Amend. 11. (emphasis added).)

As you probably know, this constitutional sovereign immunity applies to and protects not just the state itself, but the state's public university systems. This was made clear by the U.S. Supreme Court when it noted that "the reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the University of California*, 519 U.S. 429.

Courts have repeatedly held that state universities and their employees are state instrumentalities entitled to immunity under the Eleventh Amendment, and thus fall outside of the reach of federal jurisdiction. *Id.* at 431 (reversing the 9th Cir., and holding that the *University of California was immune* from a breach of contract claim in federal court under the Eleventh Amendment); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1442-1443 (9th Cir. 1989) (holding that UCLA was an instrumentality of the state for Eleventh Amendment purposes, and thus plaintiff's 1983 claim against the university was properly dismissed on sovereign immunity grounds); *Lewis v. Midwestern State University*, 837 F.2d 197, 199 (5th Cir. 1988) (upholding the district court's dismissal of an action on the basis that the university was entitled to immunity under the Eleventh Amendment).

In fact, lest there be any doubt about this, the Seventh Circuit has specifically determined that *the University of Illinois* is an instrumentality of the state of Illinois, and thus is entitled to the protections of the Eleventh Amendment. *See, e.g., Cannon v. University of Health Sciences/The Chicago Medical School*, 710 F.2d 351, 356-357 (7th Cir. 1983).

In short, plaintiff simply cannot maintain this action against the University of Illinois, an instrumentality of the state, under the express provisions of the Eleventh Amendment and controlling authority interpreting that amendment.

We are aware of no exceptions to this straightforward constitutional bar to the claims you have asserted on behalf of your client against the University of Illinois in this action. Nor is there any discretion vested in the federal court. In the face of a motion to dismiss, it must dismiss the action as against the state instrumentality.

15

Thaddeus J. Culpepper
May 13, 2010
Page 3

*It is for this reason that we believe that you and your client would be subject to monetary sanctions if your client refuses to immediately dismiss the University from this action.*

With respect to sanctions, we draw your attention to the Rule 11 standard *as expressed by our trial judge, Hon. Gary Klausner*, in a recent case:

> "Sanctions under Rule 11 of the Federal Rules of Civil Procedure are intended to streamline litigation, *deter baseless filings*, and prevent abusive or dilatory tactics. (Citation.) Pursuant to Rule 11, the Court may impose sanctions when a pleading, motion, or other paper *is either frivolous such that it is not warranted by existing law*, or is filed for an 'improper purpose.' (Citations.) *Sanctionable conduct includes filing complaints that are known to be lacking in subject matter jurisdiction*, as well as repeatedly filing lawsuits that assert claims previously dismissed in other cases."

*Barahona v. Orkin*, 2008 U.S. Dist. LEXIS 89494 (USDC CD CA 2008) (Klausner) (emphasis added).

Moreover, Judge Klausner is not reluctant to issue sanctions in appropriate cases, as confirmed in *Thelma v. Spirtos*, 2006 U.S. App. LEXIS 5259 (9th Cir. 2006) (affirming Judge Klausner's issuance of Rule 11 Sanctions).

Federal courts have not hesitated to impose sanctions *on counsel as well* where a plaintiff brings an action against a party that is otherwise immune from suit under the Eleventh Amendment. Please take a look at *Hernandez v. Joliet Police Department*, 197 F.3d 256 (7th Cir. 1999) where the court imposed Rule 11 sanctions against the *plaintiff's attorney* when he refused to dismiss an instrumentality of the state that was protected from suit by the Eleventh Amendment. Along the same lines, take a look at *Nicarry v. Cannaday*, 2006 U.S.Dist. Lexis 95074 (USDC MD FL 2006) (sanctions against plaintiff were appropriate where "a reasonable inquiry by Plaintiff's counsel would have revealed that his claim against the Department was objectively frivolous as it was barred by the Eleventh Amendment.... Because Plaintiff's attorney failed to make a reasonable inquiry into the fairly straightforward and well-established legal issues surrounding this case, Rule 11 sanctions are appropriate.")

Thaddeus J. Culpepper
May 13, 2010
Page 4

Sanctions have also been imposed against plaintiff's counsel under 28 U.S.C. Section 1927. See, for instance, the Second Circuit's decision in *Gollomp v. Spitzer*, 568 F.3d 355 (2nd Cir. 2009) where the Court affirmed the imposition of sanctions against plaintiff's attorneys Section 1927, for wrongfully prosecuting an action against a state and its officials in federal court in violation of the sovereign immunity provision of the Eleventh Amendment. In that case, the plaintiff filed a 61 page complaint with 493 numbered paragraphs (yours weighs in at 64 pages, but only a mere 211 numbered paragraphs). Granted, the facts in that case were a bit more egregious than what we have seen so far in this case, the point is still well taken – sanctions can be imposed against the client or counsel for persisting in asserting claims clearly barred by sovereign immunity, especially where "defendants [as we are doing here] promptly warned plaintiff's counsel that they intended to file a Rule 11 motion if the causes of action barred by the Eleventh Amendment were not withdrawn," and where the claims "are incomprehensible – legally or otherwise." *Id.* at 371. (Without going into it here, we believe the claims you have asserted on behalf of your client will fit this description.)

*In short, for the reasons set forth above, we ask that your client immediately dismiss all claims against the University.* The University should not have been sued in the first place, and it clearly should not be forced to incur the legal fees to file a motion to dismiss.

Should you choose to decline our request, we will bring a motion to dismiss, and will seek both Rule 11 and Section 1927 sanctions against both your client and the Culpepper Law Groupe.

I would be pleased to discuss this with you further if you would like. You can call me at the number on the letterhead. Otherwise, I look forward to your response to our request by May 17.

Very truly yours,

Michael D. Young

MDY/lo

ADMIN/20618343v2

# EXHIBIT C

**Olagues, Laura**

| | |
|---|---|
| **From:** | Young, Mike |
| **Sent:** | Thursday, May 20, 2010 2:04 PM |
| **To:** | 'culpepper@alumni.pitt.edu'; 'thaddeusfsc@gmail.com' |
| **Cc:** | Rivas, Nicole |
| **Subject:** | St. Luke School of Medicine v. Republic of Liberia |

Thaddeus, I left you a voicemail message regarding my letter to you of seeking dismissal of the University of Illinois on sovereign immunity grounds.  For your convenience, another copy is attached.

Could you please let me know whether you will voluntarily dismiss the University at this time?  We will need to prepare our motion to dismiss and for sanctions soon if we don't hear from you, and this seems like an unnecessary expense given the clear impropriety of adding the University to this federal action.

Please get back to me today if at all possible.

Regards,

-*MIKE*-
**Michael D. Young**
Alston + Bird
333 S. Hope Street, 16th Floor
Los Angeles, CA  90071
Direct:  (213) 576-1135
Office:  (213) 576-1000
mike.young@alston.com
www.alston.com

*Please visit our California Labor and Employment Blog*
*Who's The Boss?*
http://www.alston.com/laborandemploymentblog

1

# EXHIBIT D

20

St. Luke School of Medicine et al. v. University of Illinois                                    Page 1 of 1

## Olagues, Laura

| | |
|---|---|
| **From:** | Rivas, Nicole |
| **Sent:** | Wednesday, May 26, 2010 3:00 PM |
| **To:** | thaddeusfsc@gmail.com; culpepper@alumni.pitt.edu |
| **Cc:** | Young, Mike |
| **Subject:** | St. Luke School of Medicine et al. v. University of Illinois |

Dear Mr. Culpepper:

Our firm has tried repeatedly to reach you by letter, e-mail and telephone, without success, to discuss the voluntary dismissal of the University of Illinois from the above-entitled action.  As indicated in our prior correspondence, the case law on this point is crystal clear:  the University of Illinois, as an agent of the State of Illinois, may not be sued in federal court for the types of claims that your clients have asserted.  Accordingly, such action is completely baseless, and should be dismissed.  If you have any authority to the contrary, please provide it to us as soon as possible for our consideration.

If you continue to refuse to dismiss this action, absent some authority to support your position, we will move both to dismiss the action as well as for sanctions against you and your clients under Rule 11.  We sincerely hope that such course of action will not be necessary and that you will see the wisdom of dismissing this action without the need for further litigation.

**Nicole C. Rivas**
Alston & Bird LLP
333 S. Hope, 16th Floor
Los Angeles, California 90071
nicole.rivas@alston.com
213 576-1021
213 576-1100 fax

6/1/2010

# EXHIBIT E

**From:** Thaddeus J. Culpepper [thaddeusfsc@gmail.com]
**Sent:** Tuesday, June 01, 2010 3:53 PM
**To:** Young, Mike
**Subject:** Re: St. Luke School of Medicine v. Republic of Liberia

We will be voluntarily dismissing

On Thu, May 20, 2010 at 2:03 PM, <Mike.Young@alston.com> wrote:

Thaddeus, I left you a voicemail message regarding my letter to you of seeking dismissal of the University of Illinois on sovereign immunity grounds.  For your convenience, another copy is attached.

Could you please let me know whether you will voluntarily dismiss the University at this time?  We will need to prepare our motion to dismiss and for sanctions soon if we don't hear from you, and this seems like an unnecessary expense given the clear impropriety of adding the University to this federal action.

Please get back to me today if at all possible.

Regards,

*–MIKE–*
**Michael D. Young**
Alston + Bird
333 S. Hope Street, 16th Floor
Los Angeles, CA  90071
Direct:  (213) 576-1135
Office:  (213) 576-1000
mike.young@alston.com
www.alston.com

*Please visit our California Labor and Employment Blog*
*Who's The Boss?*
*http://www.alston.com/laborandemploymentblog*

*************************************************************** IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS and other taxing authorities, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. _____
NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (404-881-7000) or by electronic mail (postmaster@alston.com), and delete this message and all copies and backups thereof. Thank you.

23

# EXHIBIT F

24

---

**From:** Young, Mike
**Sent:** Thursday, June 10, 2010 10:44 AM
**To:** 'thaddeusfsc@gmail.com'; 'culpepper@alumni.pitt.edu'
**Subject:** RE: St. Luke School of Medicine v. Republic of Liberia

Thaddeus: Per my voicemail message to you this morning, please give me a call to discuss this case. I appreciate that you are now agreeing to dismiss the University of Illinois from the action – I wish you would have done so pursuant to my earlier requests and prior to our having to file the motion to dismiss as then we would have agreed to waive costs and sanctions. Nonetheless, better late than never. Please let me know when we can expect to see the dismissal. In the meantime, I assume you do not mind if we notify the court that you will not be opposing our motion.

In my voicemail message, I also asked that you dismiss Dr. Gollin from the action. Accepting your allegations in the complaint that Dr. Gollin was acting in his role as an employee of the University, he too would be covered by the sovereign immunity of the Eleventh Amendment. We can provide you with legal authority if you would like, but I have no doubt that by this time you are fully aware of the scope of Eleventh Amendment immunity.

Could you please respond by either a phone call or email and let me know that you will dismiss Dr. Gollin from this action? I would like to have your response by Monday so we can avoid preparing yet another motion to dismiss.

I look forward to your prompt reply. Regards,

–*MIKE*–
**Michael D. Young**
Alston + Bird
333 S. Hope Street, 16th Floor
Los Angeles, CA 90071
Direct: (213) 576-1135
Office: (213) 576-1000
mike.young@alston.com
www.alston.com

*Please visit our California Labor and Employment Blog*
*Who's The Boss?*
http://www.alston.com/laborandemploymentblog

---

**From:** Thaddeus J. Culpepper [mailto:thaddeusfsc@gmail.com]
**Sent:** Tuesday, June 01, 2010 3:53 PM
**To:** Young, Mike
**Subject:** Re: St. Luke School of Medicine v. Republic of Liberia

We will be voluntarily dismissing

On Thu, May 20, 2010 at 2:03 PM, <Mike.Young@alston.com> wrote:

Thaddeus, I left you a voicemail message regarding my letter to you of seeking dismissal of the University of Illinois on sovereign immunity grounds. For your convenience, another copy is attached.

Could you please let me know whether you will voluntarily dismiss the University at this time? We will need to

6/22/2010

25

prepare our motion to dismiss and for sanctions soon if we don't hear from you, and this seems like an
unnecessary expense given the clear impropriety of adding the University to this federal action.

Please get back to me today if at all possible.

Regards,

*-MIKE-*

**Michael D. Young**
Alston + Bird
333 S. Hope Street, 16th Floor
Los Angeles, CA  90071
Direct:  (213) 576-1135
Office:  (213) 576-1000
mike.young@alston.com
www.alston.com

*Please visit our California Labor and Employment Blog*
*Who's The Boss?*
*http://www.alston.com/laborandemploymentblog*


*********************************************************** IRS Circular 230 disclosure: To
ensure compliance with requirements imposed by the IRS and other taxing authorities, we inform you
that any tax advice contained in this communication (including any attachments) is not intended or
written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed
on any taxpayer or (ii) promoting, marketing or recommending to another party any transaction or
matter addressed herein. _____
NOTICE: This e-mail message and all attachments transmitted with it may contain legally privileged
and confidential information intended solely for the use of the addressee. If the reader of this message
is not the intended recipient, you are hereby notified that any reading, dissemination, distribution,
copying, or other use of this message or its attachments is strictly prohibited. If you have received this
message in error, please notify the sender immediately by telephone (404-881-7000) or by electronic
mail (postmaster@alston.com), and delete this message and all copies and backups thereof. Thank
you.

26

# EXHIBIT G

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-01791 RGK (SHx) | Date | July 29, 2010 |
|---|---|---|---|
| Title | *St. Luke School of Medicine, et al. v. Republic of Liberia, et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

| Proceedings: | (IN CHAMBERS) Order re: Order Dismissing Complaint for Failure to Establish Subject Matter Jurisdiction. |
|---|---|

Plaintiff has failed to properly respond to the Court's Order to Show Cause why this case should not be dismissed for lack of subject matter jurisdiction. Plaintiff's attorney failed to file any response to the Order to Show Cause. Plaintiff filed a document himself; yet since Plaintiff is not counsel of record, the document was rejected. In any event, Plaintiff's filings would not have saved the case from being dismissed. Plaintiff's arguments regarding federal subject matter jurisdiction are without merit. And Plaintiff's argument based on diversity is based on the mistaken notion that country of citizenship (in contrast to the State where domestic parties reside) is taken into account for diversity jurisdiction analysis. In particular, Plaintiff has not clarified the state of citizenship for parties that are United States citizens (on either side).

Since Plaintiff has failed to properly respond to the Court's Order to Show Cause, and since Plaintiff's arguments do not establish subject matter jurisdiction, the Court **DISMISSES** this action in its entirety for lack of subject matter jurisdiction.

### IT IS SO ORDERED.

|  | : |
|---|---|
| Initials of Preparer | slw |

28

# EXHIBIT H

29

**rbz**

**2009**

# LAW FIRM SURVEY RESULTS

## SOUTHERN CALIFORNIA

Law Firm Compensation, Billing Rate and Benefits Survey

RBZ LAW FIRM SERVICES GROUP

36

**RBZ 2009 Southern California Law Firm Compensation, Billing Rate and Benefits Survey**

| General 1 | | Firm Count by size |
|-----------|---|---:|
| Size | A | 10 |
| Size | B | 33 |
| Size | C | 31 |
| Size | D | 19 |
| Size | E | 20 |
| Size | F | 10 |
| Size | G | 19 |
| Size | H | 10 |
| Total | | 152 |

| General 2 | | Firm Count by location |
|-----------|---|---:|
| Location | 1 | 49 |
| Location | 2 | 39 |
| Location | 3 | 18 |
| Location | 4 | 10 |
| Location | 5 | 30 |
| Location | 6 | 6 |
| Total | | 152 |

| General 3 | Headquarters or branch |
|-----------|---:|
| Headquarters | 100 |
| Branch | 52 |
| Total | 152 |

| Code | Firm Size | Code | Location |
|------|-----------|------|----------|
| A | 1 - 7 attorneys | 1 | Downtown, Los Angeles and mid-Wilshire area |
| B | 8 - 15 attorneys | 2 | Beverly Hills, Century City, Westwood and related areas |
| C | 16 - 25 attorneys | 3 | Santa Monica, West Los Angeles, Marina del Rey and related areas |
| D | 26 - 35 attorneys | 4 | Pasadena, Glendale, Burbank, Universal City, San Fernando Valley and related areas |
| E | 36 - 50 attorneys | | |
| F | 51 - 75 attorneys | 5 | Orange County |
| G | 76 - 150 attorneys | 6 | Other locations |
| H | 151 or more attorneys | | |

Copyright 2009
All rights reserved
Reproduction in any form strictly prohibited

rbz

**RBZ 2009 Southern California Law Firm Compensation, Billing Rate and Benefits Survey**

## 1 - Equity Partners/Shareholders                    Billing Rates

| | Firms | Incumbents | Average | 10th Percentile | 25th Percentile | Median | 75th Percentile | 90th Percentile |
|---|---|---|---|---|---|---|---|---|
| All Firms | 94 | 899 | 476 | 300 | 395 | 475 | 550 | 631 |
| Size A | 9 | 17 | 438 | 262 | 300 | 513 | 550 | 604 |
| Size B | 26 | 116 | 424 | 290 | 348 | 413 | 484 | 575 |
| Size C | 23 | 152 | 434 | 296 | 350 | 425 | 493 | 600 |
| Size D | 12 | 105 | 457 | 268 | 395 | 465 | 540 | 595 |
| Size E | 11 | 168 | 450 | 350 | 394 | 450 | 510 | 552 |
| Size F | 4 | 91 | 598 | 235 | 525 | 620 | 740 | 795 |
| Size G | 7 | 207 | 489 | 375 | 425 | 475 | 550 | 650 |
| Size H | 2 | 43 | 610 | 527 | 560 | 595 | 670 | 695 |
| Location 1 | 29 | 310 | 478 | 340 | 400 | 475 | 550 | 625 |
| Location 2 | 22 | 186 | 568 | 375 | 475 | 553 | 675 | 773 |
| Location 3 | 11 | 113 | 483 | 300 | 425 | 495 | 570 | 629 |
| Location 4 | 8 | 71 | 458 | 340 | 400 | 460 | 525 | 595 |
| Location 5 | 18 | 171 | 416 | 245 | 350 | 425 | 490 | 550 |
| Location 6 | 6 | 48 | 336 | 191 | 273 | 350 | 395 | 450 |
| Headquarters office | 74 | 727 | 452 | 300 | 383 | 450 | 525 | 600 |
| Branch office | 20 | 172 | 576 | 426 | 488 | 560 | 664 | 754 |

## 1 - Equity Partners/Shareholders                    Billable Hours

| | Firms | Incumbents | Average | 10th Percentile | 25th Percentile | Median | 75th Percentile | 90th Percentile |
|---|---|---|---|---|---|---|---|---|
| All Firms | 95 | 915 | 1,730 | 1,205 | 1,448 | 1,712 | 1,984 | 2,204 |
| Size A | 10 | 17 | 1,624 | 1,317 | 1,416 | 1,573 | 1,852 | 2,009 |
| Size B | 26 | 106 | 1,591 | 1,081 | 1,291 | 1,568 | 1,895 | 2,115 |
| Size C | 23 | 149 | 1,660 | 1,189 | 1,373 | 1,618 | 1,950 | 2,188 |
| Size D | 12 | 103 | 1,842 | 1,225 | 1,432 | 1,811 | 2,128 | 2,453 |
| Size E | 10 | 147 | 1,667 | 1,186 | 1,443 | 1,671 | 1,854 | 2,105 |
| Size F | 5 | 102 | 1,807 | 1,426 | 1,592 | 1,777 | 2,003 | 2,260 |
| Size G | 7 | 218 | 1,775 | 1,260 | 1,513 | 1,797 | 2,006 | 2,179 |
| Size H | 2 | 73 | 1,828 | 1,230 | 1,621 | 1,854 | 2,014 | 2,284 |
| Location 1 | 30 | 336 | 1,748 | 1,176 | 1,408 | 1,720 | 2,007 | 2,313 |
| Location 2 | 21 | 175 | 1,682 | 1,227 | 1,438 | 1,690 | 1,910 | 2,124 |
| Location 3 | 12 | 112 | 1,679 | 1,222 | 1,430 | 1,682 | 1,921 | 2,119 |
| Location 4 | 9 | 69 | 1,628 | 1,222 | 1,388 | 1,604 | 1,787 | 2,080 |
| Location 5 | 18 | 177 | 1,786 | 1,244 | 1,535 | 1,806 | 2,035 | 2,234 |
| Location 6 | 5 | 46 | 1,843 | 1,401 | 1,680 | 1,866 | 2,050 | 2,290 |
| Headquarters office | 77 | 779 | 1,730 | 1,211 | 1,450 | 1,712 | 1,978 | 2,207 |
| Branch office | 18 | 136 | 1,733 | 1,176 | 1,437 | 1,714 | 2,006 | 2,192 |

**rbz**

Copyright 2009
All rights reserved
Reproduction in any form strictly prohibited

**RBZ 2009 Southern California Law Firm Compensation, Billing Rate and Benefits Survey**

## 4 - Career Associates — Billing rates by class year - all firms

| | Firms | Incumbents | Average | 10th Percentile | 25th Percentile | Median | 75th Percentile | 90th Percentile |
|---|---|---|---|---|---|---|---|---|
| 2008 | * | * | * | * | * | * | * | * |
| 2007 | * | * | * | * | * | * | * | * |
| 2006 | 1 | 1 | * | * | * | * | * | * |
| 2005 | 1 | 1 | * | * | * | * | * | * |
| 2004 | 2 | 3 | 237 | * | * | 220 | * | * |
| 2003 | 1 | 1 | * | * | * | * | * | * |
| 2002 | 2 | 2 | 215 | * | * | * | * | * |
| 2001 | 1 | 2 | * | * | * | * | * | * |
| 2000 | * | * | * | * | * | * | * | * |
| 1999 | 3 | 5 | 565 | 356 | 500 | 675 | 695 | 695 |
| 1998 | 47 | 159 | 422 | 225 | 295 | 435 | 525 | 596 |
| 1997 and earlier | 54 | 12 | 649 | 492 | 668 | 675 | 718 | 785 |

## 4 - Career Associates — Billing rates by class year-firm size A

| | Firms | Incumbents | Average | 10th Percentile | 25th Percentile | Median | 75th Percentile | 90th Percentile |
|---|---|---|---|---|---|---|---|---|
| 2008 | * | * | * | * | * | * | * | * |
| 2007 | * | * | * | * | * | * | * | * |
| 2006 | * | * | * | * | * | * | * | * |
| 2005 | * | * | * | * | * | * | * | * |
| 2004 | * | * | * | * | * | * | * | * |
| 2003 | * | * | * | * | * | * | * | * |
| 2002 | * | * | * | * | * | * | * | * |
| 2001 | * | * | * | * | * | * | * | * |
| 2000 | * | * | * | * | * | * | * | * |
| 1999 | * | * | * | * | * | * | * | * |
| 1998 | 3 | 3 | 324 | * | * | 350 | * | * |
| 1997 and earlier | * | * | * | * | * | * | * | * |

## 4 - Career Associates — Billing rates by class year-firm size B

| | Firms | Incumbents | Average | 10th Percentile | 25th Percentile | Median | 75th Percentile | 90th Percentile |
|---|---|---|---|---|---|---|---|---|
| 2008 | * | * | * | * | * | * | * | * |
| 2007 | * | * | * | * | * | * | * | * |
| 2006 | * | * | * | * | * | * | * | * |
| 2005 | * | * | * | * | * | * | * | * |
| 2004 | * | * | * | * | * | * | * | * |
| 2003 | * | * | * | * | * | * | * | * |
| 2002 | * | * | * | * | * | * | * | * |
| 2001 | * | * | * | * | * | * | * | * |
| 2000 | * | * | * | * | * | * | * | * |
| 1999 | * | * | * | * | * | * | * | * |
| 1998 | 6 | 8 | 423 | 369 | 423 | 443 | 450 | 458 |
| 1997 and earlier | 1 | 1 | * | * | * | * | * | * |



Copyright 2009
All rights reserved
Reproduction in any form strictly prohibited

**RBZ 2009 Southern California Law Firm Compensation, Billing Rate and Benefits Survey**

## 4 - Career Associates                     Billing rates by class year-firm size F

|  | Firms | Incumbents | Average | 10th Percentile | 25th Percentile | Median | 75th Percentile | 90th Percentile |
|---|---|---|---|---|---|---|---|---|
| 2008 | * | * | * | * | * | * | * | * |
| 2007 | * | * | * | * | * | * | * | * |
| 2006 | * | * | * | * | * | * | * | * |
| 2005 | * | * | * | * | * | * | * | * |
| 2004 | * | * | * | * | * | * | * | * |
| 2003 | * | * | * | * | * | * | * | * |
| 2002 | * | * | * | * | * | * | * | * |
| 2001 | * | * | * | * | * | * | * | * |
| 2000 | * | * | * | * | * | * | * | * |
| 1999 | * | * | * | * | * | * | * | * |
| 1998 | 2 | 20 | 423 | 213 | 224 | 525 | 595 | 675 |
| 1997 and earlier | * | * | * | * | * | * | * | * |

## 4 - Career Associates                     Billing rates by class year-firm size G

|  | Firms | Incumbents | Average | 10th Percentile | 25th Percentile | Median | 75th Percentile | 90th Percentile |
|---|---|---|---|---|---|---|---|---|
| 2008 | * | * | * | * | * | * | * | * |
| 2007 | * | * | * | * | * | * | * | * |
| 2006 | * | * | * | * | * | * | * | * |
| 2005 | * | * | * | * | * | * | * | * |
| 2004 | * | * | * | * | * | * | * | * |
| 2003 | 1 | 1 | * | * | * | * | * | * |
| 2002 | * | * | * | * | * | * | * | * |
| 2001 | * | * | * | * | * | * | * | * |
| 2000 | * | * | * | * | * | * | * | * |
| 1999 | 1 | 1 | * | * | * | * | * | * |
| 1998 | 7 | 31 | 523 | 430 | 470 | 505 | 550 | 680 |
| 1997 and earlier | * | * | * | * | * | * | * | * |

## 4 - Career Associates                     Billing rates by class year-firm size H

|  | Firms | Incumbents | Average | 10th Percentile | 25th Percentile | Median | 75th Percentile | 90th Percentile |
|---|---|---|---|---|---|---|---|---|
| 2008 | * | * | * | * | * | * | * | * |
| 2007 | * | * | * | * | * | * | * | * |
| 2006 | 1 | 1 | * | * | * | * | * | * |
| 2005 | * | * | * | * | * | * | * | * |
| 2004 | 1 | 2 | * | * | * | * | * | * |
| 2003 | * | * | * | * | * | * | * | * |
| 2002 | 1 | 1 | * | * | * | * | * | * |
| 2001 | 1 | 2 | * | * | * | * | * | * |
| 2000 | * | * | * | * | * | * | * | * |
| 1999 | 2 | 4 | 581 | 385 | * | 685 | * | 695 |
| 1998 | 2 | 20 | 286 | 245 | 250 | 260 | 288 | 316 |
| 1997 and earlier | 1 | 10 | * | * | * | * | * | * |

Copyright 2009
All rights reserved
Reproduction in any form strictly prohibited

34

rbz

# EXHIBIT I

**Young, Mike**

| | |
|---|---|
| **From:** | Rivas, Nicole |
| **Sent:** | Wednesday, August 11, 2010 2:53 PM |
| **To:** | thaddeusfsc@gmail.com; culpepper@alumni.pitt.edu |
| **Cc:** | Young, Mike |
| **Subject:** | St. Luke Medical School |

Dear Mr. Culpepper:

This e-mail is to follow-up the two voicemail messages I left for you last week and earlier today.  As required by Local Rule 7-3, we would like to meet and confer with you regarding our proposed motions for costs under 28 U.S.C. § 1919 and for sanctions under 28 U.S.C. § 1927 and the Court's inherent power.  Please contact me by no later than the end of the day if you desire to attempt to informally resolve this matter without having to involve the Court.

**Nicole C. Rivas**
Alston & Bird LLP
333 S. Hope, 16th Floor
Los Angeles, California 90071
nicole.rivas@alston.com
213 576-1021
213 576-1100 fax

1

36